**DAVIS+GILBERT LLP**
1675 Broadway
New York, NY 10019
T: (212) 468-4800

*Attorneys for Defendant Natixis S.A.*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | |
| v. | SIPA Liquidation |
| | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| | |
| Defendant. | |
| In re: | |
| | **ORAL ARGUMENT** |
| BERNARD L. MADOFF, | **REQUESTED** |
| | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | |
| | |
| | S.D.N.Y. Case No. _____ |
| Plaintiff, | |
| v. | Adv. Pro. No. 10-05353 (CGM) |
| | |
| NATIXIS S.A. and TENSYR LTD., | |
| | |
| Defendants. | |

## DEFENDANT NATIXIS S.A.'S
## MOTION FOR LEAVE TO APPEAL

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 8012 of the Federal Rules of Bankruptcy Procedure,

Defendant Natixis S.A., by and through its undersigned counsel, states that it is

a wholly-owned subsidiary of Group BPCE, a French banking group that is not

publicly traded.

Dated: December 22, 2023

*/s/ Joseph Cioffi*
Joseph Cioffi

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF AUTHORITIES ................................................................. iv

PRELIMINARY STATEMENT ............................................................... 1

QUESTION PRESENTED ................................................................... 5

RELEVANT BACKGROUND ................................................................. 5

    A.    The Trustee's Pursuit of BLMIS/Madoff Claims Against Alpha Prime and Natixis ................................................................. 5

    B.    Natixis's Motion to Dismiss ................................................. 8

    C.    The Bankruptcy Court's Decision ............................................ 8

LEGAL STANDARD ....................................................................... 9

ARGUMENT ............................................................................. 10

I.    THE APPEAL PRESENTS A CONTROLLING QUESTION OF LAW .... 10

II.    SUBSTANTIAL GROUNDS FOR DIFFERENCE OF OPINION EXIST AS TO WHETHER THE BANKRUPTCY COURT APPLIED THE CORRECT LEGAL STANDARDS ........................................................... 11

    A.    The Bankruptcy Court Failed to Focus on the Actual Language of the Release to Determine Intent ............................................... 12

    B.    The Bankruptcy Court Failed to Consider the Trustee's Other Settlements ................................................................. 15

    C.    The Bankruptcy Court Misstated the Doctrine of *Ejusdem Generis* .. 16

    D.    The Decision Undermines Litigants' Ability to Release Claims Beyond the Controversy Being Settled ....................................... 18

    E.    The Bankruptcy Court Wrongly Relied on the Consideration Provided by Alpha Prime to Determine the Parties' Intent ........................ 19

III.    RESOLUTION OF THE APPEAL MATERIALLY ADVANCES THE
        LITIGATION ................................................................................................21

IV.    ALTERNATIVELY, IF THE COURT DECLINES TO REVERSE THE
        ORDER, THE PARTIES SHOULD CONDUCT DISCOVERY ON THE
        SCOPE OF THE RELEASE ........................................................................22

CONCLUSION .....................................................................................................23

CERTIFICATE OF COMPLIANCE......................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Ali v. City of N.Y.*,
No. 20-30, 2021 U.S. Dist. LEXIS 255741
(E.D.N.Y. Sep. 29, 2021) ...................................................................19

*Am. S.S. Owners Mut. Prot. v. Lafarge N. Am., Inc.*,
No. 06-3123, 2008 U.S. Dist. LEXIS 75308
(S.D.N.Y. Sep. 29, 2008) ...................................................................17

*Ashwood Cap., Inc. v. OTG Mgmt.*,
99 A.D.3d 1 (1st Dep't 2012) ...........................................................12

*ASI Sign Sys. v. Architectural Sys.*,
No. 98-4823, 1999 U.S. Dist. LEXIS 11531
(S.D.N.Y. July 29, 1999) ...................................................................15

*Bilello v. JPMorgan Chase Ret. Plan*,
603 F. Supp. 2d 590 (S.D.N.Y. 2009) ...............................................11

*Bristol-Myers Squibb Co. v. Matrix Labs. Ltd.*,
586 F. App'x 747 (2d Cir. 2014) .......................................................22

*Cahill v. Regan*,
5 N.Y.2d 292 (1959) ..........................................................................14

*Carbone v. Marone*,
No. 04-2001, 2007 U.S. Dist. LEXIS 92350
(S.D.N.Y. Dec. 14, 2007) ..................................................................13

*Chang v. N.Y.C. Dep't of Educ.*,
412 F. Supp. 3d 229 (E.D.N.Y. 2019) ................................. 13, 15, 18

*Consol. Edison, Inc. v. Ne. Utils.*,
332 F. Supp. 2d 639 (S.D.N.Y. 2004) ...............................................20

*Errico v. Pfizer Consol. Pension Plan*,
No. 19-10211, 2021 U.S. Dist. LEXIS 75833
(S.D.N.Y. Apr. 20, 2021) ...................................................................20

iv

*Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt.*,
371 F. Supp. 2d 571 (S.D.N.Y. 2005) ..........................................................18

*Global Reins. Corp. of Am. v. Century Indem. Co.*,
442 F. Supp. 3d 576 (S.D.N.Y. 2020) .........................................................15

*In re Dynegy Inc.*,
486 B.R. 585 (Bankr. S.D.N.Y. 2013) .........................................................12

*In re Fairfield Sentry Ltd.*,
458 B.R. 665 (S.D.N.Y. 2010) ............................................................. 10, 11

