# Exhibit B

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

[NOT FOR PUBLICATION]

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br>        Plaintiff-Applicant, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br>        Defendant. | No. 08-01789 (CGM) <br><br> SIPA LIQUIDATION <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br>        Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, <br><br>        Plaintiff, <br><br> v. <br><br> NATIXIS S.A. and TENSYR LTD., <br><br>        Defendants. | Adv. Pro. No. 10-05353 (CGM) |

**MEMORANDUM DECISION
DENYING DEFENDANT'S MOTION TO DISMISS**

**A P P E A R A N C E S :**

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
By:    Joanna F. Wasick

*Attorneys for Defendant Natixis S.A.*
DAVIS+GILBERT LLP
1675 Broadway
New York, NY 10019
By:    H. Seiji Newman

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the motion of the Defendant, Natixis S.A. ("Natixis"), to

dismiss the complaint of Irving Picard, the trustee ("Trustee") for the liquidation of Bernard L.

Madoff Investment Securities LLC ("BLMIS") seeking to recover subsequent transfers allegedly

consisting of BLMIS customer property.  Natixis seeks dismissal for lack of personal

jurisdiction, for failure to allege avoidability of the initial transfers, and for failure to allege that

it received BLMIS customer property.  Defendant argues that the Trustee released Natixis from

these claims in a prior settlement agreement in a related adversary proceeding.  Defendant also

asserts the affirmative defense of "good faith" and the safe harbor provision of the Bankruptcy

Code.  For the reasons set forth herein, the motion to dismiss is denied in its entirety.

## Jurisdiction

This is an adversary proceeding commenced in this Court, in which the main underlying

SIPA proceeding, Adv. Pro. No. 08-01789 (CGM) (the "SIPA Proceeding"), is pending.  The

SIPA Proceeding was originally brought in the United States District Court for the Southern

District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L.

Madoff Investment Securities LLC et al.*, No. 08-CV-10791, and has been referred to this Court.

This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1),

and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4).

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O).  Personal

jurisdiction has been contested by the Defendant and will be discussed *infra*.

## Background

The Court assumes familiarity with the background of the BLMIS Ponzi scheme and its SIPA proceeding. *See Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171, 178–83 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209, 212 L. Ed. 2d 217 (2022).

This adversary proceeding was filed on December 8, 2010. (Compl., ECF[1] No. 1). Via the amended complaint (the "Complaint"), the Trustee seeks to recover over $179,009,456 in customer property transferred to Natixis from Fairfield Sentry Limited ("Fairfield Sentry"). (Am. Compl. ¶¶ 122–25, ECF No. 193). The Trustee is seeking to recover an additional $35,190,115 in BLMIS' customer property transfers made from Fairfield Sentry to Tensyr Ltd. ("Tensyr" and with Natixis, "Defendants"). (*Id.* ¶¶ 126–29). In total, the Trustee seeks to recover over $214 in subsequent transfers of customer property made to Defendants. (*Id.* ¶ 9).

Natixis is a "corporate and investment bank organized under the laws of France as a *société anonyme à conseil d'administration*." (*Id.* ¶ 14). Natixis, along with the affiliates and subsidiaries it operates, provides services including retail banking, corporate and investment banking, and asset and private wealth management. (*Id.*). By 2008, Defendant employed over 22,000 people in 68 countries and held nearly €556 billion in assets. (*Id.* ¶ 19).

Tensyr was formed in 2006 as a limited company under the laws of Jersey by Natixis S.A. and Fairfield Greenwich Group ("FGG"). (*Id.* ¶ 20). It is a "special purpose investment vehicle," had no employees of its own, and operated through Natixis and the Fairfield Greenwich Group ("FGG"). (*Id.*). The Complaint describes Tensyr as an "orphan" entity with no employees of its own. (*Id.* ¶ 22). New York-based FGG agreed to act as "manager and information agent" for Tensyr. (*Id.* ¶¶ 23, 33).

---

[1] Unless otherwise indicated, all references to "ECF" are references to this Court's electronic docket in adversary proceeding 10-05353-cgm.

Natixis allegedly created Tensyr to exploit returns from Madoff. (*Id.* ¶ 3). In 2006, Defendants and FGG "created a structured notes program (the 'Tensyr Transaction') through which they provided investors with returns linked to Fairfield Sentry's performance. As part of this notes program, Tensyr purchased shares in, and redeemed shares from, Fairfield Sentry." (*Id.* ¶ 6). Profits were derived from BLMIS returns by both investing in Fairfield Sentry and by issuing notes linked to the performance of Fairfield Sentry. (*Id.* ¶ 22). Tensyr invested entirely in Fairfield Sentry. (*Id.* ¶ 3).

FGG is alleged to have been a New York-based de facto partnership. (*Id.* ¶ 3, 24). Its headquarters were in New York along with personnel and several partners. (*Id.* ¶¶ 24, 28, 34). Fairfield Sentry was "created, operated, and controlled by FGG in New York." (*Id.* ¶ 4). Fairfield Sentry maintained customer accounts with BLMIS's investment advisory business and "invest[ed] virtually all of its assets in its BLMIS customer accounts." (*Id.* ¶ 5); (*Id.* ¶ 32) ("Fairfield Sentry invested at least 95% of its assets with New York-based BLMIS."). Fairfield Sentry ultimately received over $2.8 billion in avoidable transfers of BLMIS customer property. (*Id.* ¶ 5).

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Fairfield Sentry and other feeder funds to avoid and recover fraudulent transfers of customer property in the amount of approximately $3 billion. (*Id.* ¶ 115). In 2011, the Trustee settled with Fairfield Sentry. (*Id.* ¶ 116). As part of the settlement, Fairfield Sentry consented to a judgment in the amount of $3.054 billion, (Consent J., 09-01239-cgm, ECF No. 109) of which only $70 million was repaid to the BLMIS customer property estate. The Trustee then commenced a number of adversary proceedings against subsequent transferees, like Defendant, to recover the approximately $3 billion in missing customer property.

In its motion to dismiss, Defendant argues that this Court lacks personal jurisdiction over it and that the Trustee has failed to allege that Defendant received BLMIS customer property, allege avoidability of the initial transfers, and plead actual knowledge of the fraud due to improper incorporation by reference.  Defendant argues that a prior settlement agreement released it from claims related to these transfers.  Defendant asserts the affirmative defenses of "good faith," and the "safe harbor" under § 546(e).  The Trustee opposes the motion to dismiss.  (Opp'n, ECF No. 209).  The Parties entered into a stipulation limiting oral argument to issues related to the purported release in the Alpha Prime Settlement.  (Stip. and Order, ECF No. 220).  The Court heard oral arguments on October 18, 2023.  (*See* Hr'g Tr., Oct. 18, 2023, ECF No. 227).

## Discussion

**Personal Jurisdiction**

Defendant objects to the Trustee's assertion of personal jurisdiction.  In the Complaint, the Trustee argues that Defendant purposefully availed itself of the laws of the United States and New York.  (Am. Compl. ¶ 21, ECF No. 193).

To survive a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the Trustee "must make a prima facie showing that jurisdiction exists."  *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018) (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34–35 (2d Cir. 2010)).  A trial court has considerable procedural leeway when addressing a pretrial dismissal motion under Rule 12(b)(2).  *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013).  "'It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion.'" *Dorchester Fin.*

*Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Marine Midland Bank,*

*N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)); *see also Picard v. BNP Paribas S.A.* (*In re*

*BLMIS*), 594 B.R. 167, 187 (Bankr. S.D.N.Y. 2018) (same).

 "Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the

motion by pleading in good faith, legally sufficient allegations of jurisdiction." *Dorchester Fin.*,

722 F.3d at 84–85 (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d

Cir. 1990)); *Picard v. Fairfield Greenwich Grp.* (*In re Fairfield Sentry Ltd.*), 627 B.R. 546, 565

(Bankr. S.D.N.Y. 2021) (same).  In this case, the Trustee has alleged legally sufficient

allegations of jurisdiction simply by stating that the "Defendants invested in Fairfield Sentry

knowing and intending that their investments would be investments with New York-based

BLMIS," and that the Defendants "intended that the funds they invested in Fairfield Sentry

would be used to purchase securities in the United States through New York-based BLMIS."

