**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | S.D.N.Y. Case No. _____ |
| Plaintiff-Applicant, | Adv. Pro. No. 08-01789 (CGM) |
| v. | SIPA LIQUIDATION |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | Adv. Pro. No. 10-05353 (CGM) |
| Plaintiff, | |
| v. | |
| NATIXIS S.A. and TENSYR LTD., | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**TENSYR LIMITED'S MOTION FOR LEAVE TO APPEAL**

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................... ii

PRELIMINARY STATEMENT ............................................................1

RELEVANT BACKGROUND ...............................................................4

      A.    Tensyr's Investments in Sentry......................................4

      B.    Tensyr's Motion to Dismiss.........................................6

      C.    This Court's Decision in PIFSS................................8

      D.    The Bankruptcy Court's Decision ...............................9

QUESTIONS PRESENTED................................................................11

ARGUMENT ......................................................................................11

   I.    Whether the Bankruptcy Court May Exercise Personal
       Jurisdiction Over Tensyr Is a Controlling Question of Law..............12

   II.    There Are Substantial Grounds for Difference of Opinion on
       the Personal Jurisdiction Questions. ..................................13

      A.    There is a Substantial Ground for Difference of Opinion
           on Whether the Bankruptcy Court Properly Assessed the
           "Arising Out of or Relating to" Prong of the
           Jurisdictional Analysis. ..........................................14

      B.    There is a Substantial Ground for Difference of Opinion
           on Whether the Bankruptcy Court Was Correct to Credit
           the Trustee's Jurisdictional Allegations Despite Tensyr's
           Unopposed Declarations Rebutting those Allegations. ...........19

   III.    Resolving the Personal Jurisdiction Question Will Materially
        Advance the Termination of this Case. .............................22

CONCLUSION....................................................................................22

CERTIFICATE OF COMPLIANCE.......................................................24

# TABLE OF AUTHORITIES

CASES                                                                        PAGE(S)

Boeing Co. v. Egyptair,
    No. 05-cv-5986, 2007 WL 1315716 (2d Cir. May 7, 2007) ..............................18

Brownstone Inv. Grp. LLC v. Bonner & Partners, LLC,
    No. 20-cv-7351, 2021 WL 3423253 (S.D.N.Y. Aug. 5, 2021) ...................20, 21

Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.
    722 F.3d 81 (2d Cir. 2013) ...................................................................................21

In re Enron Corp.,
    No. 01-16034, 2006 WL 2548592 (S.D.N.Y. Sept. 5, 2006) ...........12, 13, 19, 21

Estevez-Yalcin v. Children's Vill.,
    No. 01-cv-8784, 2006 WL 3420833 (S.D.N.Y. Nov. 27, 2006) ........................13

In re Fairfield Sentry Ltd. Litig.,
    458 B.R. 665 (S.D.N.Y. 2011) .............................................................11, 12, 13

Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam,
    No. 10-13164, 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) ..................8

Goodyear Dunlop Tires Operations, S.A. v. Brown,
    564 U.S. 915 (2011).............................................................................................16

Hau Yin To v. HSBC Holdings, PLC,
    2017 WL 816136 (S.D.N.Y. Mar. 1, 2017).........................................................8

Jazini v. Nissan Motor Co.,
    148 F.3d 181 (2d Cir. 1998) ...............................................................................21

Klinghoffer v. S.N.C. Achille,
    921 F.2d 21 (2d Cir. 1990) .................................................................................12

MacDermid, Inc. v. Deiter,
    702 F.3d 725 (2d Cir. 2013) ...............................................................................20

MTS Logistics, Inc. v. Innovative Commodities Grp. LLC,
    442 F. Supp. 3d 738 (S.D.N.Y. 2020) ..........................................................20, 21

| CASES | PAGE(S) |
|---|---|

Picard v. BNP Paribas S.A. (In re BLMIS),
 594 B.R. 167 (Bankr. S.D.N.Y. 2018)................................................................16

Picard v. UBS,
 No. 08-01789, 2023 WL 6623816 (Bankr. S.D.N.Y. Oct. 10, 2023) ...............16

Precision Wellness LLC v. Demetech Corp.,
 No. 21-cv-01244, 2022 WL 970773 (E.D.N.Y. Mar. 30, 2022) .................20, 21

Primavera Familienstifung v. Askin,
 139 F. Supp. 2d 567 (S.D.N.Y. 2001) ...............................................................22

Pub. Instit. for Soc. Sec. v. Picard,
 No. 22-cv-8741, 2023 WL 6143985 (S.D.N.Y. Sept. 20, 2023)...............*passim*

Reese v. BP Expl. (Alaska) Inc.,
 643 F.3d 681 (9th Cir. 2011) ..............................................................................13

Rein v. Socialist People's Libyan Arab Jamahiriya,
 162 F.3d 748 (2d Cir. 1998) ...........................................................................3, 18

U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.,
 916 F.3d 143 (2d Cir. 2019) .......................................................................*passim*

