# Exhibit B

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

[FOR PUBLICATION]

SECURITIES INVESTOR PROTECTION
CORPORATION,

           Plaintiff-Applicant,

v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

           Defendant.

No. 08-01789 (CGM)

SIPA LIQUIDATION

(Substantively Consolidated)

In re:

BERNARD L. MADOFF,

           Debtor.

IRVING H. PICARD, Trustee for the Liquidation of
Bernard L. Madoff Investment Securities LLC,

           Plaintiff,

v.

NATIXIS S.A. and TENSYR LTD.,
           Defendants.

Adv. Pro. No. 10-05353 (CGM)

## MEMORANDUM DECISION
## DENYING DEFENDANT'S MOTION TO DISMISS

<u>A P P E A R A N C E S</u> :

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA
Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of
Bernard L. Madoff*
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
By:    Matthew Friedman

*Attorneys for Defendant Tensyr Limited*
Freshfields Bruckhaus Deringer US LLP
601 Lexington Avenue, 31st Floor
New York, New York 10022
By:   Christian Vandergeest

## CECELIA G. MORRIS
## UNITED STATES BANKRUPTCY JUDGE

Pending before the Court is the motion of the Defendant, Tensyr Ltd. ("Tensyr"), to

dismiss the complaint of Irving Picard, the trustee ("Trustee") for the liquidation of Bernard L.

Madoff Investment Securities LLC ("BLMIS") seeking to recover subsequent transfers allegedly

consisting of BLMIS customer property.  Defendant seeks dismissal for lack of personal

jurisdiction and for failure to allege that it received BLMIS customer property.  Defendant also

asserts the affirmative defense of "good faith" and the safe harbor provision of the Bankruptcy

Code.  For the reasons set forth herein, the motion to dismiss is denied in its entirety.

### Jurisdiction

This is an adversary proceeding commenced in this Court, in which the main underlying

SIPA proceeding, Adv. Pro. No. 08-01789 (CGM) (the "SIPA Proceeding"), is pending.  The

SIPA Proceeding was originally brought in the United States District Court for the Southern

District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L.*

*Madoff Investment Securities LLC et al.*, No. 08-CV-10791, and has been referred to this Court.

This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1),

and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4).

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O).  Personal

jurisdiction has been contested by the Defendant and will be discussed *infra*.

## Background

The Court assumes familiarity with the background of the BLMIS Ponzi scheme and its SIPA proceeding. *See Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171, 178–83 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209, 212 L. Ed. 2d 217 (2022).

This adversary proceeding was filed on December 8, 2010. (Compl., ECF[1] No. 1). Via the amended complaint (the "Complaint"), the Trustee seeks to recover approximately $35,190,115 in BLMIS' customer property transfers to Defendant from Fairfield Sentry Limited ("Fairfield Sentry"). (Am. Compl. ¶ 126–29 ECF No. 193). The Trustee is seeking to recover an additional $179 million in customer property transferred to Natixis S.A. ("Natixis," and with Tensyr, "Defendants"). (*Id.* ¶¶ 8, 122–25). In total, the Trustee seeks to recover over $214 in subsequent transfers of customer property made to Defendants. (*Id.* ¶ 9).

Tensyr was formed in 2006 as a limited company under the laws of Jersey by Natixis S.A. and Fairfield Greenwich Group ("FGG"). (*Id.* ¶ 20). It is a "special purpose investment vehicle," had no employees of its own, and operated through Natixis and FGG. (*Id.*). The Complaint describes it as an "orphan" entity with no employees of its own. (*Id.* ¶ 22). New York-based FGG agreed to act as "manager and information agent" for Defendant. (*Id.* ¶¶ 23; 33).

Natixis is a "corporate and investment bank organized under the laws of France as a *société anonyme à conseil d'administration*." (*Id.* ¶ 14). Natixis, along with the affiliates and subsidiaries it operates, provides services including retail banking, corporate and investment banking, and asset and private wealth management. (*Id.*). By 2008, it employed over 22,000 people in 68 countries and held nearly €556 billion in assets. (*Id.* ¶ 19).

---

[1] Unless otherwise indicated, all references to "ECF" are references to this Court's electronic docket in adversary proceeding 10-05353-cgm.

Natixis allegedly created Tensyr to exploit returns from Madoff.  (*Id.* ¶ 3).  In 2006, Defendants and FGG "created a structured notes program (the 'Tensyr Transaction') through which they provided investors with returns linked to Fairfield Sentry's performance. As part of this notes program, Tensyr purchased shares in, and redeemed shares from, Fairfield Sentry." (*Id.* ¶ 6).  Profits were derived from BLMIS returns by both investing in Fairfield Sentry and by issuing notes linked to the performance of Fairfield Sentry.  (*Id.* ¶ 22).  Tensyr invested entirely in Fairfield Sentry.  (*Id.* ¶ 3).

FGG is alleged to have been a New York-based de facto partnership.  (*Id.*¶¶ 3, 24).  Its headquarters were in New York along with personnel and several partners.  (*Id.* ¶¶ 24–28, 34, 39).  Fairfield Sentry was "created, operated, and controlled by FGG in New York." (*Id.* ¶ 4). Fairfield Sentry maintained customer accounts with BLMIS's investment advisory business and "invest[ed] virtually all of its assets in its BLMIS customer accounts."  (*Id.* ¶ 5); (*Id.* ¶ 32) ("Fairfield Sentry invested at least 95% of its assets with New York-based BLMIS.").  Fairfield Sentry ultimately received over $2.8 billion in avoidable transfers of BLMIS customer property. (*Id.* ¶ 5).

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Fairfield Sentry and other feeder funds to avoid and recover fraudulent transfers of customer property in the amount of approximately $3 billion.  (*Id.* ¶ 115).  In 2011, the Trustee settled with Fairfield Sentry.  (*Id.* ¶ 116).  As part of the settlement, Fairfield Sentry consented to a judgment in the amount of $3.054 billion, (Consent J., 09-01239-cgm, ECF No. 109) of which only $70 million was repaid to the BLMIS customer property estate.  The Trustee then commenced a number of adversary proceedings against subsequent transferees, like Defendant, to recover the approximately $3 billion in missing customer property.

In its motion to dismiss, Tensyr argues that this Court lacks personal jurisdiction and that the Trustee has failed to plausibly allege that Defendant received subsequent transfers of BLMIS customer property. (Mem. L at 2–3, ECF No. 204). Defendant also asserts that § 546(e) of the Bankruptcy Code bars the trustee's claims and that it is entitled to the "good faith defense" under § 550(b). (*Id.*). The Trustee opposes the motion to dismiss. (Opp'n, ECF No. 211).

Tensyr filed a letter with this Court on October 5, 2023, in which it stated its intention to "refer to at oral argument" the "recent decision in *Picard v. Public Institution for Social Security.*" (Letter, ECF No. 217). The Trustee filed a letter in reply arguing that the PIFSS decision is inapplicable to the question of personal jurisdiction over Defendant. (Letter, ECF No. 218).

The parties entered into a stipulation waiving oral arguments as to "all issues in the Tensyr Motion except for issues related to personal jurisdiction." (Stip. and Order, ECF No. 220). The Court heard oral arguments on October 18, 2023. (*See* Hr'g Tr., Oct. 18, 2023, ECF No. 227).

**<u>Discussion</u>**

**Personal Jurisdiction**

Defendant objects to the Trustee's assertion of personal jurisdiction. In the Complaint, the Trustee argues that Defendant purposefully availed itself of the laws of the United States and New York. (Am. Compl. ¶ 21, ECF No. 193).

To survive a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the Trustee "must make a prima facie showing that jurisdiction exists." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018) (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34–35 (2d Cir. 2010)). A trial court has

considerable procedural leeway when addressing a pretrial dismissal motion under Rule 12(b)(2).

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013). "'It may

determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the

motion; or it may conduct an evidentiary hearing on the merits of the motion.'" *Dorchester Fin.*,

722 F.3d at 84 (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981);

*see also Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 187 (Bankr. S.D.N.Y. 2018)

(same).