*In re GM LLC Ignition Switch Litig.*,
427 F. Supp. 3d 374 (S.D.N.Y. 2019) .........................................................21

*In re Kassover*,
343 F.3d 91 (2d Cir. 2003) ...........................................................................9

*In re Liddle & Robinson, LLP*,
No. 20-865, 2020 U.S. Dist. LEXIS 128978
(S.D.N.Y. July 21, 2020) ...............................................................................9

*In re Revlon Inc.*,
Nos. 22-10760, 22-01167, 2023 Bankr. LEXIS 388
(Bankr. S.D.N.Y. Feb. 24, 2023)................................................................15

*Lucent Techs. Inc. v. Gateway, Inc.*,
470 F. Supp. 2d 1195 (S.D. Cal. 2007) ......................................................14

*Mangini v. McClurg*,
24 N.Y.2d 556 (1969)...................................................................................14

*Norton v. S. Utah Wilderness Alliance*,
542 U.S. 55 (2004)........................................................................................17

*Oxford Com. Corp. v. Landau*,
12 N.Y.2d 362 (1963)...................................................................................14

*Pfizer, Inc. v. United States HHS*,
42 F.4th 67 (2d Cir. 2022) ...........................................................................17

*Picard v. Multi-Strategy Fund Ltd.*,
     No. 22-06502 (JSR), 2022 U.S. Dist. LEXIS 200858
     (S.D.N.Y. Nov. 3, 2022) ...................................................................................9

*Pilarczyk v. Morrison Knudsen Corp.*,
     965 F. Supp. 311 (N.D.N.Y. 1997) ...............................................................20

*Primavera Familienstifung v. Askin*,
     139 F. Supp. 2d 567 (S.D.N.Y. 2001) ...........................................................21

*Reese v. BP Exploration (Alaska) Inc.*,
     643 F.3d 681 (9th Cir. 2011) ................................................................. 11, 20

*Rothenberg v. Oak Rock Fin., LLC*,
     No. 14-3700, 2015 U.S. Dist. LEXIS 44032
     (E.D.N.Y. Mar. 31, 2015)...................................................................... 10, 11

*Sandy Hollow Assocs. LLC v. Port Wash. N.*,
     No. 09-2629, 2010 U.S. Dist. LEXIS 142396
     (E.D.N.Y. Sep. 6, 2010) ...............................................................................20

*Solid State Logic, Inc. v. Terminal Mktg.*,
     No. 02-1378, 2002 U.S. Dist. LEXIS 13061
     (S.D.N.Y. July 18, 2002) ..........................................................................2, 12

*Thar Process, Inc. v. Sound Wellness, LLC*,
     No. 21-422S, 2022 U.S. Dist. LEXIS 878
     (W.D.N.Y. Jan. 18, 2022).............................................................................17

*Vornado Realty Tr. v. Marubeni Sustainable Energy, Inc.*,
     987 F. Supp. 2d 267 (E.D.N.Y. 2013).................................................... 18, 21

*Wade Park Land Hldgs., LLC v. Kalikow*,
     589 F. Supp. 3d 335 (S.D.N.Y. 2022) .........................................................13

**Statutes**

28 U.S.C. § 1292(b) ...............................................................................................9, 10

28 U.S.C. § 158(a)(3)...............................................................................................1, 9

Fed. R. Bankr. P. 8004 ...............................................................................................1

Defendant Natixis S.A. ("Natixis") hereby moves pursuant to 28 U.S.C. § 158(a)(3) and Fed. R. Bankr. P. 8004 for leave to appeal from an order ("Order," ECF No. 237) of the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court"),[1] which denied Natixis's motion to dismiss the Amended Complaint of plaintiff Irving H. Picard ("Trustee"), as trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS").  Natixis seeks to appeal the Bankruptcy Court's ruling that the release ("Release") entered into by the Trustee with Alpha Prime Fund Limited ("Alpha Prime"), of which Natixis was an indirect shareholder, does not bar the Trustee's claims against Natixis here.

## PRELIMINARY STATEMENT

This appeal presents a fully dispositive question of law concerning how courts should determine the proper application of a clear and unambiguous release. In 2022, as part of a settlement with Alpha Prime – one of Bernie Madoff's "feeder funds" (also known as "initial transferees") – the Trustee released Alpha Prime and its "former . . . indirect shareholders" from all claims "in any way related to

---

[1] "ECF No. __" refers to filings on the Bankruptcy Court docket in Adversary Proceeding No. 10-05353.  The Order was entered on November 17, 2023.  *See* **Exhibit A**.  The Bankruptcy Court entered its Memorandum Decision ("Decision," ECF. No. 228) on November 2, 2023.  *See* **Exhibit B**.  The Bankruptcy Court extended Natixis's time to file its notice of appeal and any motion required under 28 U.S.C. § 158 to December 22, 2023.  *See* ECF No. 241.

Madoff or BLMIS."  Adv. Pro. No. 09-01364 ("*Alpha Prime* Action"), ECF No.

710-2 ("Settlement Agreement"), ¶ 7.  It is undisputed that (i) Natixis is a former

indirect shareholder of Alpha Prime – indeed, the Trustee's initial complaint here

included claims related to transfers from Alpha Prime – and (ii) the Trustee's

claims against Natixis in this action (as a "subsequent transferee") relate to Madoff

and BLMIS.  And this Court has been unequivocal: "'[I]f 'the language of the

release is clear . . . the intent of the parties [is] indicated by the language

employed.'"  *Solid State Logic, Inc. v. Terminal Mktg.*, No. 02-1378, 2002 U.S.