(Am. Compl. ¶¶ 29–30, ECF No. 193).  This allegation alone is sufficient to establish a prima

facie showing of jurisdiction over Defendant in the pre-discovery stage of litigation.  At the pre-

discovery stage, the allegations need not be factually supported.  *See Dorchester Fin. Securities*

*Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d. Cir. 2013) (an averment of facts is necessary only

after discovery).  That being stated, this was not the only allegation made by the Trustee.

 In order to be subjected to personal jurisdiction in the United States, due process requires

that a defendant have sufficient minimum contacts with the forum in which the defendant is sued

"'such that the maintenance of the suit does not offend traditional notions of fair play and

substantial justice.'"  *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501, 516 (Bankr.

S.D.N.Y. 2012) ("*BLI*") (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  The

pleadings and affidavits are to be construed "'in the light most favorable to the plaintiffs,

resolving all doubts in their favor.'" *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158,

163 (2d Cir. 2010) (quoting *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008));

*Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 187 (Bankr. S.D.N.Y. 2018).

> The Supreme Court has set out three conditions for the exercise of specific
> jurisdiction over a nonresident defendant. First, the defendant must have
> purposefully availed itself of the privilege of conducting activities within the
> forum State or have purposefully directed its conduct into the forum State.
> Second, the plaintiff's claim must arise out of or relate to the defendant's forum
> conduct. Finally, the exercise of jurisdiction must be reasonable under the
> circumstances.

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (cleaned up).

**Purposeful Availment**

"[M]inimum contacts . . . exist where the defendant purposefully availed itself of the

privilege of doing business in the forum and could foresee being haled into court there." *Charles

Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018). "Although a defendant's

contacts with the forum state may be intertwined with its transactions or interactions with the

plaintiff or other parties, a defendant's relationship with a third party, standing alone, is an

insufficient basis for jurisdiction." *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150

(2d Cir. 2019) (cleaned up). "It is insufficient to rely on a defendant's random, fortuitous, or

attenuated contacts or on the unilateral activity of a plaintiff with the forum to establish specific

jurisdiction." *Id.*

A party "purposefully avail[s] itself of the benefits and protections of New York laws by

knowing, intending and contemplating that the substantial majority of funds invested in Fairfield

Sentry would be transferred to BLMIS in New York to be invested in the New York securities

market." *BLI*, 480 B.R. at 517.

In the Complaint, the Trustee alleges that Defendant knowingly invested with New York-based BLMIS, via Fairfield Sentry. (Am. Compl. ¶ 29–30, ECF No. 193).  Defendant executed subscription agreements for purchasing shares of Fairfield Sentry, in which it affirmed "having received and read" one of the feeder fund's private placement memoranda.  (*Id.* ¶ 30–31).  These memoranda informed Defendant that:

> Fairfield Sentry invested at least 95% of its assets with New York-based BLMIS;
> BLMIS was Fairfield Sentry's investment adviser;
> BLMIS was registered with the U.S. Securities and Exchange Commission (the "SEC");
> BLMIS was the executing broker for Fairfield Sentry's investments;
> BLMIS's "split-strike conversion" trading strategy ('SSC Strategy') purportedly involved the purchase of U.S. equities, U.S. options, and U.S. Treasury securities . . . traded on U.S. exchanges, and the decisions regarding which U.S. securities to purportedly purchase, and when to make them, were made by BLMIS in New York;
> BLMIS was the custodian of Fairfield Sentry's investments with BLMIS; and
> BLMIS was "essential to the continued operation of" Fairfield Sentry.

(*Id.* ¶ 32).  Defendant's personnel drafted Tensyr's ratings memorandum, which was provided to New York ratings agencies to evaluate Tensyr's notes, contained details of BLMIS's activities in New York and the involvement of Madoff and FGG in Fairfield Sentry.  (*Id.* ¶¶ 28, 33–34).  The ratings memo discussed U.S.-listed investments, in which BLMIS purportedly invested.  (*Id.* ¶ 35).

Defendant structured a notes program, through which the Defendants and New York-based FGG provided investors with returns linked to Fairfield Sentry's performance.  (*Id.* ¶¶ 3, 6, 22–28).  The program "underwrote the tranches of the transaction and selected and liaised with New York-based rating agencies, legal advisors, and other service providers."  (*Id.* ¶¶ 6, 27).  Natixis had "numerous meetings in New York regarding Tensyr, including with FGG personnel."  (*Id.* ¶ 40).  Defendant communicated extensively via phone and email with FGG employees regarding Madoff, the feeder fund, and Tensyr on "how to convince Madoff to agree

to the creation of Tensyr." (*Id.* ¶¶ 40–43). Natixis and FGG jointly "drafted and revised talking points for a meeting with Madoff in New York to convince 'Uncle Bernie' to 'give[ ] the OK' to the Tensyr Transaction, which Madoff ultimately did." (*Id.* ¶ 42). In November 2006, Natixis and FGG "sought Madoff's direct authorization to form Tensyr, which he ultimately gave." (*Id.* ¶ 101). One partner of FGG, Andres Piedrahita, wrote via email to other FGG partners that "[a]fter months and hundreds of hours of work . . . lot[s] of sleepless nights . . . Uncle Bernie has given us the OK to go forward with the [transaction]." (*Id.*).

Fairfield Sentry invested all or substantially all of its assets into the BLMIS Ponzi scheme. (*Id.* ¶ 125); (09-01239 Compl. ¶ 228) ("Under Fairfield Sentry's offering memorandum, the fund's investment manager was required to invest no less than 95% of the fund's assets through BLMIS.") (adopted by reference, at paragraph 119, of this Complaint). Defendants "entered into subscription agreements for Fairfield Sentry shares that included New York choice of law, venue, service of process, and jurisdiction provisions." (Am. Compl. ¶ 46). They "voluntarily executed these subscription agreements each time they invested in Fairfield Sentry." (*Id.* ¶ 47).

Defendant allegedly used a New York bank account in the name of a New York-based subsidiary at Deutsche Bank Trust Company Americas "to send subscription payments to and receive redemption payments from Fairfield Sentry." (*Id.* ¶ 49). Natixis received redemption payments in this account. (*Id.*). Defendants delivered subscription funds to HSBC Bank USA correspondent accounts in New York, which were then deposited into BLMIS's account at JP Morgan Chase Bank in New York. (*Id.* ¶ 48).

The Complaint contains allegations that are legally sufficient to constitute a prima facie showing of jurisdiction. *Dorchester Fin. Securities Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d.

Cir. 2013). "[A]lthough physical presence in the forum is not a prerequisite to jurisdiction,

physical entry into the State—either by the defendant in person or through an agent, goods, mail,

or some other means—is certainly a relevant contact." *Walden v. Fiore*, 571 U.S. 277, 285

(2014). "[Defendant] intentionally tossed a seed from abroad to take root and grow as a new tree

in the Madoff money orchard in the United States and reap the benefits therefrom." *BLI*, 480

B.R. at 506. Defendant's alleged contacts with New York are not random, isolated, or fortuitous.

**Arise out of or relate to the Defendant's forum conduct**

As to the second prong, the suit must "arise out of *or relate to* the defendant's contacts

with the forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, __ U.S. __, 141 S. Ct. 1017,

1026, 209 L. Ed. 2d 225 (2021) (emphasis in original). "[P]roof that a plaintiff's claim came

about because of the defendant's in-state conduct" is not required. *Id.* at 1027. Instead, the court

need only find "an affiliation between the forum and the underlying controversy." *Goodyear*

*Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Picard v. BNP Paribas S.A.*

(*In re BLMIS*), 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) ("Where the defendant's contacts with

the jurisdiction that relate to the cause of action are more substantial, however, it is not

unreasonable to say that the defendant is subject to personal jurisdiction even though the acts

within the state are not the proximate cause of the plaintiff's injury.") (internal quotations

omitted).

Here, the Trustee is asserting subsequent transfer claims against Natixis for monies it

received from the BLMIS feeder funds, as a result of its operations with New York-based FGG.

(Am. Compl. ¶¶ 9, 22, 115–30). These allegations are directly related to its investment activities

with Fairfield Sentry. *BNP Paribas S.A.* 594 B.R. at 191 (finding that the redemption and other

payments the defendants received as direct investors in a BLMIS feeder fund arose from the

New York contacts such as sending subscription agreements to New York, wiring funds in U.S.

dollars to New York, sending redemption requests to New York, and receiving redemption

payments from a Bank of New York account in New York, and were the proximate cause of the

injuries that the Trustee sought to redress).