U.S. Fid. & Guar. Co. v. Braspetro Oil Servs., Co.,
 199 F.3d 94 (2d Cir. 1999) .................................................................................18

Walden v. Fiore,
 571 U.S. 277 (2014)............................................................................................21

**STATUTES**

11 U.S.C. § 550(a) ....................................................................................................11

28 U.S.C. § 158(a)(3)..............................................................................................1, 11

28 U.S.C. § 1292(b) .....................................................................................11, 12, 22

**OTHER AUTHORITIES**

Edward H. Cooper, 16 Fed. Prac. & Proc. Juris. § 3930 (3d ed. 2022)...................13

Defendant Tensyr Limited ("Tensyr") moves pursuant to 28 U.S.C. § 158(a)(3) and Federal Rule of Bankruptcy Procedure 8004 for leave to appeal from an Order[1] of the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court") denying Tensyr's Motion to Dismiss the Complaint filed by Irving H. Picard ("Trustee"), as Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS").

## PRELIMINARY STATEMENT

Tensyr, a Jersey-incorporated company with no presence in the United States, seeks dismissal of the Trustee's complaint for lack of personal jurisdiction. The Trustee alleges that Tensyr received approximately $35 million of BLMIS customer property from Fairfield Sentry Limited ("Sentry") and seeks to claw back these funds. In denying Tensyr's jurisdictional dismissal motion, the Bankruptcy Court made two errors of law that warrant immediate appellate review. *First*, in determining whether the Trustee's claims "arise out of or relate to" Tensyr's

---

[1]   <u>Order Denying Defendant Tensyr Ltd.'s Motion to Dismiss the Amended Complaint</u>, Adv. Pro. 10-5353 (CGM), ECF No. 239, November 20, 2023 ("Order") (attached as Exhibit A). The Bankruptcy Court separately issued a <u>Memorandum Decision Denying Defendant's Motion to Dismiss</u>, Adv. No. 10-05353 (CGM), ECF No. 233, November 3, 2023 ("Decision") (attached as Exhibit B).

On November 30, 2023, the Bankruptcy Court entered a Stipulation and Order extending Tensyr's time to file its notice of appeal and motion for leave to appeal to December 26, 2023. <u>See</u> ECF No. 242.

alleged in-forum conduct, the Bankruptcy Court ignored the Trustee's failure to make a prima facie case that the challenged transfers actually originated with BLMIS in the United States. The Trustee thus failed to establish a sufficient jurisdictional connection between his claim and the United States. *Second*, the Bankruptcy Court accepted the Trustee's jurisdictional allegations as true notwithstanding *unrebutted* evidence submitted by Tensyr contradicting those very allegations. Decision at *6, 8–10.

This motion raises a question of first impression: does a court have personal jurisdiction over a foreign subsequent transferee in an action to recover a transfer allegedly received from a foreign initial transferee (made from a foreign bank account to a foreign bank account), where the Trustee cannot establish that his claim "arises out of or relates to" the defendant's jurisdictional contacts because he cannot show that the initial transfer originated from the United States? The Madoff litigations have been pending for over a decade. But in each of those cases, the court and litigants *assumed* that the initial transfers originated in the United States. Tensyr—relying on the Trustee's own allegations in various litigations—challenges that assumption.

This case is thus different from any previous Madoff case.

In sum, Tensyr argues that based on the Trustee's own allegations against Tensyr, Sentry, and other subsequent transferees, the Trustee has no

argument that the claimed transfers originated with BLMIS in the United States.
That is because Sentry, like other hedge funds, often paid the redemption requests
of one investor not by redeeming a position with Madoff, but by drawing from
subscription funds provided by third-party investors.  As a result, some of the
transfers Tensyr received from Sentry are separated not by months, but by *years*,
from any transfer that Sentry received from BLMIS.

Earlier this year, this Court adopted Tensyr's reasoning, finding that
the temporally attenuated transfers from BLMIS to Sentry and from Sentry to the
defendant meant that the Trustee failed to establish a jurisdictional nexus sufficient
to survive dismissal.  See Pub. Inst. for Soc. Sec. v. Picard, No. 22-cv-8741, 2023
WL 6143985, at *6–8 (S.D.N.Y. Sept. 20, 2023) ("PIFSS").  The Bankruptcy
Court ignored PIFSS's reasoning—which was based on materially identical
allegations to those Tensyr faces here.  Instead of considering PIFSS's reasoning,
the Bankruptcy Court ruled that because PIFSS evaluated the commercial activities
"direct effect" test under the Foreign Sovereign Immunities Act ("FSIA"), its
reasoning was not applicable to the minimum contacts analysis.  This was legal
error.  The Bankruptcy Court got it backwards: the "direct effect" test requires *less*
contact with the United States than does the test for personal jurisdiction.  See Rein
v. Socialist People's Libyan Arab Jamahiriya, 162 F.3d 748, 760 n.8 (2d Cir. 1998)
(it is "possible that a foreign sovereign could be subject to subject matter

jurisdiction under the commercial activities exception without being within the
personal jurisdiction of an American court"). Thus, if the absence of cognizable
allegations that the challenged transfers originated from BLMIS is insufficient to
establish a direct effect, it is—by definition—insufficient to establish personal
jurisdiction.