 "Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the

motion by pleading in good faith, legally sufficient allegations of jurisdiction." *Dorchester Fin.*,

722 F.3d at 84–85 (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d

Cir. 1990)); *Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*, 627 B.R. 546, 565

(Bankr. S.D.N.Y. 2021) (same). In this case, the Trustee has alleged legally sufficient

allegations of jurisdiction simply by stating that the "Defendants invested in Fairfield Sentry

knowing and intending that their investments would be investments with New York-based

BLMIS," and that the Defendants "intended that the funds they invested in Fairfield Sentry

would be used to purchase securities in the United States through New York-based BLMIS."

(Am. Compl. ¶¶ 29–30, ECF No. 193). This allegation alone is sufficient to establish a prima

facie showing of jurisdiction over Defendant in the pre-discovery stage of litigation. At the pre-

discovery stage, the allegations need not be factually supported. *See Dorchester Fin.*, 722 F.3d

81, 85 (2d. Cir. 2013) (an averment of facts is necessary only after discovery). That being stated,

this was not the only allegation made by the Trustee.

 In order to be subjected to personal jurisdiction in the United States, due process requires

that a defendant have sufficient minimum contacts with the forum in which the defendant is sued

"'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501, 516 (Bankr. S.D.N.Y. 2012) ("*BLI*") (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  The pleadings and affidavits are to be construed "'in the light most favorable to the plaintiffs, resolving all doubts in their favor.'"  *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (quoting *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)); *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 187 (Bankr. S.D.N.Y. 2018).

> The Supreme Court has set out three conditions for the exercise of specific jurisdiction over a nonresident defendant.  First, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum State or have purposefully directed its conduct into the forum State.  Second, the plaintiff's claim must arise out of or relate to the defendant's forum conduct.  Finally, the exercise of jurisdiction must be reasonable under the circumstances.

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (cleaned up).

**Purposeful Availment**

"[M]inimum contacts . . . exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018).  "Although a defendant's contacts with the forum state may be intertwined with its transactions or interactions with the plaintiff or other parties, a defendant's relationship with a third party, standing alone, is an insufficient basis for jurisdiction."  *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (cleaned up).  "It is insufficient to rely on a defendant's random, fortuitous, or attenuated contacts or on the unilateral activity of a plaintiff with the forum to establish specific jurisdiction." *Id.*

A party "purposefully avail[s] itself of the benefits and protections of New York laws by
knowing, intending and contemplating that the substantial majority of funds invested in Fairfield
Sentry would be transferred to BLMIS in New York to be invested in the New York securities
market." *BLI*, 480 B.R. at 517.

In the Complaint, the Trustee alleges that Defendant knowingly invested with New York-
based BLMIS, via Fairfield Sentry. (Am. Compl. ¶ 29–30, ECF No. 193).  Defendant executed
subscription agreements for purchasing shares of Fairfield Sentry, in which it affirmed "having
received and read" one of the feeder fund's private placement memoranda.  (*Id.* ¶ 30–31).  These
memoranda informed Defendant that:

> Fairfield Sentry invested at least 95% of its assets with New York-based BLMIS;
> BLMIS was Fairfield Sentry's investment adviser; BLMIS was registered with the
> U.S. Securities and Exchange Commission (the "SEC");
> BLMIS was the executing broker for Fairfield Sentry's investments;
> BLMIS's "split-strike conversion" trading strategy ('SSC Strategy') purportedly
> involved the purchase of U.S. equities, U.S. options, and U.S. Treasury securities
> . . . traded on U.S. exchanges, and the decisions regarding which U.S. securities to
> purportedly purchase, and when to make them, were made by BLMIS in New
> York;
> BLMIS was the custodian of Fairfield Sentry's investments with BLMIS; and
> BLMIS was "essential to the continued operation of" Fairfield Sentry.

(*Id.* ¶ 32).  Tensyr's ratings memorandum, which was provided to New York ratings agencies to
evaluate its notes, contained details of BLMIS's activities in New York and the involvement of
Madoff and FGG in Fairfield Sentry.  (*Id.* ¶¶ 28, 33–34).  The ratings memo discussed U.S.-
listed investments, in which BLMIS purportedly invested.  (*Id.* ¶ 35).

FGG met with rating agencies in New York in "an effort to obtain the highest rating for
Tensyr." (*Id.* ¶ 39).  Natixis held meetings in New York with FGG employees to discuss Tensyr,
and communicated extensively via phone and email with FGG employees regarding Madoff, the
feeder fund, and Defendant on "how to convince Madoff to agree to the creation of Tensyr." (*Id.*

¶¶ 40–43).  Natixis and FGG jointly "drafted and revised talking points for a meeting with

Madoff in New York to convince 'Uncle Bernie' to 'give[ ] the OK' to the Tensyr Transaction,

which Madoff ultimately did." (*Id.* ¶ 42).  In November 2006, Natixis and FGG "sought

Madoff's direct authorization to form Tensyr, which he ultimately gave." (*Id.* ¶ 101).  One

partner of FGG, Andres Piedrahita, wrote via email to other FGG partners that "[a]fter months

and hundreds of hours of work . . . lot[s] of sleepless nights . . . Uncle Bernie has given us the

OK to go forward with the [transaction]." (*Id.*).

    Tensyr's redemption requests to Fairfield Sentry were accompanied by redemption

confirmations sent to FGG's general counsel in New York City, with the label "C/O

FAIRFIELD GREENWICH GROUP." (*Id.* ¶ 25).  The redemption requests made by Tensyr

were signed on behalf of Defendant by multiple FGG partners, "all of whom were based in New

York." (*Id.* ¶ 26).

    Fairfield Sentry invested all or substantially all of its assets into the BLMIS Ponzi

scheme. (*Id.* ¶ 125); (09-01239 Compl. ¶ 228) ("Under Fairfield Sentry's offering memorandum,

the fund's investment manager was required to invest no less than 95% of the fund's assets

through BLMIS.") (adopted by reference, at paragraph 119, of this Complaint).  Defendants

"entered into subscription agreements for Fairfield Sentry shares that included New York choice

of law, venue, service of process, and jurisdiction provisions." (*Id.* ¶ 46).  They "voluntarily

executed these subscription agreements each time they invested in Fairfield Sentry." (*Id.* ¶ 47).

    Defendant allegedly used New York bank accounts to invest and redeem funds from

Fairfield Sentry.  (Id. ¶ 50) ("Tensyr designated and used a correspondent bank account at The

Bank of New York in New York . . . to send subscription payments to and receive redemption

payments from Fairfield Sentry. Tensyr received redemption payments in the Bank of New York

Account.").  Defendant also delivered subscription funds to HSBC Bank USA correspondent

accounts in New York.  (*Id.* ¶ 48).

The Complaint contains allegations that are legally sufficient to constitute a prima facie

showing of jurisdiction. *Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d. Cir.

2013). "[A]lthough physical presence in the forum is not a prerequisite to jurisdiction, physical

entry into the State—either by the defendant in person or through an agent, goods, mail, or some

other means—is certainly a relevant contact." *Walden v. Fiore*, 571 U.S. 277, 285 (2014).

"[Defendant] intentionally tossed a seed from abroad to take root and grow as a new tree in the

Madoff money orchard in the United States and reap the benefits therefrom." *BLI*, 480 B.R. 501,

506 (Bankr. S.D.N.Y. 2012).  Defendant's alleged contacts with New York are not random,

isolated, or fortuitous.

**Arise out of or relate to the Defendant's forum conduct**

As to the second prong, the suit must "arise out of *or relate to* the defendant's contacts

with the forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, __ U.S. __, 141 S. Ct. 1017,

1026, 209 L. Ed. 2d 225 (2021) (emphasis in original).  "[P]roof that a plaintiff's claim came

about because of the defendant's in-state conduct" is not required.  *Id.* at 1027.  Instead, the court

need only find "an affiliation between the forum and the underlying controversy." *Goodyear*

*Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Picard v. BNP Paribas S.A.*

(*In re BLMIS*), 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) ("Where the defendant's contacts with

the jurisdiction that relate to the cause of action are more substantial, however, it is not

unreasonable to say that the defendant is subject to personal jurisdiction even though the acts

within the state are not the proximate cause of the plaintiff's injury.") (internal quotations

omitted).