Dist. LEXIS 13061, at *10-11 (S.D.N.Y. July 18, 2002) (citation omitted).  The

Trustee's claims here should have been dismissed.

In the Decision, however, the Bankruptcy Court imposed a limitation on the

types of Madoff claims covered by the Release – a limitation that the Trustee and

Alpha Prime did not include.  Specifically, the Bankruptcy Court held that, because

the Settlement Agreement between the Trustee and Alpha Prime *settled* only

claims concerning Alpha Prime transfers, then, similarly, the Release could *release*

only claims concerning Alpha Prime transfers.  *See* Decision at 36.  But the

Trustee expressly released "any and all" Madoff-related claims against Natixis (as

a former Alpha Prime indirect shareholder), including transfers from other initial

transferees.  Settlement Agreement ¶ 7.

Natixis respectfully submits that this Court should grant leave to appeal from the Order. The legal question presented – whether the Bankruptcy Court erred by imposing an unwritten limitation into a clear and broad release – is controlling, the Court would not have to address any factual disputes, and a decision could result in the dismissal of Natixis and its affiliates and over $400 million in claims.[2] It is also important to note that the Decision calls into question every settlement agreement that, like the one at issue here, expressly releases claims beyond the specific claims being settled, thereby undermining the finality of such resolutions and undercutting the judiciary's strong preference for parties to resolve their disputes without judicial intervention.

In the Decision, the Bankruptcy Court also misconstrued or ignored numerous legal precedents and issues, presenting substantial grounds for differences of opinion.

*First*, contrary to the overwhelming case law, the Bankruptcy Court failed to address at all the language in the Release that states "in any way related to Madoff or BLMIS," Settlement Agreement ¶ 7, and does not explain how its narrow

---

[2] The Trustee also seeks $234 million from Natixis's affiliates, Natixis Financial Products LLC ("Natixis FP") and Bloom Asset Holdings Fund ("Bloom"), in a separate adversary proceeding. *See* Adv. Pro. No. 23-01017, ECF. No. 1. Natixis FP and Bloom also raised the Release argument in their motion to dismiss, which the Bankruptcy Court denied on identical grounds. *See id.*, ECF. No. 31. They intend to move for leave to appeal that decision by January 2, 2024.

interpretation of the Release comports with that clear, broad language.  Indeed, the
Decision rendered that language meaningless, contrary to New York law.

*Second*, the Bankruptcy Court ignored that the Trustee is a sophisticated
party who has entered into numerous releases over the 15 years of this SIPA
proceeding.  To that end, the Bankruptcy Court failed to consider the numerous
settlements that the Trustee has entered into in other Madoff-related cases in which
he did employ release language narrowly tailored to specific claims.  Most
prominently, in 2018, the Trustee entered into a partial settlement with Alpha
Prime, whereby he released claims "***only concerning direct or indirect transfers
of money from Alpha Prime . . . but not for any claims that the Trustee may
otherwise have***."  *Alpha Prime* Action, ECF No. 491-1 (Feb. 12, 2018) ("Partial
Settlement"), ¶ 2(a) (emphasis added).  This limited release stands in stark contrast
to the broader Release the Trustee agreed to with Alpha Prime in 2022.

*Third*, the Bankruptcy Court justified departing from the Release's plain
meaning by misapplying the *ejusdem generis* doctrine.  Simply put, the doctrine
has no application here, as the Release does not contain a residual phrase following
a specific list of items, and it is inappropriate to apply this doctrine in the manner
the Bankruptcy Court did, whereby it rendered an entire phrase in the Release
meaningless.

Alternatively, if the Court is disinclined to reverse the Order at this time, the

Court should clarify that Natixis's affirmative defense based on the Release

remains viable, thus being preserved for summary judgment and/or trial.  The

Bankruptcy Court's ruling is inherently in conflict with the Release's plain

language, and, thus, at most, the Bankruptcy Court identified an ambiguity, which

in turn would require discovery on the scope of the Release.

## QUESTION PRESENTED

Whether, in this Madoff "clawback" action, the Bankruptcy Court erred

in holding that the Trustee's claims against Natixis are not barred by the

Release that the Trustee provided to Alpha Prime (of which Natixis is a former

indirect shareholder) and that states expressly that the Trustee "releases . . .

[Alpha Prime's former] indirect shareholders . . . from any and all . . . claims

whatsoever . . . arising out of or in any way related to Madoff or BLMIS."

## RELEVANT BACKGROUND

### A. The Trustee's Pursuit of BLMIS/Madoff Claims Against Alpha
### Prime and Natixis

On July 15, 2009, as a part of the Trustee's efforts to gather property of

the BLMIS estate through this SIPA proceeding, the Trustee commenced the

*Alpha Prime* Action against Alpha Prime and certain other defendants.