The suit is affiliated with the alleged in-state conduct. *Goodyear Dunlop Tires*

*Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

**Reasonableness**

Having found sufficient minimum contacts, the Court must determine if exercising

personal jurisdiction over the Defendant is reasonable and "comport[s] with fair play and

substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (internal

quotations omitted). Factors the Court may consider include the burden on the defendant, the

forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient

and effective relief, the interstate judicial system's interest in obtaining the most efficient

resolution of controversies, and the shared interest of the several States in furthering fundamental

substantive social policies. *Id.* at 477.

The exercise of jurisdiction is reasonable. Defendant is not burdened by this litigation.

Natixis has actively participated in this Court's litigation for over ten years. It is represented by

U.S. counsel, held bank accounts in New York, and submitted to the jurisdiction of New York

courts when it signed subscription agreements for share in Fairfield Sentry.[2] (Am. Compl. ¶¶

---

[2] Even though this Court held that the Defendant's consent to jurisdiction in New York courts
contained in the subscription agreements it signed prior to investing with Fairfield Sentry could
not be used as the sole basis for this Court's exercise of personal jurisdiction over an action by
foreign liquidators to recover redemption payments under British Virgin Island law, the fact that
Defendant agreed to submit to the jurisdiction of this Court is certainly a relevant factor in
determining whether the exercise of jurisdiction over Defendant is reasonable. *In Fairfield
Sentry v. Theodoor GGC Amsterdam* (*In re Fairfield Sentry Ltd.*), Case No. 10-13164 (SMB),

46–51).  The forum and the Trustee both have a strong interest in litigating BLMIS adversary proceedings in this Court.  *Picard v. Maxam Absolute Return Fund, L.P. (In re BLMIS)*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012); *Picard v. Chais (In re BLMIS)*, 440 B.R. 274, 278 (Bankr. S.D.N.Y. 2010); *Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 418 B.R. 75, 82 (Bankr. S.D.N.Y. 2009); *Picard v. Fairfield Greenwich Grp., (In re Fairfield Sentry Ltd.*), 627 B.R. 546, 568 (Bankr. S.D.N.Y. 2021); *see also In re Picard*, 917 F.3d 85, 103 (2d Cir. 2019) ("The United States has a compelling interest in allowing domestic estates to recover fraudulently transferred property.").

By alleging that Defendant intentionally invested in BLMIS, the Trustee has met his burden of alleging jurisdiction as to each subsequent transfer that originated with BLMIS.  And by alleging that Defendant used New York bank accounts, the Trustee has met his burden of alleging jurisdiction over each transfer that received through a New York bank account.

As recognized by the Second Circuit, "[w]hen these [subsequent transfer] investors chose to buy into feeder funds that placed all or substantially all of their assets with Madoff Securities, they knew where their money was going." *In re Picard*, 917 F.3d 85, 105 (2d Cir. 2019).  The Trustee has made a prima facie showing of personal jurisdiction with respect to all of the subsequent transfers at issue in this Complaint.

**12(b)(6) standard**

"To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  The claim is facially plausible when a plaintiff pleads facts that

---

Adv. No. 10-03496 (SMB), 2018 WL 3756343, at *12 (Bankr. S.D.N.Y. Aug. 6, 2018) ("Defendants' consent to the Subscription Agreement does not constitute consent to personal jurisdiction in the U.S. Redeemer Actions."), *aff'd*, *Fairfield Sentry Ltd. v. Citibank, N.A. London*, No. 19-CV-3911 (VSB), 2022 WL 3644436, at *9 (S.D.N.Y. Aug. 24, 2022).

allow the Court to draw a "reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for

more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 556 (2007) ("Asking for plausible grounds to infer an agreement does

not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise

a reasonable expectation that discovery will reveal evidence of illegal agreement.").  In deciding

a motion to dismiss, the Court should assume the factual allegations are true and determine

whether, when read together, they plausibly give rise to an entitlement of relief.  *Iqbal*, 556 U.S.

at 679.  "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge

that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."

*Twombly*, 550 U.S. at 556.

     In deciding the motion, "courts must consider the complaint in its entirety, as well as

other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in

particular, documents incorporated into the complaint by reference, and matters of which a court

may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322

(2007).  A complaint is "deemed to include any written instrument attached to it as an exhibit[,] .

. . documents incorporated in it by reference[,]" and other documents "integral" to the complaint.

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted).  A

document is "integral" to a complaint when the plaintiff has "actual notice" of the extraneous

information and relied on it in framing the complaint.  *DeLuca v. AccessIT Grp., Inc.*, 695 F.

Supp. 2d 54, 60 (S.D.N.Y. 2010) (citing *Chambers*, 282 F.3d at 153).

     The Trustee is seeking to recover subsequent transfers made to Defendant by Fairfield

Sentry.

**Recovery of Subsequent Transfers**

Pursuant to § 550(a) of the Bankruptcy Code, a trustee is entitled to recover avoided transfers of customer property from initial transferees as well as from "any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a). "To plead a subsequent transfer claim, the Trustee must plead that the initial transfer is avoidable, and the defendant is a subsequent transferee of that initial transferee, that is, that the funds at issue originated with the debtor." *Picard v. BNP Paribas S.A. (In re BLMIS),* 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018); *see also SIPC v. BLMIS (In re Consol. Proc. On 11 U.S.C. § 546(e))*, No. 12 MC 115, 2013 WL 1609154, at *7 (S.D.N.Y. Apr. 15, 2013). "Federal Civil Rule 9(b) governs the portion of a claim to avoid an initial intentional fraudulent transfer and Rule 8(a) governs the portion of a claim to recover the subsequent transfer." *BNP Paribas*, 594 B.R. at 195 (*citing Sharp Int'l Corp. v. State St. Bank & Trust Co., (In re Sharp Int'l Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005).

The Trustee only needs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff's burden at the pleading stage does not require exact accounting of the funds at issue. *BNP Paribas*, 594 B.R. at 195. Rather "[t]he plaintiff must allege the necessary vital statistics – the who, when, and how much – of the purported transfers to establish an entity as a subsequent transferee of the funds." *Id.* However, the plaintiff's burden at the pleading stage does not require dollar-for-dollar accounting of the exact funds at issue." *Id.*

While the Trustee must allege that the initial transfer from BLMIS to Fairfield Sentry is avoidable, he is not required to avoid the transfer received by the initial transferee before asserting an action against subsequent transferees. *IBT Int'l Inc. v. Northern (In re Int'l Admin Servs., Inc.)*, 408 F.3d 689, 706-07 (11th Cir. 2005). The Trustee is free to pursue any of the

immediate or mediate transferees, and nothing in the statute requires a different result. *IBT Int'l,*

*Inc. v. Northern* (*In re Int'l Admin. Servs., Inc.*), 408 F.3d 689, 706-07 (11th Cir. 2005).

The Trustee pleaded the avoidability of the initial transfer (from BLMIS to Fairfield

Sentry) by adopting by reference the entirety of the complaint filed against Fairfield Sentry in

adversary proceeding 09-1239 ("Fairfield Complaint"). (Am. Compl. ¶ 119, ECF No. 193).

Whether the Fairfield Complaint properly pleads the avoidability of the initial transfer, is

governed by Rule 9(b). Rule 9(b) states: "In alleging fraud or mistake, a party must state with

particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and

other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

> Where the actual fraudulent transfer claim is asserted by a bankruptcy trustee,
> applicable Second Circuit precedent instructs courts to adopt a more liberal view
> since a trustee is an outsider to the transaction who must plead fraud from second-
> hand knowledge. Moreover, in a case such as this one, where the Trustee's lack of
> personal knowledge is compounded with complicated issues and transactions that
> extend over lengthy periods of time, the trustee's handicap increases, and even
> greater latitude should be afforded.

*Picard v. Cohmad Secs. Corp.,* (*In re BLMIS*), 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011)

(cleaned up).

**Adoption by Reference**

The Trustee has adopted by reference allegations contained in his complaint against

Fairfield Sentry. (Am. Compl. ¶ 119, ECF No. 193). "Adoption by reference is governed by

Rule 10 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 10(c). Rule 10(c) states: "A

statement in a pleading may be adopted by reference elsewhere in the same pleading or in any

other pleading or motion." The district court has already found that adoption by reference of the

entire Fairfield Complaint is proper. *See SIPC v. BLMIS* (*In re Consolidated Proceedings on 11*

*U.S.C. § 550(a)*), 501 B.R. 26, 36 (S.D.N.Y. 2013) ("The Trustee's complaint against Standard

Chartered Financial Services incorporates by reference the complaints against Kingate and

Fairfield, including the allegations concerning the avoidability of the initial transfers, and further

alleges the avoidability of these transfers outright. Thus, the avoidability of the transfers from

Madoff Securities to Kingate and Fairfield is sufficiently pleaded for purposes of section

550(a).") (cleaned up).