The Bankruptcy Court then compounded its error by crediting the
Trustee's jurisdictional allegations notwithstanding the fact that Tensyr had
rebutted them by proffering unchallenged evidence. This, the law does not permit.

## RELEVANT BACKGROUND[2]

### A.    Tensyr's Investments in Sentry

Tensyr is a limited company incorporated in the Bailiwick of Jersey.
See Compl. ¶ 20. Tensyr issued notes to investors with returns linked to the
performance of Sentry, a BVI-registered fund. Id. ¶¶ 98, 105. To hedge its
obligations under these notes, Tensyr invested more than $400 million in Sentry.
Id. ¶ 105. Sentry, in turn, allegedly invested those assets with BLMIS. Id. ¶ 125.

Madoff's fraud was discovered on December 10, 2008. Compl. ¶ 52.
In 2009, the Trustee sued Sentry to avoid approximately $3 billion of alleged

---

[2]    These facts are drawn from the Amended Complaint, ECF No. 193
("Complaint" or "Compl.") and unrebutted evidence submitted by Tensyr
with the Declarations of Christian J. Vandergeest, ECF No. 206
("Vandergeest Decl.") and Ellen Chislett, ECF No. 205 ("Chislett Decl.").
The Trustee did not submit any counter-evidence in opposing Tensyr's
dismissal motion.

"customer property" transferred from BLMIS to Sentry (the "Initial Transfers"). See Picard v. Fairfield Sentry Ltd., Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y. May 18, 2009). On May 9, 2011, the Trustee settled its claims against Sentry, and the Bankruptcy Court later entered judgment in favor of the Trustee for $3.054 billion. See Compl. ¶ 116.

Having settled with Sentry, the Trustee commenced dozens of actions against parties who received transfers from Sentry, including Tensyr, to recover the transfers that BLMIS had made to Sentry. Notwithstanding that, by the Trustee's own admission, Sentry only received $3 billion from BLMIS, the Trustee seeks to "claw back" more than $5 billion (i.e., $2 billion more than Sentry ever received) from alleged subsequent transferees, including Tensyr. See Vandergeest Decl. ¶ 6. As Sentry has explained, the extra $2 billion that it transferred to its customers was sourced from cash it received from its non-U.S. investors. See First Amended Complaint ¶ 63, Fairfield Sentry Ltd. v. Citco Global Custody NV, Adv. Pro. No. 19-1122 (Bankr. S.D.N.Y. Nov. 26, 2019), ECF No. 19 ("[f]rom time to time, to make Redemption Payments, Sentry . . . utilized subscription monies of other investors on hand"). As a result, some investors—such as PIFSS and Tensyr— received transfers from Sentry without Sentry receiving a corresponding transfer from BLMIS.

### B.    Tensyr's Motion to Dismiss

The Trustee alleges that Tensyr received approximately $35 million of
BLMIS customer property from Sentry and seeks these funds for the BLMIS
estate.  Compl. ¶ 126.

On April 17, 2023, Tensyr moved to dismiss.  <u>See</u> ECF No. 203.  As
relevant here, Tensyr argued that it is not subject to the personal jurisdiction of the
Bankruptcy Court.   Tensyr argued that because the transfers it received from
Sentry did not originate from BLMIS (or contain BLMIS customer property), the
Trustee's claims to recover those transfers did not "arise out of or relate to"
Tensyr's alleged contacts with the United States.  <u>See, e.g.</u>, Opening Br. at 12–13,
ECF No. 204; Reply at 7–8, ECF No. 216.

Tensyr's argument was based on the Trustee's allegations in the
Complaint and his allegations in complaints against other defendants that allegedly
received transfers from Sentry.   Specifically, Tensyr showed that it was
mathematically impossible that its challenged transfers originated with BLMIS,
including because some of the transfers the Trustee asserts that Tensyr received
took place months—or even *more than a year*—after Sentry received any transfer
from BLMIS.  <u>See</u> Opening Br. at 12–13.  The Trustee's allegations in other cases
show that in the intervening period, Sentry transferred many times the amount it
received from BLMIS to other parties.  <u>Id</u>.  In his Opposition to Tensyr's motion,

6

the Trustee did not seriously contest that (i) he is seeking from the subsequent

transferee defendants more than $2 *billion* in excess of what Sentry received from

BLMIS, or (ii) the Trustee's allegations in other cases defeat his allegation here

that the transfers Tensyr received originated from BLMIS.  Instead, the Trustee

refused to address the substance of Tensyr's argument, stating only that Tensyr's

submissions "do not establish" its point, and argued that the Bankruptcy Court

"must" close its eyes and "assume the truth of the Trustee's [jurisdictional]

allegations," even in the face of unrebutted evidence to the contrary.  Opp. at 17,

33; ECF No. 211.