The Trustee is asserting subsequent transfer claims against Tensyr for monies it received

from the BLMIS feeder funds. (Am. Compl. ¶¶ 9, 115–30). These allegations are directly

related to its investment activities with Fairfield Sentry. *BNP Paribas S.A.* 594 B.R. at 191

(finding that the redemption and other payments the defendants received as direct investors in a

BLMIS feeder fund arose from the New York contacts such as sending subscription agreements

to New York, wiring funds in U.S. dollars to New York, sending redemption requests to New

York, and receiving redemption payments from a Bank of New York account in New York, and

were the proximate cause of the injuries that the Trustee sought to redress).

The suit is affiliated with the alleged in-state conduct. *Goodyear Dunlop Tires*

*Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

**Reasonableness**

Having found sufficient minimum contacts, the Court must determine if exercising

personal jurisdiction over the Defendant is reasonable and "comport[s] with fair play and

substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (internal

quotations omitted). Factors the Court may consider include the burden on the defendant, the

forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient

and effective relief, the interstate judicial system's interest in obtaining the most efficient

resolution of controversies, and the shared interest of the several States in furthering fundamental

substantive social policies. *Id.* at 477.

The exercise of jurisdiction is reasonable. Defendant is not burdened by this litigation.

Tensyr has actively participated in this Court's litigation for over ten years. It is represented by

U.S. counsel, held bank accounts in New York, and submitted to the jurisdiction of New York

courts' when it signed subscription agreements with the Fairfield Sentry.[2]  (Am. Compl. ¶¶ 46–51).  The forum and the Trustee both have a strong interest in litigating BLMIS adversary proceedings in this Court.  *Picard v. Maxam Absolute Return Fund, L.P. (In re BLMIS)*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012); *Picard v. Chais (In re BLMIS)*, 440 B.R. 274, 278 (Bankr. S.D.N.Y. 2010); *Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 418 B.R. 75, 82 (Bankr. S.D.N.Y. 2009); *Picard v. Fairfield Greenwich Grp.,* (*In re Fairfield Sentry Ltd.*), 627 B.R. 546, 568 (Bankr. S.D.N.Y. 2021); *see also In re Picard*, 917 F.3d 85, 103 (2d Cir. 2019) ("The United States has a compelling interest in allowing domestic estates to recover fraudulently transferred property.").

By alleging that Defendant intentionally invested in BLMIS, the Trustee has met his burden of alleging jurisdiction as to each subsequent transfer that originated with BLMIS.  And by alleging that Defendant used New York bank accounts, the Trustee has met his burden of alleging jurisdiction over each transfer that received through a New York bank account.

As recognized by the Second Circuit, "[w]hen these [subsequent transfer] investors chose to buy into feeder funds that placed all or substantially all of their assets with Madoff Securities, they knew where their money was going." *In re Picard*, 917 F.3d 85, 105 (2d Cir. 2019).  The Trustee has made a prima facie showing of personal jurisdiction with respect to all of the subsequent transfers at issue in this Complaint.

---

[2] Even though this Court held that the Defendants consent to jurisdiction in New York courts contained in the subscription agreements it signed prior to investing with Fairfield Sentry could not be used as the sole basis for this Court's exercise of personal jurisdiction over an action by foreign liquidators to recover redemption payments under British Virgin Island law, the fact that Defendant agreed to submit to the jurisdiction of this Court is certainly a relevant factor in determining whether the exercise of jurisdiction over Defendant is reasonable.  *In Fairfield Sentry v. Theodoor GGC Amsterdam* (*In re Fairfield Sentry Ltd.*), Case No. 10-13164 (SMB), Adv. No. 10-03496 (SMB), 2018 WL 3756343, at *12 (Bankr. S.D.N.Y. Aug. 6, 2018) ("Defendants' consent to the Subscription Agreement does not constitute consent to personal jurisdiction in the U.S. Redeemer Actions."), *aff'd*, *Fairfield Sentry Ltd. v. Citibank, N.A. London*, No. 19-CV-3911 (VSB), 2022 WL 3644436, at *9 (S.D.N.Y. Aug. 24, 2022).

**<u>Application of the District Court's Opinion in *PIFSS*</u>**

Defendant misses the mark when it argues that this Court should apply the reasoning used for analyzing exceptions to foreign sovereign immunity. (Def.'s Letter at 2, ECF No. 217). The Foreign Sovereign Immunities Act provides that "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter." 28 U.S.C. § 1604. Under the third clause of the commercial activities exception to the FSIA,

> [a] foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . in which the action is [i] based . . . upon an act outside the territory of the United States [ii] in connection with a commercial activity of the foreign state elsewhere and [iii] that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2).

The District Court in *Pub. Inst. for Soc. Sec. v. Picard (In re BLMIS)*, No. 22-cv-8741-GHW, 2023 WL 6143985 (S.D.N.Y. Sept. 20, 2023) ("*PIFSS*"). (Def.'s Letter, ECF No. 217), found that the "redemption request and receipt of funds" by the defendant, a foreign government entity, "did not have a direct effect in the United States." *PIFSS* at *8. The District Court stated that the "possibility that the transfer transited through a New York correspondent bank on its way between the foreign bank accounts of two foreign entities does not matter—the brief transit of funds through a U.S. correspondent account is not 'legally significant.'" *Id.* at *7. The court further stated that because the defendant's "redemption request to Fairfield Sentry in December 2003 occurred after BLMIS's most recent payments to Fairfield Sentry, it cannot be the case that PIFSS's redemption request triggered any movement of funds from BLMIS to Fairfield Sentry." *Id.*

Defendant argues that the Court should apply the same reasoning here as the District

Court did in *PIFSS*.  (Def.'s Letter, ECF No. 217).  Tensyr argues that "[w]hile PIFSS's

jurisdictional motion to dismiss was based on sovereign immunity, rather than personal

jurisdiction, that difference is immaterial here: the minimum contacts analysis is 'essentially

identical' to the 'direct effects' prong of the Foreign Sovereign Immunities Act's commercial

activity exception analyzed by the Court." (*Id.*) (quoting *Rein v. Socialist People's Libyan Arab

Jamahiriya*, 162 F.3d 748, 760–61 (2d Cir. 1998)); *see also Boeing Co. v. Egyptair*, No. 05-cv-

5986, 2007 WL 1315716, at *2 (2d Cir. May 7, 2007) ("questions regarding minimum contacts

for personal jurisdiction purposes and commercial contacts for [sovereign immunity] purposes

[are] inextricably intertwined").

The Trustee argues that *PIFSS* is inapplicable to this case as Tensyr is not a foreign

sovereign and that the question of personal jurisdiction over Tensyr is distinct from that of

subject matter jurisdiction over a foreign government agency.  (Trustee's Letter, ECF No. 218).

The Trustee further argues that prior to its decision on sovereign immunity, the same District

Court "let stand this Court's decision that it had personal jurisdiction over the same defendant."

*Pub. Inst. for Soc. Sec. v. Picard*, No. 1:22-CV-8741-GHW, 2023 WL 3293648, at *1 (S.D.N.Y.

May 5, 2023).

The District Court denied the Public Institution for Social Security's appeal of this

Court's order denying dismissal based for lack of personal jurisdiction.  *Id.*  The District Court

explained that an appeal on personal jurisdiction was not warranted at the time, as this

Bankruptcy Court relied on evidence submitted by the parties in response to the motion to

dismiss, "[a]nd it was that evidence, in combination with Trustee's complaint, that supported a

prima facie case of jurisdiction over PIFSS.  *Id.* at *5.  The District Court stated that,

[a]s the Bankruptcy Court recognized, to survive a motion to dismiss for lack of personal jurisdiction, the Trustee was only required to "make a prima facie showing that jurisdiction exists." Order at 8 (quoting *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018)). And to satisfy that requirement, the plaintiff need only plead "good faith, legally sufficient allegations of jurisdiction"; no further proof of jurisdictional facts is required. Id. at 9 (quoting *Dorchester Fin. Sec., Inc. v. Banco BRJ*, S.A., 722 F.3d 81, 84–85 (2d Cir. 2013)).