On December 8, 2010, the Trustee commenced an adversary proceeding

against Natixis and other defendants to recover approximately $400 million in

alleged subsequent transfers made to Natixis by certain initial transferees, including specifically Alpha Prime. *See* ECF No. 1-1 ("<u>Initial Complaint</u>"). In the Initial Complaint, the Trustee acknowledged that Natixis FP and Bloom were Alpha Prime shareholders. Thus, it is indisputable that Natixis, as their corporate parent, was an indirect shareholder of Alpha Prime. *See id.* ¶¶ 78, 111, 120.[3]

In February 2018, the Trustee and certain of the *Alpha Prime* defendants entered into the Partial Settlement, pursuant to which Alpha Prime agreed to pay the Trustee $76,450,000, and the Trustee agreed to dismiss his claim seeking alleged "two-year transfers" and to allow 95% of Alpha Prime's customer claim for $238,137,450. *See* Partial Settlement ¶ 1. Notably, the Trustee released Alpha Prime's "direct or indirect shareholders" from claims that "only concern direct or indirect transfers of money from Alpha Prime . . . but not for any claims that the Trustee may otherwise have." *Id.* ¶ 2(a).

Subsequently, on June 20, 2022, the same parties entered into the Settlement Agreement, which again included the release of Alpha Prime's current and former "direct or indirect shareholders," but this time the Release extended to any claims "related to Madoff or BLMIS." Settlement Agreement

---

[3] Neither the Court nor the Trustee disputes that Natixis is an indirect former shareholder of Alpha Prime. *See* Decision at 34-35.

¶ 7.  This more expansive Release makes sense given that the Partial Settlement

had already released Alpha Prime's shareholders from claims related to only

Alpha Prime transfers.  Specifically, the Release provides, in relevant part:

> *[T]he Trustee,* on behalf of himself and BLMIS, and its
> consolidated estates, *hereby releases,* acquits and forever
> discharges Alpha Prime and Alpha Prime Asset Management
> LTD and its respective *current and former* directors . . . officers,
> employees, *direct or indirect shareholders,* limited partners,
> principals, members, successors, assigns, accountants, attorneys,
> *from any and all* past, present or future actions, causes of action,
> suits, debts, dues, sums of money, accounts, reckonings, bonds,
> bills, specialties, covenants, contracts, controversies, damages,
> judgments, and *claims whatsoever, asserted or unasserted,*
> *known or unknown, arising out of or in any way related to*
> *Madoff or BLMIS.* For the avoidance of doubt, Alpha Prime is
> not released from the Six-Year Transfer Recovery Claim until
> either (i) Alpha Prime has paid to the Trustee the Six-Year
> Transfers or (ii) the Six-Year Transfers are deemed
> unrecoverable from Alpha Prime as set forth in paragraphs 5
> above and 10 below.

*Id*. (emphases added).  Elsewhere in the Settlement Agreement, the Trustee and

Alpha Prime expressly recognized that the Release applies to third parties.  *See*

*id*. ¶ 21.

As part of the Settlement Agreement, Alpha Prime agreed to share

recoveries from three Madoff-related lawsuits it has commenced against various

entities, *see id.* ¶ 4 – one such lawsuit alone contemplates damages over $346

million.  Alpha Prime also agreed to participate in ongoing discovery and to

reduce its 502(h) claim in the SIPA proceeding by approximately $11.5 million.
*See* Settlement Agreement ¶ 1; *Alpha Prime* Action, ECF No. 710, ¶ 21.

On January 31, 2023, the Trustee filed the amended complaint, seeking to
recover $179 million in alleged subsequent transfers made to Natixis by
Fairfield Sentry Limited Fund ("Fairfield Sentry"), another alleged Madoff
initial transferee.  ECF No. 193 ("Amended Complaint"), ¶¶ 2-3, 8.  In the
Amended Complaint, the Trustee does not pursue transfers from Alpha Prime.

## B. Natixis's Motion to Dismiss

On April 17, 2023, Natixis moved to dismiss the Amended Complaint
pursuant to Federal Rules of Civil Procedure 12(b)(2) and (b)(6).  *See* ECF No.
199 ("Motion to Dismiss").  Natixis argued, *inter alia*, that the Release bars the
Trustee's claims.  *Id*. at 9-16.

## C. The Bankruptcy Court's Decision

On November 2, 2023, the Bankruptcy Court issued the Decision,
denying the Motion to Dismiss in its entirety.  The Bankruptcy Court found that
the Release did not release Natixis from the Trustee's claims to recover
Fairfield Sentry-related transfers on the grounds that, *inter alia*, (1) the
Settlement Agreement "as a whole" relates only to "Alpha Prime's relationship
to BLMIS and the Trustee's action to avoid and recover transfers of BLMIS
customer property to Alpha Prime," (2) the doctrine of *ejusdem generis* limits

the Release to "the specific claims in the Settlement and in [the *Alpha Prime*

Action]," and (3) the consideration provided "plainly relates" to claims for

Alpha Prime transfers and not to "claims in unrelated actions."  Decision at 34-

37 (citation omitted).

## <u>LEGAL STANDARD</u>

A district court "has discretionary appellate jurisdiction over an

interlocutory order of a bankruptcy court" pursuant to 28 U.S.C. § 158(a)(3).  *In

re Kassover*, 343 F.3d 91, 94 (2d Cir. 2003).  And this Court has advised that,

"[g]iven the[] differences between the bankruptcy context and ordinary civil

litigation . . . it is not obvious that district courts should adopt quite as strong a

presumption against appeals from interlocutory bankruptcy orders under

Section 158(a)(3) as they have against certifying their own interlocutory orders

for appeal." *Picard v. Multi-Strategy Fund Ltd.*, No. 22-06502 (JSR), 2022

U.S. Dist. LEXIS 200858, at *13 n.5 (S.D.N.Y. Nov. 3, 2022).