      The Court will follow the district court's instruction.  As was explained in *In re Geiger,*

pleadings filed in the "same action" may be properly adopted by reference in other pleadings in

that action.  446 B.R. 670, 679 (Bankr. E.D. Pa. 2010).  The Fairfield Complaint was filed in the

"same action" as this adversary proceeding for purposes of Rule 10(c).  *Id.*  Cases within this

SIPA proceeding are filed in the same "proceeding"—the SIPA proceeding.  *In re Terrestar

Corp.*, No. 16 CIV. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary

proceedings filed in the same bankruptcy case do not constitute different cases."); *see also Sec.

Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 610 B.R. 197, 237 (Bankr. S.D.N.Y. 2019)

("The prior decisions within this SIPA proceeding constitute law of the case . . . . "); *Sec. Inv.

Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 603 B.R. 682, 700 (Bankr. S.D.N.Y. 2019),

(citing *In re Motors Liquidation Co*., 590 B.R. 39, 62 (S.D.N.Y. 2018) (law of the case doctrine

applies across adversary proceedings within the same main case), *aff'd*, 943 F.3d 125 (2d Cir.

2019)); *Perez v. Terrastar Corp. (In re Terrestar Corp.)*, No. 16 Civ. 1421 (ER), 2017 WL

1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings filed in the same bankruptcy

case do not constitute different cases."), *appeal dismissed*, No. 17-1117 (2d Cir. June 29, 2017);

*Bourdeau Bros., Inc. v. Montagne (In re Montagne)*, No. 08-1024 (CAB), 2010 WL 271347, at

*6 (Bankr. D. Vt. Jan. 22, 2010) ("[D]ifferent adversary proceedings in the same main case do

not constitute different 'cases.'").

 Some courts have worried that wholesale incorporation of a pleading can lead to
"confusing and inconvenient" results. *Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 446–47
(E.D. Va. 2009) (footnote omitted), *aff'd*, 382 F. App'x 256 (4th Cir. 2010).  That is not a
concern in these proceedings.  Defendant, like many subsequent transfer defendants in this SIPA
proceeding, is aware of what has been filed in the other adversary proceeding in this SIPA
liquidation.  It routinely follows what is happening on a proceeding-wide basis.  (*See* Suppl.
Mem. L., ECF No. 90).

Allowing the Trustee to incorporate the Fairfield Complaint by reference does not
prejudice the Defendant.  If the Court were to dismiss this Complaint and permit the Trustee to
amend his Complaint to include all of the allegations that are already contained in the Fairfield
Complaint, all parties would be prejudiced by delay in these already, overly-prolonged
proceedings.  *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No.
09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("Rule 15 places no
time bar on making motions to amend pleadings and permits the amending of pleadings "when
justice so requires.").

Through the adoption of the Fairfield Complaint, the Trustee has adequately pleaded,
with particularity, the avoidability of the initial due to Fairfield Sentry's knowledge of BLMIS'
fraud.  (Fairfield Compl. ¶¶ 314–318, 09-01239, ECF No. 286); *see also SIPC v. BLMIS* (*In re
Consolidated Proceedings on 11 U.S.C. § 550(a)*), 501 B.R. 26, 36 (S.D.N.Y. 2013) ("[T]he
Court directs that the following adversary proceedings be returned to the Bankruptcy Court for
further proceedings consistent with this Opinion and Order . . . .").

Natixis argues that incorporation of the entirety of the Fairfield Complaint violates Rule
8's requirement for "a short and plain statement."  (Mem. L. at 24, ECF No. 199); Fed. R. Civ. P.

8(a)(2). The Court disagrees. Defendant has been following this case and has been familiar with the allegations contained in the Fairfield Complaint for over a decade. Indeed, Defendant has been privy to information that this Court has not seen. Fairfield Sentry has a complicated corporate structure with various insiders many of whom are alleged to have had knowledge of BLMIS' fraud. The Trustee has to plead nearly the entire Fairfield Complaint to demonstrate that the initial transfer is voidable. This Court has reviewed the Fairfield Complaint, in detail, on numerous occasions and there is not much of that document that could be omitted. Insisting that the Trustee re-allege all of the allegations contained in the Fairfield Complaint is an unnecessary, dilatory tactic by the Defendant.

**The Safe Harbor does not bar the avoidance of the Fairfield Initial Transfers**

Defendant has raised the "safe harbor" defense, found in § 546(e), to the Trustee's allegations. Section 546(e) is referred to as the safe harbor because it protects a transfer that is a "settlement payment ... made by or to (or for the benefit of) a ... financial institution [or] financial participant," or that is "made by or to (or for the benefit of) a ... financial institution [or] financial participant ... in connection with a securities contract." 11 U.S.C. § 546(e). "By its terms, the safe harbor is a defense to the avoidance of the *initial* transfer." *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis in original). Where the initial transferee fails to raise a § 546(e) defense against the Trustee's avoidance of certain transfers, as is the case here, the subsequent transferee is entitled to raise a § 546(e) defense against recovery of the initial transfer. *Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3 (Bankr. S.D.N.Y. Aug. 6, 2021).

On the issue of the safe harbor, the Court adopts the district court's reasoning in: *Picard v. Multi-Strategy Fund Ltd.* (*In re BLMIS*), No. 22-CV-06502 (JSR), 2022 WL 16647767 (S.D.N.Y. Nov. 3, 2022).

The Trustee has alleged that Fairfield Sentry knew the payments it received from BLMIS were neither settlement payments nor payments in connection with a securities contract. (Am. Compl. ¶ 119, ECF No. 193). "The safe harbor was intended, among other things, to promote the reasonable expectations of legitimate investors. If an investor knew that BLMIS was not actually trading securities, he had no reasonable expectation that he was signing a contract with BLMIS for the purpose of trading securities for his account. In that event, the Trustee can avoid and recover preferences and actual and constructive fraudulent transfers to the full extent permitted under state and federal law." *Picard v. Legacy Capital Ltd. (In re BLMIS)*, 548 B.R. 13, 28 (Bankr. S.D.N.Y. 2016) (internal citations omitted), *vacated and remanded on other grounds, Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171 (2d Cir. 2021)).

The district court determined that "those defendants who claim the protections of Section 546(e) through a Madoff Securities account agreement but who actually knew that Madoff Securities was a Ponzi scheme are not entitled to the protections of the Section 546(e) safe harbor, and their motions to dismiss the Trustee's claims on this ground must be denied." *SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 546(e)*), No. 12 MC 115(JSR), 2013 WL 1609154, at *10 (S.D.N.Y. Apr. 15, 2013); *see also Picard v. Multi-Strategy Fund Ltd.* (*In re BLMIS*), No. 22-CV-06502 (JSR), 2022 WL 16647767, at *7 (S.D.N.Y. Nov. 3, 2022) ("[I]n circumstances in which a transferee was complicit in Madoff Securities' fraud, Section 546(e) d[oes] not apply as a matter of its express terms.").

This Court is powerless to reconsider this issue, agrees with the district court's reasoning, and finds its holding consistent with *dicta* set forth by the Court of Appeals for the Second Circuit. *See Picard v. Ida Fishman Revocable Trust* (*In re Bernard L. Madoff Inv. Sec. LLC*), 773 F.3d 411, 420 (2d Cir. 2014) ("The clawback defendants, having every reason to believe that BLMIS was actually engaged in the business of effecting securities transactions, have every right to avail themselves of all the protections afforded to the clients of stockbrokers, including the protection offered by § 546(e).").