Unable to show that the challenged transfers originated in the United

States, the Trustee offered a grab-bag of allegations purportedly tying Tensyr to the

United States.  Tensyr submitted evidence—which the Trustee did not address, let

alone refute—rebutting these unsupported allegations.  <u>See</u> Opening Br. 9–19; <u>see</u>

<u>generally</u> Chislett Decl.  For example, the Trustee alleged that Tensyr had

contracted with a New York entity, Fairfield Greenwich Group ("FGG"), to

provide certain services.  <u>See, e.g.</u>, Compl. ¶ 23.  In response, Tensyr produced the

relevant contracts, which are actually with Fairfield Greenwich Limited ("FGL"), a

Cayman Islands entity.  <u>See</u> Chislett Decl. Exs. C, D; ECF Nos. 205-3, 205-4.

Moreover, Tensyr submitted affidavit testimony—which the Trustee did not

contest—that Tensyr never conducted any business with FGG (or any other New

York person or company). <u>See</u> Chislett Decl. ¶¶ 6–7. Indeed, Tensyr's contract with FGL barred FGL from delegating its responsibilities under the relevant contracts to any other (non-Cayman) entity. <u>See</u> Opening Br. at 6; Reply at 9. The Trustee also attempted to buttress his jurisdictional allegations by arguing that the New York contacts of a different entity, Natixis S.A., should be imputed to Tensyr. <u>See</u> Opp. at 14–16. In response, Tensyr pointed out that all of Natixis's alleged contacts occurred *before Tensyr existed*, which as a matter of law precluded imputation. Reply at 10–11. Tensyr's declarations and exhibits thus rebutted the Trustee's key jurisdictional allegations.[3]

### C.    This Court's Decision in <u>PIFSS</u>

Shortly before Tensyr's motion to dismiss was argued, this Court issued a decision in <u>Public Institution for Social Security v. Picard</u>, an interlocutory

---

[3]    The Complaint further asserted that jurisdiction is proper because even though the transfers between Sentry and Tensyr were made between their accounts in Europe, they passed through a New York correspondent bank account, and because Tensyr's subscription agreement with Sentry (which does not govern the transfers here) contained New York jurisdiction, forum selection, service of process, and choice of law provisions. <u>Compl.</u> ¶¶ 46–50. These allegations are legally insufficient to establish a prima facie case for personal jurisdiction, particularly when, as Tensyr has shown, the transfers it received did not originate from New York. <u>See</u> <u>Hau Yin To v. HSBC Holdings, PLC</u>, 2017 WL 816136, at *6–7 (S.D.N.Y. Mar. 1, 2017) (use of U.S. correspondent bank accounts did not support jurisdiction); <u>aff'd</u>, 700 F. App'x 66 (2d Cir. 2017); <u>Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam</u>, No. 10-13164, 2018 WL 3756343, at *11–12 (Bankr. S.D.N.Y. Aug. 6, 2018) (redemptions from Sentry are not governed by subscription agreement); Opening Br. at 11–12; 14–16; Reply at 5–7.

appeal by another Sentry transferee.  There, PIFSS submitted evidence in support of its motion to dismiss demonstrating that—like Tensyr—(i) any transfer it had received from Sentry occurred long after Sentry received any transfer from BLMIS, and (ii) in the intervening period, Sentry had transferred many times that amount to other parties.  2023 WL 6143985 at *7.  Based on this evidence, this Court found that "Sentry did not request money from BLMIS for the purpose of redeeming PIFSS's shares."  Id. at *4, 6–7.  Thus, the Court ruled that the Trustee had failed to show that PIFSS's actions had any "direct effect" in the United States and the Court therefore lacked jurisdiction over PIFSS.  Id. at *7–8.

### D.    The Bankruptcy Court's Decision

On November 3, 2023, the Bankruptcy Court denied Tensyr's motion.

See ECF No. 233.  The Bankruptcy Court correctly articulated the three-prong test for personal jurisdiction:

> ***First***, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum State or have purposefully directed its conduct into the forum State.  ***Second***, the plaintiff's claim must arise out of or relate to the defendant's forum conduct.  ***Finally***, the exercise of jurisdiction must be reasonable under the circumstances.

Decision at *7 (citing U.S. Bank Nat'l Ass'n v. Bank of Am. N.A., 916 F.3d 143, 150 (2d Cir. 2019)) (emphasis added).

The Bankruptcy Court held that it had personal jurisdiction over Tensyr because Tensyr had purposefully availed itself of New York by directing investments towards BLMIS, and the transfers Tensyr received from Sentry "related to" this investment in BLMIS. Id. at *6–11.