*Id.* at *4.

As the Trustee made clear at oral arguments, PIFSS "involved a challenge to subject matter jurisdiction on the basis of foreign sovereign immunity, while *Tensyr* is challenging whether the trustee has made a prima facie showing of personal jurisdiction on the basis of purposeful availment. Tensyr is not a foreign sovereign, nor is it challenging subject matter jurisdiction." (Hr'g Tr. 89:15–21, Oct. 18, 2023, ECF No. 227). The Court agrees with the Trustee that *PIFSS* is not clearly applicable to the issues of personal jurisdiction over a non-foreign sovereign. Tensyr's support for applying law on exceptions to foreign sovereign immunity for purposes of subject matter jurisdiction here, in a case with no foreign sovereign and no question of subject matter jurisdiction, is unconvincing.

The Court of Appeals for the Second Circuit ("Court of Appeals") recognized in *Rein* that "the two kinds of jurisdiction—subject matter and personal—are interrelated under the FSIA." *Rein*, 162 F.3d at 759. Analyzing the trial court's personal and subject matter jurisdiction over a Libyan governmental agency, the Second Circuit thread a fine line. The Court of Appeals recognized that it is possible to make a finding on subject matter jurisdiction without making a finding on personal jurisdiction. *Id.* ("It does not follow, however, that a court cannot decide issues of subject matter jurisdiction without at the same time making definitive findings as to personal jurisdiction."). Because review of personal jurisdiction is not necessary for review of subject matter jurisdiction, the Court of Appeals "conclude[d] that the issues of subject matter

jurisdiction and personal jurisdiction are not inextricably intertwined in th[at] case." *Id.* The Court of Appeals then explicitly rejected the argument that "under the FSIA, personal jurisdiction and subject matter jurisdiction are interrelated sufficiently to justify the exercise of pendent appellate jurisdiction." *Id.* at 760.

The Court of Appeals explained that by finding a direct effect in the United States in a prior case, it "necessarily had also decided that the defendant had minimum contacts with the United States sufficient to establish personal jurisdiction over it in an American forum without violating the requirements of due process." *Id.* (analyzing *Hanil Bank v. PT. Bank Negara Indonesia (Persero)*, 148 F.3d 127 (2d Cir. 1998)). "The finding of subject matter jurisdiction under the commercial activities exception also entailed a finding of minimum contacts, and that finding was therefore conclusive on the personal jurisdiction question as well." *Rein* 162 F.3d at 760. Whether the "issues of subject matter jurisdiction and personal jurisdiction were inextricably intertwined" depends on the specific issues of personal and subject matter jurisdiction at issue. *Id.* at 760–61.

In *Rein*, the Court of Appeals found that in certain circumstances finding a direct effect in the United States sufficed to find minimum contacts. It stated that the forms of jurisdiction were "essentially identical" in a prior case because finding subject matter jurisdiction implied a finding of personal jurisdiction. *Id.* ("In other words, the issues of subject matter jurisdiction and personal jurisdiction were inextricably intertwined, because the court could not have answered the former without saying everything that was required to answer the latter. Indeed, in *Hanil Bank* the issues were more than inextricably intertwined: they were essentially identical.").

Tensyr would like to invert that reasoning to conclude that where there is no direct effect, there are no minimum contacts. There is no support in *Rein* for the proposition that a lack of

direct effect in the United States under the FSIA exception dictates a lack of minimum contacts for personal jurisdiction.

Defendant relies on two further cases to support its argument.  (Hr'g Tr. 95:19–23).  In *Boeing Co. v. Egyptair*, No. 05-5986-CV, 2007 WL 1315716, (2d Cir. May 7, 2007), the Court of Appeals stated that "questions regarding minimum contacts for personal jurisdiction purposes and commercial contacts for FSIA purposes [are] inextricably intertwined."  2007 WL 1315716, at *1 (quoting *U.S. Fidelity and Guar. Co. v. Braspetro Oil Services, Co.*, 199 F.3d 94, 97 (2d Cir. 1999) (per curiam)).  In *Braspetro Oil* the Court of Appeals summarized Rein as "ma[king] explicit" that "questions regarding minimum contacts for personal jurisdiction purposes and commercial contacts for FSIA purposes were inextricably intertwined. 199 F.3d at 97.

Both cases to use the analysis from *Rein* in a specific context: findings of commercial contacts sufficient for exceptions to FSIA were sufficient for minimum contacts.  *Id.* ("the same commercial contacts between the defendant and the forum that placed the defendant within the commercial activity exception to the FSIA were sufficient to constitute minimum contacts for the purposes of personal jurisdiction."); *Boeing Co.*, 2007 WL 1315716, at *2 ("Assuming, arguendo, that the minimum contacts requirement of the Due Process Clause applies to foreign instrumentalities such as Misr, . . . we have no difficulty finding that there were sufficient minimum contacts here.").

The issue here is different.  *Rein* does not lend support to the argument that there may never be minimum contacts for personal jurisdiction without a finding of a direct effect in the United States for purposes of exceptions to FSIA.  These questions are inextricably intertwined in the situations presented in *Rein*, *Boeing Co.*, and *Braspetro*, where there was a finding of direct effect.  They are not here, where there is no finding of a direct effect.  *See Drexel Burnham*

*Lambert Grp. Inc. v. Comm. of Receivers for A.W. Galadari*, 810 F. Supp. 1375, 1388

(S.D.N.Y.), *rev'd on other grounds*, 12 F.3d 317 (2d Cir. 1993) ("Personal jurisdiction under the

FSIA is a matter separate and apart from the issue of subject matter jurisdiction. "); *see also*

*Walpex Trading Co. v. Yacimientos Petroliferos Fiscales Bolivianos*, 712 F. Supp. 383, 390

(S.D.N.Y. 1989) ("Personal jurisdiction over foreign sovereign instrumentalities under the FSIA

involves a scrutiny distinct from the subject matter jurisdiction inquiry . . . .").

**12(b)(6) standard**

"To survive a motion to dismiss, the complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (cleaned up).  The claim is facially plausible when a plaintiff pleads facts that

allow the Court to draw a "reasonable inference that the defendant is liable for the misconduct

alleged." *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for

more than a sheer possibility that a defendant has acted unlawfully."  *Id.*; *see also Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 556 (2007) ("Asking for plausible grounds to infer an agreement does

not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise

a reasonable expectation that discovery will reveal evidence of illegal agreement.").  In deciding

a motion to dismiss, the Court should assume the factual allegations are true and determine

whether, when read together, they plausibly give rise to an entitlement of relief.  *Iqbal*, 556 U.S.

at 679.  "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge

that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."

*Twombly*, 550 U.S. at 556.

In deciding the motion, "courts must consider the complaint in its entirety, as well as

other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in

particular, documents incorporated into the complaint by reference, and matters of which a court

may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322

(2007). A complaint is "deemed to include any written instrument attached to it as an exhibit[,] .

. . documents incorporated in it by reference[,]" and other documents "integral" to the complaint.

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted). A

document is "integral" to a complaint when the plaintiff has "actual notice" of the extraneous

information and relied on it in framing the complaint. *DeLuca v. AccessIT Grp., Inc.*, 695 F.

Supp. 2d 54, 60 (S.D.N.Y. 2010) (citing *Chambers*, 282 F.3d at 153).

The Trustee is seeking to recover subsequent transfers made to Defendant by Fairfield

Sentry.

## Recovery of Subsequent Transfers

Pursuant to § 550(a) of the Bankruptcy Code, a trustee is entitled to recover avoided

transfers of customer property from initial transferees as well as from "any immediate or mediate

transferee of such initial transferee." 11 U.S.C. § 550(a). "To plead a subsequent transfer claim,

the Trustee must plead that the initial transfer is avoidable, and the defendant is a subsequent

transferee of that initial transferee, that is, that the funds at issue originated with the debtor."