While neither Section 158 nor the Bankruptcy Rules "provides guidelines

for determining whether a district court should grant leave to appeal, . . . most

district courts in the Second Circuit have applied the analogous standard for

certifying an interlocutory appeal from a district court order, set forth in 28

U.S.C. § 1292(b)." *In re Liddle & Robinson, LLP*, No. 20-865, 2020 U.S. Dist.

LEXIS 128978, at *9 (S.D.N.Y. July 21, 2020) (citation omitted).  Under

Section 1292(b), a court may permit appeal if (1) the "order involves a controlling question of law"; (2) "there is substantial ground for difference of opinion" regarding that question; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

## ARGUMENT

## I.  THE APPEAL PRESENTS A CONTROLLING QUESTION OF LAW

A "controlling question of law" is one that (1) "could result in dismissal of the action," (2) "even though not resulting in dismissal, could significantly affect the conduct of the action," or (3) "has precedential value for a large number of cases." *Rothenberg v. Oak Rock Fin., LLC*, No. 14-3700, 2015 U.S. Dist. LEXIS 44032, at *55 (E.D.N.Y. Mar. 31, 2015) (citation omitted); *see also In re Fairfield Sentry Ltd.*, 458 B.R. 665, 673 (S.D.N.Y. 2011) (similar).

Here, this appeal raises a controlling question of law because reversal of the Order would result in the immediate dismissal of all claims against Natixis and Natixis's affiliates, totaling over $400 million.[4] *See supra* at 3 & n.2.  Thus, it would "significantly affect the conduct of the action." *Rothenberg*, 2015 U.S. Dist. LEXIS 44032, at *55 (citation omitted).  In several respects, a decision on the

---

[4] Reversal of the Order would dispose of all claims in this action except those against Tensyr Ltd.

question presented also has "precedential value for a large number of cases." *Id.* at

*55 (citation omitted).  This appeal would provide all litigants – not just the more

than one hundred defendants still being pursued by the Trustee – with guidance on

drafting releases that are consistent with their subjective intent.  This appeal would

also provide important clarification on the application of the *ejusdem generis*

doctrine to settlement agreements and releases.  *See infra* at 16-18.

## II.    SUBSTANTIAL GROUNDS FOR DIFFERENCE OF OPINION EXIST AS TO WHETHER THE BANKRUPTCY COURT APPLIED THE CORRECT LEGAL STANDARDS

Substantial grounds for difference of opinion exist when, *inter alia*, there

is "a genuine doubt as to the correct applicable legal standard relied on in the

order." *Fairfield Sentry*, 458 B.R. at 673 (citation omitted); *see also Reese v.*

*BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) (finding

"substantial ground for difference of opinion exists where reasonable jurists

might disagree on an issue's resolution, not merely where they have already

disagreed").  To determine this element of Section 1292(b), "a district court

must 'analyze the strength of the arguments in opposition to the challenged

ruling.'" *Bilello v. JPMorgan Chase Ret. Plan*, 603 F. Supp. 2d 590, 593-94

(S.D.N.Y. 2009) (citation omitted).

## A. The Bankruptcy Court Failed to Focus on the Actual Language of the Release to Determine Intent

Despite never finding that the Release was ambiguous, the Bankruptcy Court did so by implication, imposing its own interpretation of the Release by focusing on language outside the Release. For example, the Bankruptcy Court looked to the Settlement Agreement's background section, the consideration exchanged, and the controversy being resolved. *See* Decision at 34-37. This approach conflicts with New York law requiring the Bankruptcy Court to determine intent by examining the actual words the parties employed in the Release itself. *See Solid State Logic, Inc.*, 2002 U.S. Dist. LEXIS 13061, at *10-11 ("[I]n a commercial context . . . if 'the language of the release is clear . . . the intent of the parties [is] indicated by the language employed.'") (citation omitted); *Ashwood Cap., Inc. v. OTG Mgmt.*, 99 A.D.3d 1, 6 (1st Dep't 2012) ("[T]o determine the contracting parties' intent, a court looks to the objective meaning of contractual language, not to the parties' individual subjective understanding of it."); *In re Dynegy Inc.*, 486 B.R. 585, 590 (Bankr. S.D.N.Y. 2013) (Morris, J.) ("[A] court [should not] redraft a contract to accord with its instinct for the dispensation of equity upon the facts of a given case.").

To start, although the Bankruptcy Court referred to the background section of the Settlement Agreement, *see* Decision at 34, nothing therein "contain[s] language cabining the release to [claims concerning Alpha Prime]."

12

*Chang v. N.Y.C. Dep't of Educ.*, 412 F. Supp. 3d 229, 244 (E.D.N.Y. 2019).

Moreover, that the background section does not specifically mention Natixis is

irrelevant as Natixis falls within a category of persons specifically mentioned in

the Release, *i.e.*, former indirect shareholders. *See Carbone v. Marone*, No. 04-

2001, 2007 U.S. Dist. LEXIS 92350, at *16-17 (S.D.N.Y. Dec. 14, 2007)

(finding that persons within release categories were "entirely discharge[d]"

from liability "for any disputes within the scope of the release"). There is no

question that the Trustee knew this, as the Initial Complaint against Natixis and

its affiliates included claims based on transfers from Alpha Prime.