This Court has already determined that the Fairfield Complaint contains sufficient allegations of Fairfield Sentry's actual knowledge to defeat the safe harbor defense on a Rule 12(b)(6) motion. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at \*4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("[T]he Trustee has alleged that the agents and principals of the Fairfield Funds had actual knowledge of Madoff's fraud"). In that adversary proceeding, the Court held that "[t]he Trustee has pled [actual] knowledge in two ways: 1) that certain individuals had actual knowledge of Madoff's fraud, which is imputed to the Fairfield Funds; and 2) that actual knowledge is imputed to the Fairfield Funds through 'FGG,' an alleged 'de facto' partnership." *Id.* at \*4; *see also* Fairfield Compl. ¶ 320 ("Fairfield Sentry had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 321 ("Greenwich Sentry and Greenwich Sentry Partners had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 322 ("FIFL had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 323 ("Stable Fund had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 324 ("FG Limited had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 325 ("FG Bermuda had actual knowledge of the fraud at BLMIS"); ¶ 326 ("FG Advisors had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 327 ("Fairfield International

Managers had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 328 ("FG Capital

had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 329 ("Share Management had

actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 9 ("It is inescapable that FGG

partners knew BLMIS was not trading securities. They knew BLMIS's returns could not be the

result of the split strike conversion strategy (the "SSC Strategy"). They knew BLMIS's equities

and options trading volumes were impossible. They knew that BLMIS reported impossible, out-

of-range trades, which almost always were in Madoff's favor. They knew Madoff's auditor was

not certified and lacked the ability to audit BLMIS. They knew BLMIS did not use an

independent broker or custodian. They knew Madoff refused to identify any of BLMIS's options

counterparties. They knew their clients and potential clients raised numerous due diligence

questions they would not and could not satisfactorily answer. They knew Madoff would refuse to

provide them with honest answers to due diligence questions because it would confirm the

details of his fraud.  They knew Madoff lied about whether he traded options over the counter or

through the exchange. They knew they lied to clients about BLMIS's practices in order to keep

the money flowing and their fees growing. And they knowingly misled the SEC at Madoff's

direction.").

        "In sum, if the Trustee sufficiently alleges that the [initial] transferee from whom he

seeks to recover a fraudulent transfer knew of [BLMIS ]'[s] fraud, that transferee cannot claim

the protections of Section 546(e)'s safe harbor." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv.

Sec. LLC*, No. 08-01789 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021).

        This Court determined that the Fairfield Complaint is replete with allegations

demonstrating that Fairfield Sentry had actual knowledge that BLMIS was not trading securities.

*See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789(CGM), Adv. No. 09-01239

(CGM), 2021 WL 3477479, at *3–*7 (Bankr. S.D.N.Y. Aug. 6, 2021).  Where § 546(e) does not

"embrace the initial transfer, the subjective knowledge of a subsequent transferee cannot

retroactively render it applicable."  *Picard v. Multi-Strategy Fund Ltd.* (*In re BLMIS*), No. 22-

CV-06502 (JSR), 2022 WL 16647767, at *7 (S.D.N.Y. Nov. 3, 2022).  The Trustee's allegations

in the Fairfield Complaint are sufficient to survive a Rule 12(b)(6) motion on this issue.

Whether the safe harbor applies to the initial transfers under the theory that BLMIS'

transfers to Fairfield Sentry were made in connection with Fairfield Sentry's contracts with

Defendant (rather than a contract with BLMIS) is not answerable on the pleadings.  If such a

fact-specific determination is needed, the Court will make it with the benefit of a "full factual

record."  *Picard v. Multi-Strategy Fund Ltd.* (*In re BLMIS*), No. 22-CV-06502 (JSR), 2022 WL

16647767, at *9 (S.D.N.Y. Nov. 3, 2022).

**The Safe Harbor cannot be used to defeat a subsequent transfer**

The safe harbor cannot be used to prevent the Trustee from avoiding the subsequent

transfer between Fairfield Sentry and Defendant on account of the securities contracts between

Fairfield Sentry and Defendant.  The safe harbor is not applicable to subsequent transfers.  "By

its terms, the safe harbor is a defense to the avoidance of the *initial* transfer."  *Picard v. BNP

Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis in original);

*see also* 11 U.S.C. § 546(e) (failing to include § 550 in its protections).  Since there must be an

initial transfer in order for the Trustee to collect against a subsequent transferee, a subsequent

transferee may raise the safe harbor as a defense—but only in so far as the avoidance of the

initial transfer is concerned.  The safe harbor cannot be used as a defense by the subsequent

transferee because the Trustee is not "avoiding" a subsequent transfer, "he recovers the value of

the avoided initial transfer from the subsequent transferee under 11 U.S.C. § 550(a), and the safe

harbor does not refer to the recovery claims under section 550." *BNP Paribas S.A.* 594 B.R. at
197.

## Whether BLMIS's Initial Transfers Are Avoidable as Intentionally Fraudulent Conveyances

Natixis argues that the Trustee may not rely on the Ponzi scheme presumption, which the
Defendant describes as "not settled law." (Mem. L. at 37–38, ECF No. 199). Defendant relies
on Judge Menashi's concurrence in *Picard v. Citibank* (*In re BLMIS*), 12 F.4th 171 (2d Cir.
2021*) cert. denied*, 142 S. Ct. 1209 (2022) ("*Citibank*") to argue that the presumption obscures
the differences between transfers and preferences. (*Id.*).

In relevant part, § 548(a)(1)(A) allows the Trustee to avoid any transfer made within two
years before the filing date of this SIPA action, if BLMIS made the transfer with "actual intent to
hinder, delay, or defraud." 11 U.S.C. § 548(a)(1)(A). Because the Trustee has pleaded that
BLMIS operated a Ponzi scheme, the Trustee's burden of pleading actual fraudulent intent is
satisfied. (Am. Compl. ¶¶ 70–95). The "Ponzi scheme presumption" allows courts to presume
actual intent to defraud on part of the operator of the Ponzi scheme. *Donell v. Kowell*, 533 F.3d
762, 770 (9th Cir. 2008) ("The mere existence of a Ponzi scheme is sufficient to establish actual
intent to defraud."). In this case, the Ponzi scheme presumption allows the Court to presume that
BLMIS made the initial transfers with actual intent to defraud because Madoff has admitted to
operating a Ponzi scheme.

The mere existence of a Ponzi scheme "demonstrates actual intent as matter of law
because transfers made in the course of a Ponzi scheme could have been made for no purpose
other than to hinder, delay or defraud creditors." *Bear Stearns Secs. Corp. v. Gredd (In re
Manhattan Inv. Fund Ltd.)*, 397 B.R. 1, 8 (S.D.N.Y. 2007). The "Ponzi scheme presumption"

makes perfect sense in cases such as this one.  BLMIS had no legitimate assets and therefore

every transfer made by BLMIS was made with actual intent to defraud in order to ensure that

Ponzi scheme would survive.

The Trustee has pleaded that BLMIS operated a Ponzi scheme and as such, BLMIS'

actual fraudulent intent is presumed via the Ponzi scheme presumption.  (Am. Compl. ¶¶ 70–95).

Intent to defraud is established as debtor operated a Ponzi scheme.  *Picard v. Cohen*, Adv. Pro.

No. 10-04311 (SMB), 2016 WL 1695296, at *5 (Bankr. S.D.N.Y. Apr. 25, 2016) (citing

*Omnibus Good Faith Decision*, 531 B.R. at 471) ("the Trustee is entitled to rely on the Ponzi

scheme presumption pursuant to which all transfers are deemed to have been made with actual

fraudulent intent"); *Picard v. Cohmad Sec. Corp.*, 454 B.R. 317, 330 (Bankr. S.D.N.Y. 2011)

("the fraudulent intent on the part of the debtor/transferor . . . is established as a matter of law by

virtue of the 'Ponzi scheme presumption'").  That BLMIS operated as a Ponzi scheme is well-

established and the Court relies on earlier findings of same and holds that the Trustee has met its

burden of pleading BLMIS' actual intent on this issue.  *See Picard v. Legacy Capital Ltd.*, 603

B.R. 682, 688–93 (Bankr. S.D.N.Y. 2019) (discussing in detail that BLMIS was a Ponzi scheme

and why the Trustee is permitted to rely on the Ponzi scheme presumption to prove intent as a

matter of law).