In reaching its decision, the Bankruptcy Court committed two fundamental errors. First, it accepted the Trustee's jurisdictional allegations as true notwithstanding *unrebutted* evidence submitted by Tensyr contradicting those very allegations. Id. at *6, 8–10. Second, in determining whether the Trustee's claims "arise out of or relate to" Tensyr's alleged in-forum conduct, the Bankruptcy Court failed to consider—at all—Tensyr's argument that because the Trustee had failed to plausibly plead that the challenged transfers originated from the United States, he failed to establish a prima facie jurisdictional connection with the United States. Id. at *10–11. Rather than address Tensyr's arguments or evidence, the Bankruptcy Court merely stated that because "[t]he Trustee is asserting subsequent transfer claims against Tensyr for monies it received from the BLMIS feeder funds" his suit is "related to [Tensyr's] investment activities with Fairfield Sentry." Id. at *11.

The Bankruptcy Court also refused to engage with this Court's reasoning in PIFSS. Instead, the Bankruptcy Court incorrectly argued that the FSIA analysis in PIFSS differs from that for minimum contacts. Id. at *13–18.

10

The Bankruptcy Court thus erred because it failed to consider the fundamental question of whether it could exercise personal jurisdiction over Tensyr in the absence of a plausible allegations that Tensyr received BLMIS customer property from the United States.

## QUESTIONS PRESENTED

**1.**    In a recovery action pursuant to 11 U.S.C. § 550(a)(2), has the Trustee discharged his burden to make a prima facie showing of personal jurisdiction over a foreign subsequent-transferee defendant when the Trustee cannot show that his claim "arises out of or relates to" the defendant's alleged contacts with the United States because the transfer the defendant received originated from a foreign initial transferee and did not originate from a debtor in the United States?  No.

**2.**    On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, may the Bankruptcy Court assume as true a plaintiff's jurisdictional allegations when they have been rebutted by unchallenged evidence?  No.

## ARGUMENT

This Court has discretion to grant leave to appeal an interlocutory order of a bankruptcy court.  28 U.S.C. § 158(a)(3).  In determining whether to grant review under Section 158(a)(3), courts apply the standard governing interlocutory appeals from district courts to courts of appeal under 28 U.S.C. § 1292(b).  In re Fairfield Sentry Ltd. Litig., 458 B.R. 665, 672–73 (S.D.N.Y.

2011). Under that standard, a court may permit an appeal if (i) the "order involves a controlling question of law;" (ii) "as to which there is substantial ground for difference of opinion;" and (iii) "an immediate appeal from that order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Leave to appeal is warranted where appellate review might "avoid protracted and expensive litigation." In re Enron Corp., No. 01-cv-16034, 2006 WL 2548592, at *3 (S.D.N.Y. Sept. 5, 2006). Each of these requirements is satisfied here.

## I.    WHETHER THE BANKRUPTCY COURT MAY EXERCISE PERSONAL JURISDICTION OVER TENSYR IS A CONTROLLING QUESTION OF LAW.

The jurisdictional question presented for appeal qualifies as a "controlling question of law." 28 U.S.C. § 1292(b). A "question of law" refers to "a 'pure' question of law that the reviewing court could decide quickly and cleanly" and is "'controlling' in the sense that reversal of the bankruptcy court would terminate the action." Fairfield Sentry, 458 B.R. at 673.

In asking whether the Bankruptcy Court may exercise personal jurisdiction over Tensyr, a non-U.S. entity, when the subsequent transfers that Tensyr allegedly received did not originate from the United States, Tensyr's motion presents a controlling question of law. If Tensyr is right, reversal and termination of this action is required, rendering the issue here "controlling." See Klinghoffer v. S.N.C. Achille, 921 F.2d 21, 24 (2d Cir. 1990) ("issues of in personam [jurisdiction]" are "controlling" because "reversal . . . would terminate

the action"); <u>Estevez-Yalcin v. The Children's Vill.</u>, No. 01-cv-8784, 2006 WL 3420833, at *3 (S.D.N.Y. Nov. 27, 2006) (questions of personal jurisdiction "warrant certification under section 1292(b) because their resolution may dispose of a case"). Moreover, because Tensyr's core argument is based on the allegations in the Complaint and facts that the Trustee has never seriously contested, the question is a legal one. The Court can thus decide the issue "quickly and cleanly." <u>Fairfield Sentry</u>, 458 B.R. at 673.

## II.   THERE ARE SUBSTANTIAL GROUNDS FOR DIFFERENCE OF OPINION ON THE PERSONAL JURISDICTION QUESTIONS.

There is "substantial ground for difference of opinion" where there is "genuine doubt as to whether the Bankruptcy Court applied the correct legal standard." <u>Enron Corp.</u>, 2006 WL 2548592, at *4. "A substantial ground . . . exists where reasonable jurists might disagree on an issue's resolution, not merely where they have already disagreed." <u>Reese v. BP Expl. (Alaska) Inc.</u>, 643 F.3d 681, 688 (9th Cir. 2011). Moreover, any doubt about whether there are "substantial grounds for difference of opinion" should be resolved in favor of Tensyr: where, as here, "proceedings that threaten to endure for several years depend on an initial question of jurisdiction," certification is "justified at a relatively low threshold of doubt." Edward H. Cooper, 16 <u>Fed. Prac. & Proc. Juris.</u> § 3930 (3d ed. 2022).