*Picard v. BNP Paribas S.A. (In re BLMIS),* 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018); *see also

SIPC v. BLMIS (In re Consol. Proc. On 11 U.S.C. § 546(e))*, No. 12 MC 115, 2013 WL

1609154, at *7 (S.D.N.Y. Apr. 15, 2013). "Federal Civil Rule 9(b) governs the portion of a

claim to avoid an initial intentional fraudulent transfer and Rule 8(a) governs the portion of a

claim to recover the subsequent transfer." *BNP Paribas*, 594 B.R. at 195 (*citing Sharp Int'l

Corp. v. State St. Bank & Trust Co., (In re Sharp Int'l Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005).

The Trustee only needs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff's burden at the pleading stage does not require exact accounting of the funds at issue. *BNP Paribas*, 594 B.R. at 195. Rather "[t]he plaintiff must allege the necessary vital statistics – the who, when, and how much – of the purported transfers to establish an entity as a subsequent transferee of the funds." *Id.* However, the plaintiff's burden at the pleading stage does not require dollar-for-dollar accounting of the exact funds at issue." *Id.*

While the Trustee must allege that the initial transfer from BLMIS to Fairfield Sentry is avoidable, he is not required to avoid the transfer received by the initial transferee before asserting an action against subsequent transferees. *IBT Int'l Inc. v. Northern (In re Int'l Admin Servs., Inc.)*, 408 F.3d 689, 706-07 (11th Cir. 2005). The Trustee is free to pursue any of the immediate or mediate transferees, and nothing in the statute requires a different result. *IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.)*, 408 F.3d 689, 706-07 (11th Cir. 2005).

The Trustee pleaded the avoidability of the initial transfer (from BLMIS to Fairfield Sentry) by adopting by reference the entirety of the complaint filed against Fairfield Sentry in adversary proceeding 09-1239 ("Fairfield Complaint"). (Am. Compl. ¶ 119, ECF No. 193). Whether the Fairfield Complaint properly pleads the avoidability of the initial transfer, is governed by Rule 9(b). Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

> Where the actual fraudulent transfer claim is asserted by a bankruptcy trustee, applicable Second Circuit precedent instructs courts to adopt a more liberal view since a trustee is an outsider to the transaction who must plead fraud from second-hand knowledge. Moreover, in a case such as this one, where the Trustee's lack of personal knowledge is compounded with complicated issues and transactions that

extend over lengthy periods of time, the trustee's handicap increases, and even greater latitude should be afforded.

*Picard v. Cohmad Secs. Corp.,* (*In re BLMIS*), 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011) (cleaned up).

## Adoption by Reference

The Trustee has adopted by reference allegations contained in his complaint against the Feeder Funds. (Am. Compl. ¶ 119, ECF No. 193). "Adoption by reference is governed by Rule 10 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 10(c). Rule 10(c) states: "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion." The district court has already found that adoption by reference of the entire Fairfield Complaint is proper. *See SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 550(a)*), 501 B.R. 26, 36 (S.D.N.Y. 2013) ("The Trustee's complaint against Standard Chartered Financial Services incorporates by reference the complaints against Kingate and Fairfield, including the allegations concerning the avoidability of the initial transfers, and further alleges the avoidability of these transfers outright. Thus, the avoidability of the transfers from Madoff Securities to Kingate and Fairfield is sufficiently pleaded for purposes of section 550(a).") (cleaned up).

The Court will follow the district court's instruction. As was explained in *In re Geiger,* pleadings filed in the "same action" may be properly adopted by reference in other pleadings in that action. 446 B.R. 670, 679 (Bankr. E.D. Pa. 2010). The Fairfield Complaint was filed in the "same action" as this adversary proceeding for purposes of Rule 10(c). *Id.* Cases within this SIPA proceeding are filed in the same "proceeding"—the SIPA proceeding. *In re Terrestar Corp.*, No. 16 CIV. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings filed in the same bankruptcy case do not constitute different cases."); *see also Sec.*

*Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 610 B.R. 197, 237 (Bankr. S.D.N.Y. 2019)

("The prior decisions within this SIPA proceeding constitute law of the case . . . . "); *Sec. Inv.*

*Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 603 B.R. 682, 700 (Bankr. S.D.N.Y. 2019),

(citing *In re Motors Liquidation Co.*, 590 B.R. 39, 62 (S.D.N.Y. 2018) (law of the case doctrine

applies across adversary proceedings within the same main case), *aff'd*, 943 F.3d 125 (2d Cir.

2019)); *Perez v. Terrastar Corp. (In re Terrastar Corp.)*, No. 16 Civ. 1421 (ER), 2017 WL

1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings filed in the same bankruptcy

case do not constitute different cases."), *appeal dismissed*, No. 17-1117 (2d Cir. June 29, 2017);

*Bourdeau Bros., Inc. v. Montagne (In re Montagne)*, No. 08-1024 (CAB), 2010 WL 271347, at

*6 (Bankr. D. Vt. Jan. 22, 2010) ("[D]ifferent adversary proceedings in the same main case do

not constitute different 'cases.'").

     Some courts have worried that wholesale incorporation of a pleading can lead to

"confusing and inconvenient" results. *Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 446–47

(E.D. Va. 2009) (footnote omitted), *aff'd*, 382 F. App'x 256 (4th Cir. 2010). That is not a

concern in these proceedings. Defendant, like many subsequent transfer defendants in this SIPA

proceeding, is aware of what has been filed in the other adversary proceeding in this SIPA

liquidation. It routinely follows what is happening on a proceeding-wide basis. (*See* Suppl.

Mem. L., ECF No. 89).

     Allowing the Trustee to incorporate the Fairfield Complaint by reference does not

prejudice the Defendant. If the Court were to dismiss this Complaint and permit the Trustee to

amend his Complaint to include all of the allegations that are already contained in the Fairfield

Complaint, all parties would be prejudiced by delay in these already, overly-prolonged

proceedings. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No.

09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("Rule 15 places no time bar on making motions to amend pleadings and permits the amending of pleadings "when justice so requires.").

Through the adoption of the Fairfield Complaint, the Trustee has adequately pleaded, with particularity, the avoidability of the initial transfer (despite the safe harbor, which will be discussed in more detail below) due to the Feeder Funds' knowledge of BLMIS' fraud. (Fairfield Compl. ¶¶ 314–318, 09-01239, ECF No. 286); *see also SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 550(a)*), 501 B.R. 26, 36 (S.D.N.Y. 2013) ("[T]he Court directs that the following adversary proceedings be returned to the Bankruptcy Court for further proceedings consistent with this Opinion and Order . . . .").

Defendant argues in a footnote that the "*en masse*" adoption of the Fairfield Complaint violates Federal Rule of Civil Procedure 8, which requires a "short and plain statement of [a] claim." (Mem. L. at 23 n.9, ECF No. 204); Fed. R. Civ. P. 8(a)(2). The Court disagrees. Defendant has been following this and the Fairfield Sentry chapter 15 case and has been familiar with the allegations contained in the Fairfield Complaint for over a decade. Indeed, Defendant has been privy to information that this Court has not seen. Fairfield Sentry has a complicated corporate structure with various insiders many of whom are alleged to have had knowledge of BLMIS' fraud. The Trustee has to plead nearly the entire Fairfield Complaint to demonstrate that the initial transfer is voidable. This Court has reviewed the Fairfield Complaint, in detail, on numerous occasions and there is not much of that document that could be omitted. Insisting that the Trustee re-allege all of the allegations contained in the Fairfield Complaint is an unnecessary, dilatory tactic by the Defendant.

**The Safe Harbor does not bar the avoidance of the Fairfield Initial Transfers**

Defendant has raised the "safe harbor" defense, found in § 546(e), to the Trustee's

allegations.  Section 546(e) is referred to as the safe harbor because it protects a transfer that is a

"settlement payment ... made by or to (or for the benefit of) a ... financial institution [or]

financial participant," or that is "made by or to (or for the benefit of) a ... financial institution [or]

financial participant ... in connection with a securities contract."  11 U.S.C. § 546(e).  "By its

terms, the safe harbor is a defense to the avoidance of the *initial* transfer."  *Picard v. BNP*

*Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis in original).