As a result of interpreting the Release the way it did, the Bankruptcy

Court rendered the language "***in any way related to Madoff or BLMIS***"

meaningless. *See Wade Park Land Hldgs., LLC v. Kalikow*, 589 F. Supp. 3d

335, 366 (S.D.N.Y. 2022) ("[A] court must interpret a contract so as to give

effect to all of its clauses and to avoid an interpretation that leaves part of the

contract meaningless."), *amended in part on other grounds*, 2022 U.S. Dist.

LEXIS 118899 (S.D.N.Y. 2022). And, as mentioned, cabining the Release to

Alpha Prime transfers renders redundant the release in the Partial Settlement.

*See supra* at 7.

The Bankruptcy Court supported its ruling by citing inapt decisions

involving "standardized" or "ritualistic" general release language. Decision at

13

33-34 (citing *Mangini v. McClurg*, 24 N.Y.2d 556, 562 (1969), and *Lucent*

*Techs. Inc. v. Gateway, Inc.*, 470 F. Supp. 2d 1195, 1200 (S.D. Cal. 2007)).  But

the Release "contain[s] provisions quite unlike the stereotyped verbiage found

in the usual standard general release."  *Oxford Com. Corp. v. Landau*, 12

N.Y.2d 362, 366 (1963).  For example, the Release, while broad, exempts from

inclusion the "Six-Year Transfer Recovery Claim" (as defined in the Settlement

Agreement), demonstrating that the Release is neither standard nor formulaic.

*See supra* at 7.  And, it is clear from the other releases that the Trustee has

entered into that he has not relied on any standard form.  *See infra* at 15-16.  As

such, New York courts must apply the language of the Release as written.  *See*

*Oxford*, 12 N.Y.2d at 366.

    Further, unlike the circumstances here, the courts in *Mangini* and *Lucent*

*Technologies* applied releases to "unknown" claims.  *See Mangini*, 24 N.Y.2d at

564, 568 (finding standardized personal injury release did not cover unknown

injuries); *Lucent Techs.*, 470 F. Supp. 2d at 12002 (declining to apply release,

which related to billing dispute, "to cover 'unknown' patent infringement

claims").[5]  In stark contrast, when the Trustee executed the Release with Alpha

---

[5] Three other decisions on which the Bankruptcy Court relies are similarly
inapposite, as they involved claims that were unknown or had not yet accrued
when the release was executed.  *See* Decision at 33; *Cahill v. Regan*, 5 N.Y.2d 292,
299-300 (1959); *ASI Sign Sys. v. Architectural Sys.*, No. 98-4823, 1999 U.S. Dist.

Prime, this adversary proceeding against Natixis had been pending for more
than 11 years, *see supra* at 5-6, and he knew all along that Natixis was a former
indirect shareholder of Alpha Prime.  *See Chang*, 412 F. Supp. 3d at 244
(finding release barred plaintiff's discrimination claims that plaintiff already
raised "when she signed this general release").

### B. The Bankruptcy Court Failed to Consider the Trustee's Other Settlements

When interpreting the meaning of language used in a contract, the court
should take into account the parties' sophistication.  *See Global Reins. Corp. of
Am. v. Century Indem. Co.*, 442 F. Supp. 3d 576, 586 (S.D.N.Y. 2020) ("A
contract must not be interpreted 'as impliedly stating something which the
parties have neglected to specifically include,' particularly when sophisticated,
counseled parties negotiated the agreement at arm's length.") (citation omitted).
The Trustee is clearly sophisticated, and, thus, the Bankruptcy Court should not
have ignored the many tailored releases he has negotiated and entered into
during the 15 years of this SIPA proceeding,[6] in which he agreed to limit the
releases therein to specific transfers and/or claims.

---

LEXIS 11531, at *16 (S.D.N.Y. July 29, 1999); *Hughes v. Long Island Univ.*, 305
A.D.2d 462, 463 (2d Dep't 2003).

[6] *See* Motion to Dismiss at 13-15 (collecting examples of Trustee's releases in
other settlements).  The Bankruptcy Court may take judicial notice of these
publicly filed settlement agreements.  *See In re Revlon Inc.*, Nos. 22-10760, 22-
01167, 2023 Bankr. LEXIS 388, at *2 n.4 (Bankr. S.D.N.Y. Feb. 24, 2023).

As one example, in *Picard v. Kingate Euro Fund, Ltd.*, the release of

shareholders there expressly did not "release [] claims that the Trustee may

bring that are unrelated to the Kingate Funds' investments in or withdrawals

from BLMIS."  Adv. Pro. No. 09-01161, ECF No. 413-2, ¶ 13.  The Trustee,

represented by the same sophisticated counsel in all these proceedings, chose

not to bargain for similar limiting language here.

And, as noted above, in the same *Alpha Prime* Action, in the Partial

Settlement, the Trustee released claims "***only concerning direct or indirect***

***transfers of money from Alpha Prime . . . but not for any claims that the***

***Trustee may otherwise have***."  *Supra* at 4.  The Trustee's decision to employ

far different language, just four years later, in the Release – covering, without

limitation, claims "in any way related to Madoff or BLMIS" – establishes that

the Trustee intended to release all claims against Natixis, including those

relating to transfers from other funds.