This Court has re-read Judge Menashi's concurrence in *Citibank* and finds it to be

unpersuasive.  The Ponzi scheme presumption does not turn would-be preferences into

fraudulent transfers.  All the Ponzi scheme presumption does is save the Trustee and the courts

time and resources by presuming that each transfer was made with actual fraudulent intent.  As

the District Court has stated, "[n]otwithstanding Judge Menashi's concerns, 'the Ponzi scheme

presumption remains the law of this Circuit.'"  *Picard v. Sage Realty*, No. 20 CIV. 10057 (JFK),

2022 WL 1125643, at *28 (S.D.N.Y. Apr. 15, 2022), *aff'd sub nom. In re Bernard L. Madoff Inv. Sec. LLC*, No. 22-1107, 2023 WL 5125596 (2d Cir. Aug. 10, 2023), and *aff'd sub nom. In re Bernard L. Madoff Inv. Sec. LLC*, No. 22-1107, 2023 WL 5439455 (2d Cir. Aug. 24, 2023) (citing *Gredd*, 397 B.R. at 11); *see also Brown v. Picard (In re BLMIS)*, No. 22-CV-3882 (VEC), 2023 WL 4744195, at *5 (S.D.N.Y. July 25, 2023) ("The Bankruptcy Court correctly concluded that the transfers at issue in this case are subject to the presumption of fraudulent intent that applies to a Ponzi scheme.").  The Court agrees with "every court to opine on the application of the presumption in the context of the BLMIS Ponzi scheme" and will not now discard the presumption.  *Sage Realty*, 2022 WL 1125643, at *28.

**BLMIS Customer Property**

Defendant argues that the Complaint fails to plead receipt of BLMIS customer property. (Mem. L. at 25, ECF No. 199).  The Trustee has pleaded that "[p]rior to the Filing Date, Fairfield Sentry subsequently transferred a portion of the Sentry Initial Transfers, directly or indirectly, to Natixis . . . . Based on the Trustee's investigation to date, the Sentry-Natixis S.A. Subsequent Transfers total approximately $179,009,456."  (Am. Compl. ¶ 122, ECF No. 193); (*see also id.* Ex. C).  The Complaint sets forth the initial transfers of customer property from BLMIS to Fairfield Sentry.  (*Id.* Ex. A, B).  The exhibits to the Complaint provide Defendant with the exact date and amount of each transfer the Trustee is seeking to recover.  These exhibits provide Defendant with the "who, when, and how much" of each transfer.  *BNP Paribas S.A.*, 594 B.R. at 195.

Defendant argues that the allegations are "mathematically implausible."  (Mem. L. at 27, ECF No. 199).  That is, the Trustee alleges that BMLIS transferred approximately $2.9 billion to

Fairfield Sentry but seeks to recover $5.3 billion in transfers from Fairfield Sentry to other alleged subsequent transfer defendants in this proceeding." (*Id.*).

To consider allegations made in dozens of other complaints filed by the Trustee in this SIPA proceeding is impractical and not required at this stage of the litigation. The other complaints have not been adopted by reference by the Trustee in this adversary proceeding and, as such, are not within the Court's power to consider on a Rule 12(b)(6) motion. *Williams v. Time Warner Inc.*, 440 Fed.Appx. 7, 9 (2d Cir. 2011) ("A district court, in deciding whether to dismiss a complaint under Rule 12(b)(6), is generally limited to the facts as presented within the four corners of the complaint, to documents attached to the complaint, or to documents incorporated within the complaint by reference.") (citing *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002)).

In order to determine how Fairfield Sentry spent the billions of dollars it received from BLMIS, this Court would need review financial documents in order to trace the monies to all of Fairfield Sentry's principals, insiders, creditors, and customers. Undoubtedly, the Court will trace and calculate how Fairfield Sentry spent its BLMIS (and any non-BLMIS) funds at a later stage of litigation. At this stage, the Trustee need only assert allegations that make it plausible that Defendants received BLMIS monies.

Defendant further argues that approximately $101 million of subsequent transfers could not have been comprised of BLMIS funds as those transfers were "made when no BLMIS funds were available to plausibly comprise such transfers." (Mem. L. at 28, ECF No. 199). The Defendant argues that the Trustee pleads that "BLMIS transferred a total of $1.55 billion to Sentry prior to January 31, 2008 . . ., the date of the first alleged Subsequent Transfer to Natixis"

while "as of January 31, 2008, Sentry had already allegedly transferred a total of $2.77 billion to other subsequent transferees." (*Id.*).

However, the Court finds that the Trustee has plausibly alleged Defendant received BLMIS customer property. The Complaint states that Fairfield Sentry did not have any assets that were not BLMIS customer property. The Fairfield Complaint, which is incorporated by reference into this Complaint, alleges that the Fairfield Fund was required to invest 95% of its assets in BLMIS. (Fairfield Compl. ¶ 89); *see also* (Fairfield Compl. ¶ 91) ("From the beginning, to comport with Madoff's requirement for BLMIS feeder funds, Fairfield Sentry ceded control of not only its investment decisions, but also the custody of its assets, to BLMIS.").

Accepting these allegations as true, the gap between the initial and subsequent transfer is of no consequence because 95% of all Fairfield assets are allegedly BLMIS customer property. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (court must accept factual allegations as true). It is more plausible that the subsequent transfers that the Trustee seeks to recover from Defendant came from BLMIS customer property than that it came from some other unnamed source.

The Fairfield Complaint, which is incorporated by reference into this, alleges that the Fairfield Fund was required to invest 95% of its assets in BLMIS. (Fairfield Compl. ¶ 89); *see also* (Fairfield Compl. ¶ 91) ("From the beginning, to comport with Madoff's requirement for BLMIS feeder funds, Fairfield Sentry ceded control of not only its investment decisions, but also the custody of its assets, to BLMIS."). The Complaint plausibly alleges that Fairfield Sentry did not have any assets that were not customer property. In this case, the Trustee is not seeking to collect $5 billion from Defendants. He is seeking approximately $$74,468,402.00, which easily could come from the $3 billion Fairfield received from BLMIS. If the Court were to accept Defendants argument, it would need to do one of two things: 1) dismiss ALL of the Trustee's

subsequent transfer claims in all of the adversary proceedings since the Court has no idea which

transfers came from BLMIS customer property; or 2) hold a pre-discovery trial on all of the

subsequent transfers actions to determine which transfers were made from the $3 billion of

BLMIS customer property and which were not.  The Court is simply not willing to have such a

trial at this stage of litigation.

Taking all allegations as true and reading them in a light most favorable to the Trustee,

the Complaint plausibly pleads that Defendants received customer property because Fairfield

Sentry did not have other property to give.  The calculation of Fairfield Sentry's customer

property and what funds it used to make redemption payments are issues of fact better resolved

at a later stage of litigation.

**Whether Defendants took the transfers for value, in good faith, and without knowledge of
the voidability of the initial transfers?**

Defendant has raised the "good faith defense" under § 550(b), arguing that this Court

should dismiss the Trustee's complaint because it took "for value," "in good faith," and "without

knowledge of the voidability of the transfers."  (Mem. L. at 30, ECF No. 199).

"An affirmative defense may be raised by a pre-answer motion to dismiss under Rule

12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of

the complaint."  *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998).  "Not

only must the facts supporting the defense appear on the face of the complaint, but, as with all

Rule 12(b)(6) motions, the motion may be granted only where it appears beyond doubt that the

plaintiff can prove no set of facts in support of his claim that would entitle him to relief."

*McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (cleaned up).  A "plaintiff is entitled to all

reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the [affirmative] defense." *Id.*

i.      *For Value*

The "value" that a subsequent transferee must provide is "merely consideration sufficient to support a simple contract, analogous to the 'value' required under state law to achieve the status of a bona fide purchaser for value." *Picard v. Legacy Capital Ltd.* (*In re BLMIS*), 548 B.R. 13, 37 (Bankr. S.D.N.Y. 2016) (citation omitted); *accord Enron Corp. v. Ave. Special Situations Fund II, L.P.* (*In re Enron Corp.*), 333 B.R. 205, 236 (Bankr. S.D.N.Y. 2005).  In addition, the "value" element under § 550(b)(1) looks to what the transferee gave up rather than what the transferor received.

Defendant argues that the redemptions were received in exchange for surrendering equity interests.  (Mem. L. at 30, ECF No. 199).  If Defendant knew at the time it redeemed its shares that the shares were worthless, then it did not receive the subsequent transfer funds "for value" as is required under § 550.  *See Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, 596 B.R. 275, 301 (Bankr. S.D.N.Y. 2018), *aff'd sub nom. Fairfield Sentry Ltd. v. Citibank, N.A. London*, No. 19-CV-3911 (VSB), 2022 WL 4391023 (S.D.N.Y. Sept. 22, 2022) ("The only exception concerns the Knowledge Defendants that received redemption payments with the knowledge that the NAV was wrong. In those circumstances, the Liquidators may seek to impose a constructive trust.").  It has not yet been determined whether Defendant knew if the shares it redeemed from Fairfield Sentry had value.