The Bankruptcy Court's decision erred as a matter of law by ignoring
the question of whether "the [Trustee]'s claim[s] . . . arise out of or relate to
[Tensyr]'s forum conduct" where Tensyr did not receive BLMIS customer
property. U.S. Bank, 916 F.3d at 150. The Bankruptcy Court compounded its
error by grounding its decision in the Trustee's unsubstantiated allegations, which
were rebutted by Tensyr's uncontested evidence. At the very least, there are
substantial grounds for difference of opinion regarding these errors.

**A.    There is a Substantial Ground for Difference of Opinion on
Whether the Bankruptcy Court Properly Assessed the "Arising
Out of or Relating to" Prong of the Jurisdictional Analysis.**

The question raised here is one of first impression. In its
jurisdictional decisions involving other alleged subsequent transferees, the
Bankruptcy Court and the parties *assumed* that the challenged transfers originated
in New York, thus satisfying the "arising out of or relating to" prong of the
personal jurisdiction analysis. Here, Tensyr challenges this assumption. Based on
the Trustee's own allegations, Tensyr showed that the transfers allegedly received
by Tensyr from Sentry are so attenuated from the transfers Sentry received from
BLMIS, that it is impossible for Tensyr's funds to have originated from BLMIS.
Opening Br. at 12–13; Reply at 7–8; compare PIFSS, 2023 WL 6143985 at *6–7.

Thus, Tensyr's transfers fall into the $2 billion that the Trustee seeks
from Sentry's investors, but which the Trustee does not dispute exceeds the $3
billion that BLMIS transferred to Sentry. Compare Vandergeest Decl. ¶ 6 with

14

Compl. ¶ 120; see Opp. at 32.  Indeed, the alleged subsequent transfers to Tensyr took place months—or even *more than a year*—after Sentry received any transfer from BLMIS, and in the intervening period, Sentry transferred many times that amount to other parties.  See Opening Br. at 12–13.  Other than saying that Tensyr is wrong, the Trustee has put forth no factual allegations or legal argument to rebut these contentions.  But the Trustee's *ipse dixit* is insufficient to meet his prima facie burden for establishing personal jurisdiction.

In other words, Tensyr's motion to dismiss demonstrated that "the [Trustee]'s claim[s]" do not "arise out of or relate to the defendant's forum conduct," U.S. Bank, 916 F.3d at 150, because the payments Tensyr received from Sentry did not arise from or relate to any purported investment activities with BLMIS.  Rather, those transfers arose from investments other parties made with Sentry, which Sentry then used to meet Tensyr's redemption requests.  See supra p. 5; Opening Br. at 33.  This Court is thus called to determine—for the first time in the decade-plus history of the Madoff cases—whether, in an action to recover estate property, the Bankruptcy Court can exercise jurisdiction over a foreign defendant when the Trustee has failed to establish a prima facie case that the challenged property originated from the United States.  This is a dispositive question.  It is also one of first impression.

The Bankruptcy Court's discussion of the "arising out of or relating to" prong missed the point. Decision at *10–11. The Court's decision stated that the "Trustee is asserting subsequent transfer claims against Tensyr for monies it received from the BLMIS feeder funds" which "relate[s] to its investment activities with Fairfield Sentry." Id. at *11. But this point (and indeed, the Court's entire analysis on this prong) did not reflect an analysis of Tensyr's case or argument; it was largely *copied and pasted* from other decisions involving other defendants who did not contest the "arising out of or related to" prong of the jurisdictional test in this manner.[4] The Court never engaged with Tensyr's jurisdictional point that the Trustee's allegations in other litigations showed it was mathematically impossible that the transfers received by Tensyr originated with BLMIS.

In support of its holding, the Bankruptcy Court cited a single case, Picard v. BNP Paribas S.A. (In re BLMIS), 594 B.R. 167, 191 (Bankr. S.D.N.Y. 2018).[5] Decision at 11. BNP, however, proves Tensyr's point. There, the court *and* parties *assumed* that the claimed property originated with BLMIS in the United States and therefore the defendants' New York contacts were the "proximate cause of the

---

[4]    Compare, e.g., Picard v. UBS, No. 08-cv-01789 (CGM), 2023 WL 6623816, at *6 (Bankr. S.D.N.Y. Oct. 10, 2023).

[5]    The Bankruptcy Court also cited Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011), a general jurisdiction case. Decision at *10–11.

[BLMIS' estate's] injuries." 594 B.R. at 190–91. This is precisely what Tensyr

challenges here, with no substantive response from the Trustee.[6]

The substantial ground for difference of opinion here is demonstrated

by this Court's ruling in PIFSS, which involved materially identical facts, and

which reached a diametrically opposite result from the Bankruptcy Court's ruling.