Where the initial transferee fails to raise a § 546(e) defense against the Trustee's avoidance of

certain transfers, as is the case here, the subsequent transferee is entitled to raise a § 546(e)

defense against recovery of the initial transfer.  *Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No.

08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3 (Bankr. S.D.N.Y. Aug.

6, 2021).

On the issue of the safe harbor, the Court adopts the district court's reasoning in: *Picard*

*v. Multi-Strategy Fund Ltd.* (*In re BLMIS*), No. 22-CV-06502 (JSR), 2022 WL 16647767

(S.D.N.Y. Nov. 3, 2022).

The Trustee has alleged that Fairfield Sentry knew the payments it received from BLMIS

were neither settlement payments nor payments in connection with a securities contract.  "The

safe harbor was intended, among other things, to promote the reasonable expectations of

legitimate investors.  If an investor knew that BLMIS was not actually trading securities, he had

no reasonable expectation that he was signing a contract with BLMIS for the purpose of trading

securities for his account.  In that event, the Trustee can avoid and recover preferences and actual

and constructive fraudulent transfers to the full extent permitted under state and federal law."

*Picard v. Legacy Capital Ltd. (In re BLMIS)*, 548 B.R. 13, 28 (Bankr. S.D.N.Y. 2016) (internal

citations omitted), *vacated and remanded on other grounds, Picard v. Citibank, N.A.* (*In re*

*BLMIS*), 12 F.4th 171 (2d Cir. 2021)).

The district court determined that "those defendants who claim the protections of Section

546(e) through a Madoff Securities account agreement but who actually knew that Madoff

Securities was a Ponzi scheme are not entitled to the protections of the Section 546(e) safe

harbor, and their motions to dismiss the Trustee's claims on this ground must be denied." *SIPC*

*v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 546(e)*), No. 12 MC 115(JSR), 2013

WL 1609154, at *10 (S.D.N.Y. Apr. 15, 2013); *see also Picard v. Multi-Strategy Fund Ltd.* (*In*

*re BLMIS*), No. 22-CV-06502 (JSR), 2022 WL 16647767, at *7 (S.D.N.Y. Nov. 3, 2022) ("[I]n

circumstances in which a transferee was complicit in Madoff Securities' fraud, Section 546(e)

d[oes] not apply as a matter of its express terms.").

This Court is powerless to reconsider this issue, agrees with the district court's reasoning,

and finds its holding consistent with *dicta* set forth by the Court of Appeals for the Second

Circuit. *See Picard v. Ida Fishman Revocable Trust* (*In re Bernard L. Madoff Inv. Sec. LLC*),

773 F.3d 411, 420 (2d Cir. 2014) ("The clawback defendants, having every reason to believe that

BLMIS was actually engaged in the business of effecting securities transactions, have every right

to avail themselves of all the protections afforded to the clients of stockbrokers, including the

protection offered by § 546(e).").

This Court has already determined that the Fairfield Complaint[3] contains sufficient

allegations of Fairfield Sentry's actual knowledge to defeat the safe harbor defense on a Rule

12(b)(6) motion. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv.

---

[3] The Fairfield Complaint can be found on the docket of adversary number 09-01239-cgm, ECF
No. 286.

No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("[T]he Trustee
has alleged that the agents and principals of the Fairfield Funds had actual knowledge of
Madoff's fraud"). In that adversary proceeding, the Court held that "[t]he Trustee has pled
[actual] knowledge in two ways: 1) that certain individuals had actual knowledge of Madoff's
fraud, which is imputed to the Fairfield Funds; and 2) that actual knowledge is imputed to the
Fairfield Funds through 'FGG,' an alleged 'de facto' partnership." *Id.* at *4; *see also* Fairfield
Compl. ¶ 320 ("Fairfield Sentry had actual knowledge of the fraud at BLMIS"); Fairfield Compl.
¶ 321 ("Greenwich Sentry and Greenwich Sentry Partners had actual knowledge of the fraud at
BLMIS"); Fairfield Compl. ¶ 322 ("FIFL had actual knowledge of the fraud at BLMIS");
Fairfield Compl. ¶ 323 ("Stable Fund had actual knowledge of the fraud at BLMIS"); Fairfield
Compl. ¶ 324 ("FG Limited had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶
325 ("FG Bermuda had actual knowledge of the fraud at BLMIS"); ¶ 326 ("FG Advisors had
actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 327 ("Fairfield International
Managers had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 328 ("FG Capital
had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 329 ("Share Management had
actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 9 ("It is inescapable that FGG
partners knew BLMIS was not trading securities. They knew BLMIS's returns could not be the
result of the split strike conversion strategy (the "SSC Strategy"). They knew BLMIS's equities
and options trading volumes were impossible. They knew that BLMIS reported impossible, out-
of-range trades, which almost always were in Madoff's favor. They knew Madoff's auditor was
not certified and lacked the ability to audit BLMIS. They knew BLMIS did not use an
independent broker or custodian. They knew Madoff refused to identify any of BLMIS's options
counterparties. They knew their clients and potential clients raised numerous due diligence

questions they would not and could not satisfactorily answer. They knew Madoff would refuse to provide them with honest answers to due diligence questions because it would confirm the details of his fraud. They knew Madoff lied about whether he traded options over the counter or through the exchange. They knew they lied to clients about BLMIS's practices in order to keep the money flowing and their fees growing. And they knowingly misled the SEC at Madoff's direction.").

"In sum, if the Trustee sufficiently alleges that the [initial] transferee from whom he seeks to recover a fraudulent transfer knew of [BLMIS ]'[s] fraud, that transferee cannot claim the protections of Section 546(e)'s safe harbor." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021).

This Court determined that the Fairfield Complaint is replete with allegations demonstrating that Fairfield Sentry had actual knowledge that BLMIS was not trading securities. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789(CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3–*7 (Bankr. S.D.N.Y. Aug. 6, 2021). Where § 546(e) does not "embrace the initial transfer, the subjective knowledge of a subsequent transferee cannot retroactively render it applicable." *Picard v. Multi-Strategy Fund Ltd.* (*In re BLMIS*), No. 22-CV-06502 (JSR), 2022 WL 16647767, at *7 (S.D.N.Y. Nov. 3, 2022). The Trustee's allegations in the Fairfield Complaint are sufficient to survive a Rule 12(b)(6) motion on this issue.

Whether the safe harbor applies to the initial transfers under the theory that BLMIS' transfers to Fairfield Sentry were made in connection with Fairfield Sentry's contracts with Defendant (rather than a contract with BLMIS) is not answerable on the pleadings. If such a fact-specific determination is needed, the Court will make it with the benefit of a "full factual

record." *Picard v. Multi-Strategy Fund Ltd.* (*In re BLMIS*), No. 22-CV-06502 (JSR), 2022 WL 16647767, at *9 (S.D.N.Y. Nov. 3, 2022).

**The Safe Harbor cannot be used to defeat a subsequent transfer**

The safe harbor cannot be used to prevent the Trustee from avoiding the subsequent transfer between Fairfield Sentry and Defendants on account of the securities contracts between Fairfield sentry and Defendant. The safe harbor is not applicable to subsequent transfers. "By its terms, the safe harbor is a defense to the avoidance of the *initial* transfer." *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis in original); *see also* 11 U.S.C. § 546(e) (failing to include § 550 in its protections). Since there must be an initial transfer in order for the Trustee to collect against a subsequent transferee, a subsequent transferee may raise the safe harbor as a defense—but only in so far as the avoidance of the initial transfer is concerned. The safe harbor cannot be used as a defense by the subsequent transferee because the Trustee is not "avoiding" a subsequent transfer, "he recovers the value of the avoided initial transfer from the subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the recovery claims under section 550." *BNP Paribas S.A.* 594 B.R. at 197.