### C. The Bankruptcy Court Misstated the Doctrine of *Ejusdem Generis*

To support its ruling, the Bankruptcy Court found that "[u]nder the

doctrine of *ejusdem generis*, the general words of release are limited by the

specific claims in the Settlement and in that adversary proceeding."  Decision at

36.  This is not the correct legal standard.  *Ejusdem generis* "applies only where

the general phrase follows [a] specific list of items, making it a 'residual'

phrase." *Pfizer, Inc. v. United States HHS*, 42 F.4th 67, 76 (2d Cir. 2022)

(citation omitted); *see also Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55,

63 (2004) (finding *ejusdem generis* ascribes to last item in sequence of items

same characteristic of discreteness shared by all preceding items).[7]  For

example, in *American Steamship Owners Mutual Protection v. Lafarge North*

*America, Inc.*, the court found that in the list "purchase, charter, lease, or

otherwise," the word "otherwise" did not cover a relationship with a barge that

it agreed "could not be characterized as having chartered, hired or leased."  No.

06-3123, 2008 U.S. Dist. LEXIS 75308, at *28 (S.D.N.Y. Sep. 29, 2008)

(finding proponent's interpretation "loads 'otherwise' with a heavier cargo than

it can carry").

     Here, *ejusdem generis* does not support the Bankruptcy Court's

determination that the Release is limited to Alpha Prime transfers based solely

on references to such transfers in certain other parts of the Settlement

Agreement but nowhere in the Release itself.  Indeed, the Release does not

include a list of released claims; the only mention of a specific claim is to a

---

[7] One court has explained, "if a law refers to automobiles, trucks, tractors,
motorcycles, and other motor-powered vehicles, a court might use *ejusdem generis*
to hold that such vehicles would not include airplanes, because the list included
only land-based transportation."  *Thar Process, Inc. v. Sound Wellness, LLC*, No.
21-422S, 2022 U.S. Dist. LEXIS 8789, at *36 n.8 (W.D.N.Y. Jan. 18, 2022)
(citation omitted).

single claim that was expressly ***not*** being released.  *See supra* at 7.  And, the phrase "any and all . . . claims . . . related to Madoff of BLMIS" is not a residual clause but simply identifies the actual claims the Trustee agreed to release.

As such, the Decision conflicts with many New York decisions that have held that "[w]hile it is true that general words of release are sometimes 'limited by the recital of a particular claim,' the mere recitation of the specific claims underlying a settlement will not undermine the broad prophylactic effect of general release language."  *Vornado Realty Tr. v. Marubeni Sustainable Energy, Inc.*, 987 F. Supp. 2d 267, 278 (E.D.N.Y. 2013) (citation omitted); *accord Chang*, 412 F. Supp. 3d at 244 (similar).  And, once again, the Bankruptcy Court's improper application of *ejusdem generis* renders meaningless the Release's language "in any way related to Madoff or BLMIS." *See Fraternity Fund, Ltd. v. Beacon Hill Asset Mgmt.*, 371 F. Supp. 2d 571, 576 (S.D.N.Y. 2005) (stating *ejusdem generis* "is inappropriate where it renders words or phrases meaningless or otherwise defeats the parties' intent").

### D. The Decision Undermines Litigants' Ability to Release Claims Beyond the Controversy Being Settled

The Bankruptcy Court further erred by calling into question parties' ability to enter into general releases.  Specifically, the Bankruptcy Court found that – despite the clear, broad language of the Release – Natixis is not released

from the instant claims because "none of the[] issues" resolved in the

Settlement Agreement "relate to the claims against Natixis for redemptions

from Fairfield Sentry."  Decision at 36.  If correct, litigants in this district will

face uncertainty whenever they enter into a release that extends beyond the

controversy resolved in a settlement, which is a common practice in New York.

*See, e.g.*, *Ali v. City of N.Y.*, No. 20-30, 2021 U.S. Dist. LEXIS 255741, at *19

(E.D.N.Y. Sep. 29, 2021) (recognizing concept of general releases, even where

releasing party does not "appreciate the reach . . . of the release"); *Steinfeld v.*

*IHS Health Inc.*, 2014 U.S. Dist. LEXIS 56178, at *32 (S.D.N.Y. Feb. 14,

2014) (noting that "judges and lawyers . . . need consult no expert to know the

nature and intended effect of a standard form so common as a general release")

(citation omitted).  Litigants could also use the Decision to challenge a general

release, no matter how clear its wording, and regardless of the sophistication of

the parties that negotiated it, undermining the finality litigants expected in these

resolutions.

### E. The Bankruptcy Court Wrongly Relied on the Consideration Provided by Alpha Prime to Determine the Parties' Intent

The Bankruptcy Court's determination that the consideration Alpha

Prime agreed to provide under the Settlement Agreement demonstrates that the

Release relates only to claims to recover Alpha Prime transfers is contrary to

New York law. *See* Decision at 36-37.[8] In fact, a release is not invalidated

even by "the absence of consideration." *Sandy Hollow Assocs. LLC v. Port*

*Wash. N.*, No. 09-2629, 2010 U.S. Dist. LEXIS 142396, at *77 (E.D.N.Y. Sep.

6, 2010) (citing N.Y. Gen. Oblig. L. § 15-303). The Bankruptcy Court also

wrongly relied on a decision where, unlike here, the settlement's language

discussing consideration specifically referred to the settlement of particular

claims. *See Consol. Edison, Inc. v. Ne. Utils.*, 332 F. Supp. 2d 639, 648

(S.D.N.Y. 2004).