 "Value" is Defendant's burden to plead and prove.  *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 198 (Bankr. S.D.N.Y. 2018).  Whether the Defendant gave value is a question of fact to be resolved either at the summary judgment stage or at trial.  *Picard v.*

*Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at \*9 (Bankr. S.D.N.Y. Aug. 6, 2021).

      *ii.*     *Good Faith*

Where, in light of surrounding circumstances, a transferee should have known of the debtor's precarious financial condition, the transferee will be deemed to have taken in bad faith, unless an investigation into the debtor's financial condition actually discloses no reason to suspect financial trouble.  2 Bankruptcy Desk Guide § 19:105.  The District Court has explained that good faith is a fact-intensive inquiry that almost always requires a trial: "The Second Circuit made clear in its decision in [*Picard v.*] *Citibank*[*, N.A. (In re BLMIS)*, 12 F.4th 171 (2d Cir. 2021), *cert. denied* No. 21-1059 (Feb. 28, 2022)] that the inquiry notice standard requires a 'fact-intensive inquiry to be determined on a case-by-case basis, which naturally takes into account the disparate circumstances of differently-situated transferees.'"  *In re BLMIS, LLC*, Dec. & Order, 20-cv-02586(CM) (May 2, 2022).  And that "such a fact-based determination can only be made based on the entirety of the factual record after discovery . . . ."  *Id.* (internal quotation omitted).

The burden of proving good faith falls squarely on Defendant, and this Court cannot make a determination on Defendant's affirmative defense until after a fact-intensive inquiry. Discovery is required on this issue.

      *iii.*     *Knowledge of the Voidability*

Good faith is linked with whether one had knowledge of the voidability of the transfer. *Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171, 189 (2d Cir. 2021) ("[A] transferee does not act in good faith when he has sufficient actual knowledge to place him on inquiry notice of the debtor's possible insolvency."), *cert. denied sub nom. Citibank, N.A. v. Picard*, 212 L. Ed. 2d 217, 142 S. Ct. 1209 (2022).  Having determined that "good faith" cannot be found on the face of

a complaint, the Court must deny the Defendant's motion on this element.  Additionally, §

550(b)(1) provides a defense to recovery making lack of knowledge Defendants burden to plead

and prove.  It is a fact-intensive inquiry that requires a three-step inquiry into 1) what Defendant

subjectively knew; "whether these facts put [Defendant] on inquiry notice of the fraudulent

purpose behind a transaction—that is, whether the facts the transferee knew would have led a

reasonable person in the [Defendant's] position to conduct further inquiry into a debtor-

transferor's possible fraud; and whether "diligent inquiry by [Defendant] would have discovered

the fraudulent purpose of the transfer."  *Id.* at 192.

It is not appropriate for the Court to resolve these factual issues at this stage of the

litigation.

## The Alpha Prime Settlement

The Trustee and Alpha Prime Fund Limited ("Alpha Prime") entered into a settlement on

June 20, 2022, in *Picard v. HSBC Bank PLC*, Adv. Pro. No. 09-01364 (CGM) (Bankr. S.D.N.Y.)

(the "Alpha Prime Action").  That settlement states in relevant part that

> the Trustee, on behalf of himself and BLMIS, and its consolidated estates, hereby
> releases, acquits and forever discharges Alpha Prime and Alpha Prime Asset
> Management LTD and its respective current and former directors . . . officers,
> employees, direct or indirect shareholders, limited partners, principals, members,
> successors, assigns, accountants, attorneys, from any and all past, present or
> future actions, causes of action, suits, debts, dues, sums of money, accounts,
> reckonings, bonds, bills, specialties, covenants, contracts, controversies, damages,
> judgments, and claims whatsoever, asserted or unasserted, known or unknown,
> arising out of or in any way related to Madoff or BLMIS. For the avoidance of
> doubt, Alpha Prime is not released from the Six-Year Transfer Recovery Claim
> until either (i) Alpha Prime has paid to the Trustee the Six-Year Transfers or (ii)
> the Six-Year Transfers are deemed unrecoverable from Alpha Prime as set forth
> in paragraphs 5 above and 10 below.

(Cioffi Decl., Ex. 4 Alpha Prime Settlement Agreement ¶ 7, ECF No. 200) (the "Settlement").

Natixis argues that the Settlement releases the Trustee's claims against it in this adversary

proceeding. (Mem. L. at 10, ECF No. 199). The Trustee argues that releasing Defendant on the

basis of this settlement would be an "undeserved windfall," as "the Settlement mentions neither

Sentry nor Natixis." (Opp'n at 26, ECF No. 209). Under the Trustee's reading, "the Settlement

unambiguously establishes that the Trustee and Alpha Prime intended that the Trustee release

claims for transfers from Alpha Prime only." (*Id.* at 27).

A release is a type of contract governed by principles of contract law. *See Golden Pac.

Bancorp v. Fed. Deposit Ins. Corp.,* 273 F.3d 509, 514 (2d Cir.2001); *Ackoff–Ortega v.

Windswept Pac. Entm't Co.,* 120 F.Supp.2d 273, 282 (S.D.N.Y.2000), *aff'd,* 46 Fed.Appx. 663

(2d Cir. 2002); *Zilinskas v. Westinghouse Elec. Corp.,* 248 A.D.2d 777, 669 N.Y.S.2d 703, 705

(1998). In determining the scope and validity of a release, courts should apply state law. *See

Olin Corp. v. Consol. Aluminum Corp.,* 5 F.3d 10, 15 (2d Cir.1993) (applying state law to

interpret agreements, even where "federal law governs the validity of releases of federal causes

of action.").

"It is axiomatic under New York law . . . that the fundamental objective of contract

interpretation is to give effect to the expressed intentions of the parties." *Ambac Assurance

Corp. v. U.S. Bank Nat'l Ass'n,* No. 21-70-CV, 2021 WL 6060710, at *2 (2d Cir. Dec. 20, 2021)

(quoting *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011)); *Olin

Corp.*, 5 F.3d at 15 (stating that under New York law, courts must "discern the intent of the

parties to the extent their intent is evidenced by their written agreement.")(internal quotation

omitted); *see also Golden Pac.,* 273 F.3d at 515 ("Under New York law, a release-like any

contract-must be construed in accordance with the intent of the parties who executed it.").

Where a release is unambiguous, it must be enforced according to its terms without resort to

extrinsic evidence. *See Ackoff–Ortega,* 120 F.Supp. 2d at 282; *Zilinskas,* 669 N.Y.S. 2d at 705.

Where an agreement is ambiguous, the court may look to extrinsic evidence to determine the parties' intent. *Golden Pac.,* 273 F.3d at 517. Whether a contract is ambiguous is a question of law for the court, and if there is ambiguity, the meaning of the contract generally presents a triable issue of fact. *See id.* at 514–15.

In interpreting the Settlement, the Court must read the agreement "as a whole, and every part will be interpreted in reference to the whole." *Westmoreland Coal Co. v. Entech, Inc.,* 100 N.Y.2d 352, 763 N.Y.S.2d 525, 794 N.E.2d 667, 670 (2003) (internal quotations omitted); *see also Empire Props. Corp. v. Manufacturers Trust Co.*, 288 N.Y. 242, 248, 43 N.E.2d 25 [1942]. Where possible, a contract should be "interpreted as to give effect to its general purpose." *EVRYTHNG Ltd. v. Avery Dennison Retail Info. Servs., LLC*, No. 21-CV-4411 (LJL), 2021 WL 11592336, at *15 (S.D.N.Y. Aug. 2, 2021) (quoting *Ins. Co. of N.Y. v. Cent. Mut. Ins. Co.*, 850 N.Y.S.2d 56, 58 (2008)). The "scope of a release turns on the controversy being settled and the purpose for which the release was actually given." *ASI Sign Sys., Inc. v. Architectural Sys., Inc.,* No. 98 Civ. 4823, 1999 WL 553825, at *5 (S.D.N.Y. July 29, 1999); *see also Cahill v. Regan,* 5 N.Y.2d 292, 184 N.Y.S.2d 348, 157 N.E.2d 505, 510 (1959); *Hughes v. Long Island Univ.,* 305 A.D.2d 462, 762 N.Y.S.2d 401, 401 (2003).