There, as here, this Court considered evidence demonstrating that the Trustee's

own allegations in other cases rendered impossible the Trustee's claims that

PIFSS's transfers from Sentry originated from BLMIS. PIFSS, 2023 WL 6143985

at *3–4. Based on this evidence, this Court found that the Trustee's claims had no

jurisdictional nexus with the United States. Id. at *8. The Bankruptcy Court

should have reached the same conclusion here. Its failure to do so—at the very

least—demonstrates the existence of a difference of opinion warranting the

granting of this motion.

---

[6]    The Decision pointed to Tensyr's alleged contacts with BLMIS in New
York—including Tensyr's knowledge that Sentry was investing in BLMIS,
Tensyr's execution of subscription agreements with Sentry that named
BLMIS, and meetings (by third parties, not Tensyr) in New York—as
"purposeful availment" of New York. Decision at *8–10. Setting aside
whether or not these contacts constitute "purposeful availment" (they do
not), the Trustee's claims do not *arise from or relate to* those contacts. See
Opening Br. at 12–13, Reply at 7–8. The Trustee's claims seek recovery of
alleged transfers from BLIMS to Sentry, which the Trustee alleges were paid
on to Tensyr. Absent a nexus between those transfers and New York, this
court does not have jurisdiction over Tensyr. See U.S. Bank, 916 F.3d at
150.

The Bankruptcy Court's attempt to distinguish <u>PIFSS</u> on the grounds that "there is no support" "for the proposition that a lack of direct effect" under the FSIA "dictates a lack of minimum contacts for personal jurisdiction," Decision at *16–17, was erroneous. *First*, the Bankruptcy Court misread controlling authority. The Bankruptcy Court's core conclusion was that "a lack of direct effect" does not equal "a lack of minimum contacts." <u>Id</u>. at *16–17. In fact, the minimum contacts analysis is "essentially identical" to the "direct effect" prong of the FSIA's commercial activity exception. <u>See</u> <u>Rein</u>, 162 F.3d at 760–61; <u>Boeing Co. v. Egyptair</u>, No. 05-cv-5986, 2007 WL 1315716, at *2 (2d Cir. May 7, 2007) ("questions regarding minimum contacts for personal jurisdiction purposes and commercial contacts for [sovereign immunity] purposes [are] inextricably intertwined"); <u>U.S. Fid. & Guar. Co. v. Braspetro Oil Servs., Co.</u>, 199 F.3d 94, 97 (2d Cir. 1999) (direct effect test and minimum contacts analysis are "inextricably intertwined"). If anything, as the Second Circuit has explained, the minimum contacts test requires more, not less, contacts with the United States to establish jurisdiction than does the direct effect test: "[i]t is . . . possible that a foreign sovereign could be subject to subject matter jurisdiction under the commercial activities exception without being within the personal jurisdiction of an American court." <u>Rein</u>, 162 F.3d at 760 n.8.

18

The Bankruptcy Court thus got it backwards: this Court's finding in

PIFSS that the Trustee had not established a "direct effect" in the United States

strongly suggests that the Trustee has likewise failed to establish a prima facie case

of jurisdiction over Tensyr.

*Second*, regardless of any purported differences between the personal

jurisdiction analysis and the FSIA commercial activities exception, this Court's

finding in PIFSS that PIFSS's transfers did not originate from BLMIS was

persuasive evidence (or, at least, warranted consideration) of Tensyr's largely

identical factual scenario.  And consideration of those facts compels the conclusion

that the Trustee's claims against Tensyr do not "arise out of or relate to" any

purported investments in BLMIS.  At the very least, there is a substantial ground

for difference of opinion on this point.  See Enron Corp., 2006 WL 2548592 at *4.

**B.    There is a Substantial Ground for Difference of Opinion on
Whether the Bankruptcy Court Was Correct to Credit the
Trustee's Jurisdictional Allegations Despite Tensyr's Unopposed
Declarations Rebutting those Allegations.**

District courts regularly rely on defendants' uncontested affidavits to

grant Rule 12(b)(2) motions to dismiss, creating at least a substantial ground for

difference of opinion on whether the Bankruptcy Court erred here by refusing to

even consider Tensyr's declarations.

As explained above, Tensyr's declarations rebutted the Trustee's key

jurisdictional allegations.  See supra pp. 6–8.  *First*, the Vandergeest Declaration

showed that it was mathematically impossible (based on the Trustee's *own
allegations* regarding transfers received by defendants in other BLMIS cases) that
all the Sentry transfers received by Tensyr originated from BLMIS.  See supra
pp. 6–7. *Second*, the Chislett Declaration rebutted the Trustee's key allegations of
Tensyr's contacts with New York; for example, that Tensyr contracted with a New
York entity.  See supra pp. 7–8.