**Whether BLMIS's Initial Transfers Are Avoidable as Intentionally Fraudulent Conveyances**

Defendant argues that the Trustee's subsequent transfer claims fail as he cannot rely on the Ponzi scheme presumption to plead BLMIS's actual fraudulent intent for purposes of avoidance of the initial transfers. (Mem. L. at 24–25, ECF No. 204). Defendant relies on Judge Menashi's concurrence in *Picard v. Citibank* (*In re BLMIS*), 12 F.4th 171 (2d Cir. 2021*) cert.*

*denied*, 142 S. Ct. 1209 (2022) ("*Citibank*") to argue that the Ponzi scheme presumption

improperly treats preferences as fraudulent transfers. (Mem. L. at 25).

In relevant part, § 548(a)(1)(A) allows the Trustee to avoid any transfer made within two

years before the filing date of this SIPA action, if BLMIS made the transfer with "actual intent to

hinder, delay, or defraud." 11 U.S.C. § 548(a)(1)(A). Because the Trustee has pleaded that

BLMIS operated a Ponzi scheme, the Trustee's burden of pleading actual fraudulent intent is

satisfied. (Am. Compl. ¶¶ 70–95). (Madoff pled guilty to operating a Ponzi scheme through

BLMIS). The "Ponzi scheme presumption" allows courts to presume actual intent to defraud on

part of the operator of the Ponzi scheme. *Donell v. Kowell*, 533 F.3d 762, 770 (9th Cir. 2008)

("The mere existence of a Ponzi scheme is sufficient to establish actual intent to defraud."). In

this case, the Ponzi scheme presumption allows the Court to presume that BLMIS made the

initial transfers with actual intent to defraud because Madoff has admitted to operating a Ponzi

scheme.

The mere existence of a Ponzi scheme "demonstrates actual intent as matter of law

because transfers made in the course of a Ponzi scheme could have been made for no purpose

other than to hinder, delay or defraud creditors." *Bear Stearns Secs. Corp. v. Gredd (In re*

*Manhattan Inv. Fund Ltd.)*, 397 B.R. 1, 8 (S.D.N.Y. 2007). The Ponzi scheme presumption

makes perfect sense in cases such as this one. BLMIS had no legitimate assets and therefore

every transfer made by BLMIS was made with actual intent to defraud in order to ensure that

Ponzi scheme would survive.

The Trustee has pleaded that BLMIS operated a Ponzi scheme and as such, BLMIS's

actual fraudulent intent is presumed via the Ponzi scheme presumption. (Am. Compl. ¶¶ 70–95).

Intent to defraud is established as debtor operated a Ponzi scheme. *Picard v. Cohen*, Adv. Pro.

No. 10-04311 (SMB), 2016 WL 1695296, at *5 (Bankr. S.D.N.Y. Apr. 25, 2016) (citing *Omnibus Good Faith Decision*, 531 B.R. at 471) ("the Trustee is entitled to rely on the Ponzi scheme presumption pursuant to which all transfers are deemed to have been made with actual fraudulent intent"); *Picard v. Cohmad Sec. Corp.*, 454 B.R. 317, 330 (Bankr. S.D.N.Y. 2011) ("the fraudulent intent on the part of the debtor/transferor . . . is established as a matter of law by virtue of the 'Ponzi scheme presumption'"). That BLMIS operated as a Ponzi scheme is well-established and the Court relies on earlier findings of same and holds that the Trustee has met its burden of pleading BLMIS' actual intent on this issue. *See Picard v. Legacy Capital Ltd.*, 603 B.R. 682, 688-93 (Bankr. S.D.N.Y. 2019) (discussing in detail that BLMIS was a Ponzi scheme and why the Trustee is permitted to rely on the Ponzi scheme presumption to prove intent as a matter of law).

This Court has re-read Judge Menashi's concurrence in *Citibank* and finds it to be unpersuasive. The Ponzi scheme presumption does not turn would-be preferences into fraudulent transfers. All the Ponzi scheme presumption does is save the Trustee and the courts time and resources by presuming that each transfer was made with actual fraudulent intent. As the District Court has stated, "[n]otwithstanding Judge Menashi's concerns, 'the Ponzi scheme presumption remains the law of this Circuit.'" *Picard v. Sage Realty*, No. 20 CIV. 10057 (JFK), 2022 WL 1125643, at *28 (S.D.N.Y. Apr. 15, 2022), *aff'd sub nom. In re Bernard L. Madoff Inv. Sec. LLC*, No. 22-1107, 2023 WL 5125596 (2d Cir. Aug. 10, 2023), and *aff'd sub nom. In re Bernard L. Madoff Inv. Sec. LLC*, No. 22-1107, 2023 WL 5439455 (2d Cir. Aug. 24, 2023) (citing *Gredd*, 397 B.R. at 11); *see also Brown v. Picard (In re BLMIS)*, No. 22-CV-3882 (VEC), 2023 WL 4744195, at *5 (S.D.N.Y. July 25, 2023) ("The Bankruptcy Court correctly concluded that the transfers at issue in this case are subject to the presumption of fraudulent intent that

applies to a Ponzi scheme.").  The Court agrees with "every court to opine on the application of

the presumption in the context of the BLMIS Ponzi scheme" and will not now discard the

presumption.  *Sage Realty*, 2022 WL 1125643, at *28.

**BLMIS Customer Property**

Defendant argues that the Complaint fails to plead that it received BLMIS customer

property, as the Complaint does not "tie [the alleged] initial transfers to any subsequent transfer

or [alleged] Subsequent Transferee."  (Mem. L. at 32, ECF No. 204).  The Trustee has pleaded

that "Fairfield Sentry subsequently transferred a portion of the Sentry Initial Transfers, directly

or indirectly, to Tensyr . . . . Based on the Trustee's investigation to date, the Sentry-Tensyr

Subsequent Transfers total approximately $35,190,115."  (Am. Compl. ¶ 126, ECF No. 193); (*Id.*

Ex. D).  The Complaint sets forth the initial transfers of customer property from BLMIS to

Fairfield Sentry.  (Am. Compl. Ex. A, B, ECF No. 193).  The exhibits to the Complaint provide

Defendant with the exact date and amount of each transfer the Trustee is seeking to recover.

These exhibits provide Defendants with the "who, when, and how much" of each transfer.  *BNP

Paribas S.A.*, 594 B.R. at 195.

Defendant argues that the allegations are "mathematically implausible."  (Mem. L. at 33,

ECF No. 204).   That is, the "Trustee alleges that BMLIS transferred approximately $3 billion to

Fairfield Sentry, . . . but is attempting to 'recover' more than $5 billion in transfers from Fairfield

Sentry to other alleged subsequent transfer defendants in this proceeding . . . ."  (*Id.*).

To consider allegations made in dozens of other complaints filed by the Trustee in this

SIPA proceeding is impractical and not required at this stage of the litigation.  The other

complaints have not been adopted by reference by the Trustee in this adversary proceeding and,

as such, are not within the Court's power to consider on a Rule 12(b)(6) motion.  *Williams v.*

*Time Warner Inc.*, 440 Fed.Appx. 7, 9 (2d Cir. 2011) ("A district court, in deciding whether to

dismiss a complaint under Rule 12(b)(6), is generally limited to the facts as presented within the

four corners of the complaint, to documents attached to the complaint, or to documents

incorporated within the complaint by reference.") (citing *Taylor v. Vt. Dep't of Educ.*, 313 F.3d

768, 776 (2d Cir. 2002)).

  In order to determine how Fairfield Sentry spent the billions of dollars it received from

BLMIS, this Court would need review financial documents in order to trace the monies to all of

Fairfield Sentry's principals, insiders, creditors, and customers.  Undoubtedly, the Court will

trace and calculate how Fairfield Sentry spent its BLMIS (and any non-BLMIS) funds at a later

stage of litigation.  At this stage, the Trustee need only assert allegations that make it seem

plausible that Defendants received BLMIS monies.

  Tensyr further argues that "the exhibits to the Complaint confirm the implausibility of the

Trustee's allegations. The Trustee repeatedly seeks to recover alleged subsequent transfers made

to Tensyr months or more than a year after Fairfield Sentry received any transfer from BLMIS."