In any event, even if consideration is relevant to the applicability of the

Release to Natixis, "reasonable jurists might disagree on" the Bankruptcy

Court's finding relating to the sufficiency of the consideration that the Trustee

received for the Release. *Reese*, 643 F.3d at 688. Alpha Prime had already

agreed to pay $76.5 million in connection with the Partial Settlement, which

was part of the overall resolution of the *Alpha Prime* Action, and to provide

potentially hundreds of millions of dollars in other benefits to the BLMIS

estate. *See supra* at 6-8. And, of course, a settling party "may wish to effect a

---

[8] *See, e.g.*, *Errico v. Pfizer Consol. Pension Plan*, No. 19-10211, 2021 U.S. Dist.
LEXIS 75833, at *51-52 (S.D.N.Y. Apr. 20, 2021) (finding plaintiff's "conclusion
that he settled too cheaply neither voids nor limits the [r]elease"); *Pilarczyk v.
Morrison Knudsen Corp.*, 965 F. Supp. 311, 322 (N.D.N.Y. 1997) ("[P]arties to a
contract are free to bargain as to the consideration exchanged, even if that
consideration is 'grossly unequal or of dubious value.'") (citation omitted).

settlement" to "bargain for general peace," and the Release here indicates an

intent to avoid further protracting this SIPA proceeding (pending for over 15

years). *Vornado Realty Tr.*, 987 F. Supp. 2d at 277 ("When general peace is

the consideration there can be no mutual mistake as to the extent of the injuries

[covered by a release], known or unknown.") (citation omitted).

Last, the Trustee's claims against Natixis are far from "unrelated" to the

Trustee's claims against Alpha Prime.  Decision at 37.  As the Bankruptcy

Court recognized, "[c]ases within this SIPA proceeding are filed in the same

'proceeding' – the SIPA proceeding," *id*. at 16, and the Trustee's Initial

Complaint against Natixis specifically sought to recover transfers from Alpha

Prime.  *See supra* at 5-6.

## III.    RESOLUTION OF THE APPEAL MATERIALLY ADVANCES
##         THE LITIGATION

An appeal materially advances the termination of the litigation if it

"promises to advance the time for trial or to shorten the time required for trial"

or has "the potential for substantially accelerating the disposition of the

litigation."  *Primavera Familienstifung v. Askin*, 139 F. Supp. 2d 567, 570

(S.D.N.Y. 2001) (citations omitted).  This question is "closely connected" with

"the question of whether there is a controlling issue of law."  *In re GM LLC

Ignition Switch Litig.*, 427 F. Supp. 3d 374, 393 (S.D.N.Y. 2019) (citation

omitted) (finding "third factor [] satisfied for many of the same reasons as the first").

For the reasons discussed, if this Court grants leave to appeal and reverses the Decision, Natixis and its affiliates would be dismissed from their respective actions, along with over $400 million in claims.

## IV.    ALTERNATIVELY, IF THE COURT DECLINES TO REVERSE THE ORDER, THE PARTIES SHOULD CONDUCT DISCOVERY ON THE SCOPE OF THE RELEASE

At most, the Bankruptcy Court identified an ambiguity as to the scope of the Release, relying on language outside the Release that is contrary to the plain language in the Release.  There is no other way to square the Bankruptcy Court's interpretation of the Release.  And, if the Bankruptcy Court did identify an ambiguity, then it erred by not simply denying Natixis's pre-discovery motion to dismiss so that the parties can conduct discovery on the scope of the Release.  *See Bristol-Myers Squibb Co. v. Matrix Labs. Ltd.*, 586 F. App'x 747, 750 (2d Cir. 2014) (finding on motion to dismiss that "district court's interpretation . . . is not the unambiguously correct interpretation of the agreement," and "[o]n remand, the court may consider extrinsic evidence concerning the contract").  In fact, this is what the Trustee requested in the event the Bankruptcy Court found an ambiguity.  *See* ECF No. 209, at 39 ("[I]f

the Court determines there is any ambiguity as to the Release's scope, the Court

can deny Natixis's Motion so discovery can be taken on the issue.").

## <u>CONCLUSION</u>

The Court should grant leave to appeal the Order.

Dated:  December 22, 2023
       New York, New York                    **DAVIS+GILBERT LLP**


                                   By: _/s/ Joseph Cioffi_____
                                       Joseph Cioffi
                                       H. Seiji Newman
                                       Bruce M. Ginsberg
                                       Adam M. Levy
                                       Christine DeVito
                                       1675 Broadway
                                       New York, NY 10019
                                       T: (212) 468-4800
                                       jcioffi@dglaw.com
                                       bginsberg@dglaw.com
                                       hsnewman@dglaw.com
                                       alevy@dglaw.com
                                       cdevito@dglaw.com

                                       *Attorneys for Defendant Natixis S.A.*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This document complies with the word limit of Fed. R. Bankr. P.

8013(f)(3)(A) because, excluding the parts of the document exempted by Fed. R.

Bankr. P. 8015(g), this document contains 5,177 words, according to the word-

count function of the word-processing system used to prepare the document.

2.      This document complies with the typeface requirements of Fed. R.

Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R. Bankr. P.

8015(a)(6) because this document has been prepared in a proportionally spaced

typeface using Microsoft Word in 14-point Times New Roman font.


Dated: December 22, 2023

*/s/ Joseph Cioffi*
_____
Joseph Cioffi