"[G]eneral language" included in a release, such as a release of "any and all claims," should be interpreted in light what claims the parties intended to waive. *Lucent Techs., Inc. v. Gateway, Inc.*, 470 F. Supp. 2d 1195, 1200 (S.D. Cal. 2007). "Mere use of general language is not sufficient to evidence a release of unrelated claims." *Id.*

> [R]eleases contain standardized, even ritualistic, language and are given in circumstances where the parties are sometimes looking no further than the precise matter in dispute that is being settled. Thus, while it has been held that an unreformed general release will be given its full literal effect where it is directly or circumstantially evident that the purpose is to achieve a truly general settlement, the cases are many in which the release has been avoided with respect

to uncontemplated transactions despite the generality of the language in the
release form . . . .

*Mangini v. McClurg*, 24 N.Y.2d 556, 562, 301 N.Y.S.2d 508, 249 N.E.2d 386 (1969)(internal

citations omitted). The "consideration involved in the 'Settlement Agreement'" may be

particularly helpful in interpreting the intent of the parties. *Consol. Edison, Inc. v. Ne. Utilities*,

332 F. Supp. 2d 639, 648 (S.D.N.Y. 2004).

      The Trustee argues that the Settlement reflects a controversy relating only to the receipt

of Alpha Prime's BLMIS account, that the doctrine of *ejusdem generis* establishes that the

release applies only to claims for Alpha Prime transfers, and that there was no consideration for

releasing the Defendant. (Opp'n at 27–29, ECF No. 209).

      The Settlement agreement as a whole focuses on Alpha Prime's relationship to BLMIS

and the Trustee's action to avoid and recover transfers of BLMIS customer property to Alpha

Prime. The Agreement's background section describes the history of the Trustee's disputes with

Alpha Prime. One section of the background mentions Alpha Prime's cross-claims against

"various HSBC entities" and another discusses the Primeo Fund, a "BLMIS account holder, who

[was] also an investor in Alpha Prime." (Cioffi Decl., Ex. 4 Alpha Prime Settlement Agreement

at 2–3, ECF No. 200).

      Defendant asserts that it is an indirect shareholder of Alpha Prime Fund Ltd. by virtue of

being the corporate parent of Natixis Financial Products LLC and Bloom Asset Holdings Fund,

both of whom were direct shareholders of Alpha Prime Fund. (Mem. L. at 9–10, ECF No. 199).

While the Settlement does not define "indirect shareholder," Courts have referred to parent

corporations of direct shareholders as indirect shareholders. *See e.g. Noto v. Cia Secula di

Armanento*, 310 F. Supp. 639, 645 (S.D.N.Y. 1970); *Energy Marine Servs., Inc. v. DB Mobility

Logistics AG*, No. CV 15-24-GMS, 2016 WL 284432, at *1 (D. Del. Jan. 22, 2016).

At the hearing on October 18, 2023, the Trustee referred to his papers as to whether Defendant was a direct or indirect shareholder of the Alpha Prime Fund.  (Hr'g Tr. 73:19–22, Oct. 18, 2023, ECF No. 227)  ("Well, Your Honor, we do not dispute that Natixis SA is a parent or an affiliate of Bloom and Natixis FP. And we'll refer to our papers as to the significance of that relationship.").  The Trustee's opposition states that it is irrelevant whether Natixis is covered as a former indirect shareholder as there is no release of any claims connected to the transfers from Fairfield Sentry to Natixis.  (Opp'n at 38, ECF No. 209).  The Trustee further argues that "when the Release is read in the strict, technical way Natixis urges, Natixis falls outside the category of persons in the Release, which encompasses 'Alpha Prime and Alpha Prime Asset Management LTD and its respective current and former directors . . . , direct or indirect shareholders.'"  (*Id.* at 38 n.10).  "The word "its" is a possessive adjective that refers to the preceding proper noun Alpha Prime Asset Management LTD, not Alpha Prime."  (*Id.*) (citing *Maurice Goldman & Sons, Inc. v. Hanover Ins. Co.*, 607 N.E.2d 792 (N.Y. 1992) and *Tudor Ins. Co. v. First Advantage Litig. Consulting, LLC*, Nos. 11 Civ. 3567, 11 Civ. 8923, 2012 WL 3834721 (S.D.N.Y. Aug. 21, 2012).

As the Trustee argues, the Settlement as a whole concerns Alpha Prime.  It mentions Alpha Prime Asset Management LTD only in relation to Alpha Prime.  Further, the individuals who are named in the release as examples of "its current and former directors" are the same individuals named earlier in the settlement as "Alpha Prime's directors."  (Cioffi Decl., Ex. 4 Alpha Prime Settlement Agreement at 7, 9, ECF No. 200).  Read in context, the release plainly encompassed indirect shareholders of Alpha Prime.

The Trustee argues that the doctrine of *ejusdem generis* demonstrates the release does not apply to the claims against Defendant in this proceeding.  (Opp'n at 28, ECF No. 209).  In New

York, interpretation of the purpose and context of language follows the principle of *ejusdem generis*, by which 'the general words of a release are limited by the recital of a particular claim.'" *Consol. Edison*, 332 F. Supp. 2d at 647–48 (quoting *Herman v. Malamed*, 110 A.D.2d 575, 487 N.Y.S.2d 791, 793 (1985)); *see also Vines v. Gen. Outdoor Adver. Co.*, 171 F.2d 487, 492 (2d Cir. 1948) (Hand, J.) ("[I]n a release[,] words of general import, followed or preceded by words relating to specific claims, are, ceteris paribus, limited to the specific claims.").

> [C]ourts have often applied the rule of ejusdem generis, and held that the general words of a release are limited by the recital of a particular claim, where there is nothing on the face of the instrument, other than general words of release, indicating that matters other than those specifically referred to were intended to be discharged . . . .

*Green v. Lake Placid 1980 Olympic Games, Inc.*, 147 A.D.2d 860, 862, 538 N.Y.S.2d 82, 84 (1989).

The Trustee argues that the language in the Settlement,

> explicitly resolves certain enumerated "Disputed Issues:" (1) the Trustee's claims to avoid and recover the Alpha Prime Six-Year Transfers totaling $6,720,000; (2) whether Alpha Prime was entitled to a claim under section 502(h) of the Bankruptcy Code; and (3) the Trustee's treatment of the remaining 5% of Alpha Prime's net equity claims.

(Opp'n at 29, ECF No. 209). None of these issues relate to the claims against Natixis for redemptions from Fairfield Sentry. (*Id.*). These issues do relate to the claims against Alpha Prime in adversary proceeding 09-01364. (*See* Second Am. Compl. ¶ 184, Adv. Pro. No. 09-01364, ECF No. 567). Under the doctrine of ejusdem generis, the general words of release are limited by the specific claims in the Settlement and in that adversary proceeding.

The Trustee argues that the consideration given in the Settlement shows how the release was limited only to the transfers in the Alpha Prime action. (Opp'n at 29, ECF No. 209). The Trustee's claim against Alpha Prime at the time of the Settlement was for avoidance and

recovery of approximately $6.7 million.  (Cioffi Decl. at 3–4, Ex. 4 Alpha Prime Settlement

Agreement at 4, ECF No. 200).  Natixis argues that the Settlement released this $6.7 million

claim, the $179 million claim against Natixis, and any other claim for transfers to direct or

indirect shareholders of Alpha Prime.  In consideration of these releasees, the Settlement

provides that "Alpha Prime and its agents will continue to participate in discovery in this

Adversary Proceeding," and that "[a]s part of Alpha Prime's consideration for this settlement,

Alpha Prime agrees to share with the Trustee 50% of the proceeds of the Luxembourg Actions

and the Bermuda Actions . . . ."  (*Id.* at 6–7).  The consideration "plainly relates" to the release of

claims for the Alpha Prime transfers.  *Consol. Edison, Inc.*, 332 F. Supp. 2d at 648.  The

consideration described in the Settlement does not indicate that it would release additional

hundreds of millions of dollars of claims in unrelated actions, and it would violate the intent of

the parties for the Court to read the Settlement as doing that.

The Settlement, read in the full context of the Settlement, is clear on its face that it does

not extend to release the claims against Defendant in this adversary proceeding.

**Conclusion**

For the foregoing reasons, Defendant's motion to dismiss is denied. The Trustee shall

submit a proposed order within fourteen days of the issuance of this decision, directly to

chambers (via EOrders), upon not less than two days' notice to all parties, as required by Local

Bankruptcy Rule 9074-1(a).



**Dated: November 2, 2023**
**Poughkeepsie, New York**

**/s/ Cecelia G. Morris**
_____
**Hon. Cecelia G. Morris**
**U.S. Bankruptcy Judge**