The Bankruptcy Court refused to consider these declarations and
instead fully credited the Trustee's rebutted allegations.[7]  This was an error: in
evaluating a jurisdictional motion to dismiss, "allegations in the complaint are
presumed true *only* to the extent they are uncontroverted by the defendant's
affidavits."  Precision Wellness LLC v. Demetech Corp., No. 21-cv-01244, 2022
WL 970773, at *3 (E.D.N.Y. Mar. 30, 2022) (emphasis added); see also
MacDermid, Inc. v. Deiter, 702 F.3d 725, 727 (2d Cir. 2013) (allegations "taken as
true *to the extent* they are uncontroverted by the defendant's affidavits") (emphasis
added); Brownstone Inv. Grp. LLC v. Bonner & Partners, LLC, No. 20-cv-7351,
2021 WL 3423253, at *3 (S.D.N.Y. Aug. 5, 2021) (refusing to credit jurisdictional
allegations refuted by defendant's affidavit); MTS Logistics, Inc. v. Innovative

---

[7]    See, e.g., Decision at *3 (crediting allegation that "FGG agreed to act as
'manager and information agent' for Defendant" despite Chislett Declaration
showing that "Tensyr has never entered into any contract with an entity
called [FGG]" and that the manager and information agent contracts were
with FGL, a Cayman Islands entity, see Chislett Decl. ¶ 7; id. Exs. C and D).

Commodities Grp. LLC, 442 F. Supp. 3d 738, 742 n.1 (S.D.N.Y. 2020) (relying on

declaration and exhibits to grant jurisdictional motion to dismiss).

      The Bankruptcy Court incorrectly relied on Dorchester Financial

Securities Inc. v. Banco BRJ, S.A. for the proposition that "[p]rior to discovery, a

plaintiff challenged by a jurisdiction testing motion may defeat the motion by

pleading in good faith, legally sufficient allegations of jurisdiction."  Decision at

*6 (citing Dorchester, 722 F.3d 81, 84 (2d Cir. 2013)).  But this principle does not

apply where, as here, the Trustee's jurisdictional allegations are rebutted by an

unopposed affidavit.  In such circumstances, *only* unrebutted allegations must be

taken as true.  See Precision Wellness, 2022 WL 970773 at *2–4 (citing Dorchester

and relying on defendant's affidavit to grant 12(b)(2) motion); Brownstone, 2021

WL 3423253 at *3 (same); MTS Logistics, 442 F. Supp. 3d at 742 n.1 (same).

There is thus at least a substantial ground for difference of opinion on whether the

Bankruptcy Court erred by refusing to consider Tensyr's evidence rebutting the

Trustee's allegations.  See Enron Corp., 2006 WL 2548592 at *4.[8]

---

[8]    The Bankruptcy Court's ruling that Tensyr purposefully availed itself of
New York "by knowing, intending and contemplating that the substantial
majority of funds invested in Sentry would be transferred to BLMIS in New
York," Decision at *8, was also incorrect and conflicts with binding
Supreme Court and Second Circuit precedent, see Walden v. Fiore, 571 U.S.
277, 284, 289 (2014) (jurisdiction "must arise out of contacts that the
'defendant himself' creates with the forum"); Jazini v. Nissan Motor Co.,
Ltd., 148 F.3d 181, 184 (2d Cir. 1998) (foreign company is not subject to
jurisdiction because it knowingly invested in a company that engages in

### III.    RESOLVING THE PERSONAL JURISDICTION QUESTION WILL MATERIALLY ADVANCE THE TERMINATION OF THIS CASE.

The requirement that an appeal "may materially advance the ultimate termination of the litigation," 28 U.S.C. § 1292(b), is "closely connected" to the "controlling legal question" prong of the Section 1292(b) test.   Primavera Familienstifung v. Askin, 139 F. Supp. 2d 567, 570 (S.D.N.Y. 2001).   As explained above, this motion presents the controlling legal question of whether the bankruptcy court may exercise personal jurisdiction over Tensyr.   Resolving that question in Tensyr's favor would not merely advance this litigation but would bring it to an end.

### CONCLUSION

Tensyr respectfully requests that the Court grant leave to appeal.

---

activities in the United States); Opening Br. at 13–14; Reply at 4–5.  Tensyr respectfully reserves the right to address this holding on appeal.

Dated:  New York, New York
   December 26, 2023

Respectfully submitted,

FRESHFIELDS BRUCKHAUS DERINGER
US LLP

By: *s/ David Y. Livshiz*
   Timothy P. Harkness
   David Y. Livshiz
   Christian Vandergeest
   Adam Betts

601 Lexington Avenue, 31st Floor
New York, New York 10022
Telephone: (212) 277-4000
Facsimile: (212) 277-4001
timothy.harkness@freshfields.com
david.livshiz@freshfields.com
christian.vandergeest@freshfields.com
adam.betts@freshfields.com

*Attorneys for Defendant Tensyr Limited*

## CERTIFICATE OF COMPLIANCE

1.     This motion complies with the type-volume limitation of Federal Rule of Bankruptcy Procedure 8013(f)(3)(A), because it contains 5,182 words, excluding the parts of the brief exempted by Federal Rule of Bankruptcy Procedure 8015(g).

2.     This motion complies with the typeface and the type style requirements of Federal Rule of Bankruptcy Procedure 8013(f)(2) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: December 26, 2023
        New York, NY

By: */s/ David Y. Livshiz*
     David Y. Livshiz