(*Id.* 33–34).

  The Court finds that the Trustee has plausibly alleged Defendant received BLMIS

customer property.  The Complaint states that Fairfield Sentry did not have any assets that were

not BLMIS customer property.  The Fairfield Complaint, which is incorporated by reference into

this Complaint, alleges that the Fairfield Fund was required to invest 95% of its assets in BLMIS.

(Fairfield Compl. ¶ 89); *see also* (Fairfield Compl. ¶ 91) ("From the beginning, to comport with

Madoff's requirement for BLMIS feeder funds, Fairfield Sentry ceded control of not only its

investment decisions, but also the custody of its assets, to BLMIS.").

Accepting these allegations as true, a gap in time between the initial and subsequent transfer is of no consequence because 95% of all Fairfield assets are allegedly BLMIS customer property. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (court must accept factual allegations as true). It is more plausible that the subsequent transfers that the Trustee seeks to recover from Defendant came from BLMIS customer property than that it came from some other unnamed source.

The Fairfield Complaint, which is incorporated by reference into this, alleges that the Fairfield Fund was required to invest 95% of its assets in BLMIS. (Fairfield Compl. ¶ 89); *see also* (Fairfield Compl. ¶ 91) ("From the beginning, to comport with Madoff's requirement for BLMIS feeder funds, Fairfield Sentry ceded control of not only its investment decisions, but also the custody of its assets, to BLMIS."). The Complaint plausibly alleges that Fairfield Sentry did not have any assets that were not customer property. In this case, the Trustee is not seeking to collect $5 billion from Defendants. He is seeking approximately $$74,468,402.00, which easily could come from the $3 billion Fairfield received from BLMIS. If the Court were to accept Defendants argument, it would need to do one of two things: 1) dismiss ALL of the Trustee's subsequent transfer claims in all of the adversary proceedings since the Court has no idea which transfers came from BLMIS customer property; or 2) hold a pre-discovery trial on all of the subsequent transfers actions to determine which transfers were made from the $3 billion of BLMIS customer property and which were not. The Court is simply not willing to have such a trial at this stage of litigation.

Taking all allegations as true and reading them in a light most favorable to the Trustee, the Complaint plausibly pleads that Defendants received customer property because Fairfield Sentry did not have other property to give. The calculation of Fairfield Sentry's customer

property and what funds it used to make redemption payments are issues of fact better resolved

at a later stage of litigation.

**Whether Defendants took the transfers for value, in good faith, and without knowledge of the voidability of the initial transfers?**

Defendant has raised the "good faith defense" under § 550(b), arguing that this Court

should dismiss the Trustee's complaint because it took "for value," "in good faith," and "without

knowledge of the voidability of the transfers."  (Mem. L. at 27–31, ECF No. 204).

"An affirmative defense may be raised by a pre-answer motion to dismiss under Rule

12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of

the complaint."  *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998).  "Not

only must the facts supporting the defense appear on the face of the complaint, but, as with all

Rule 12(b)(6) motions, the motion may be granted only where it appears beyond doubt that the

plaintiff can prove no set of facts in support of his claim that would entitle him to relief."

*McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (cleaned up).  A "plaintiff is entitled to all

reasonable inferences from the facts alleged, not only those that support his claim, but also those

that defeat the [affirmative] defense."  *Id.*

i.      *For Value*

The "value" that a subsequent transferee must provide is "merely consideration sufficient

to support a simple contract, analogous to the 'value' required under state law to achieve the

status of a bona fide purchaser for value."  *Picard v. Legacy Capital Ltd.* (*In re BLMIS*), 548

B.R. 13, 37 (Bankr. S.D.N.Y. 2016) (citation omitted); *accord Enron Corp. v. Ave. Special

Situations Fund II, L.P.* (*In re Enron Corp.*), 333 B.R. 205, 236 (Bankr. S.D.N.Y. 2005).  In

addition, the "value" element under § 550(b)(1) looks to what the transferee gave up rather than

what the transferor received.

Defendant argues that it was a "net loser" in its dealings with Fairfield Sentry and all redemptions were made for value. (Mem. L. at 28, ECF No. 204). If Defendants knew at the time it redeemed its shares that the shares were worthless, then it did not receive the subsequent transfer funds "for value" as is required under § 550. *See Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, 596 B.R. 275, 301 (Bankr. S.D.N.Y. 2018), *aff'd sub nom. Fairfield Sentry Ltd. v. Citibank, N.A. London*, No. 19-CV-3911 (VSB), 2022 WL 4391023 (S.D.N.Y. Sept. 22, 2022) ("The only exception concerns the Knowledge Defendants that received redemption payments with the knowledge that the NAV was wrong. In those circumstances, the Liquidators may seek to impose a constructive trust."). It has not yet been determined whether Defendant knew if the shares it redeemed from Fairfield Sentry had value.

"Value" is Defendant's burden to plead and prove. *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 198 (Bankr. S.D.N.Y. 2018). Whether the Defendant gave value is a question of fact to be resolved either at the summary judgment stage or at trial. *Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *9 (Bankr. S.D.N.Y. Aug. 6, 2021).

ii. *Good Faith*

Where, in light of surrounding circumstances, a transferee should have known of the debtor's precarious financial condition, the transferee will be deemed to have taken in bad faith, unless an investigation into the debtor's financial condition actually discloses no reason to suspect financial trouble. 2 Bankruptcy Desk Guide § 19:105. The District Court recently explained that good faith is a fact-intensive inquiry that almost always requires a trial: "The Second Circuit made clear in its decision in [*Picard v.*] *Citibank*[*, N.A. (In re BLMIS)*, 12 F.4th 171 (2d Cir. 2021), *cert. denied* No. 21-1059 (Feb. 28, 2022)] that the inquiry notice standard

Page **35** of 37

requires a 'fact-intensive inquiry to be determined on a case-by-case basis, which naturally takes

into account the disparate circumstances of differently-situated transferees.'" *In re BLMIS, LLC*,

Dec. & Order, 20-cv-02586(CM) (May 2, 2022).  And that "such a fact-based determination can

only be made based on the entirety of the factual record after discovery . . . ." *Id.* (internal

quotation omitted).

The burden of proving good faith falls squarely on Defendant, and this Court cannot

make a determination on Defendant's affirmative defense until after a fact-intensive inquiry.

Discovery is required on this issue.

### iii.    *Knowledge of the Voidability*

Good faith is linked with whether one had knowledge of the voidability of the transfer.

*Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171, 189 (2d Cir. 2021) ("[A] transferee does

not act in good faith when he has sufficient actual knowledge to place him on inquiry notice of

the debtor's possible insolvency."), *cert. denied sub nom. Citibank, N.A. v. Picard*, 212 L. Ed. 2d

217, 142 S. Ct. 1209 (2022).  Having determined that "good faith" cannot be found on the face of

a complaint, the Court must deny the Defendant's motion on this element.  Additionally, §

550(b)(1) provides a defense to recovery making lack of knowledge Defendants burden to plead

and prove.  It is a fact-intensive inquiry that requires a three-step inquiry into 1) what Defendant

subjectively knew; "whether these facts put [Defendant] on inquiry notice of the fraudulent

purpose behind a transaction—that is, whether the facts the transferee knew would have led a

reasonable person in the [Defendant's] position to conduct further inquiry into a debtor-

transferor's possible fraud; and whether "diligent inquiry by [Defendant] would have discovered

the fraudulent purpose of the transfer." *Id.* at 192.

It is not appropriate for the Court to resolve these factual issues at this stage of the litigation.

### Conclusion

For the foregoing reasons, Defendant's motion to dismiss is denied. The Trustee shall submit a proposed order within fourteen days of the issuance of this decision, directly to chambers (via EOrders), upon not less than two days' notice to all parties, as required by Local Bankruptcy Rule 9074-1(a).

/s/ Cecelia G. Morris



**Dated: November 3, 2023**
**Poughkeepsie, New York**

_____
**Hon. Cecelia G. Morris**
**U.S. Bankruptcy Judge**

Page **37** of 37