| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | NOT FOR PUBLICATION |
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>               Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>               Defendant. | No. 08-01789 (CGM)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>               Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, and the Chapter 7 Estate of Bernard L. Madoff,<br><br>               Plaintiff,<br><br>v.<br><br>BNP PARIBAS – DUBLIN BRANCH,<br>               Defendant. | Adv. Pro. No. 22-01087 (CGM) |

**MEMORANDUM DECISION**
**DENYING DEFENDANT'S MOTION TO DISMISS**

**A P P E A R A N C E S :**

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
  By:   David J. Sheehan
            Oren J. Warshavsky
            Jason S. Oliver

Tatiana Markel
Carrie A. Longstaff
Peter B. Shapiro
Jessica H. Fernandez

*Attorneys for Defendant, BNP Paribas – Dublin Branch*
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006
By:   Thomas S. Kessler
      Roger A. Cooper
      Ari D. MacKinnon

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

## Introduction

Pending before the Court is the motion of the Defendant, BNP Paribas – Dublin Branch ("BNP Dublin"), to dismiss the complaint of Irving Picard, the trustee ("Trustee") for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") seeking to recover initial transfers allegedly consisting of BLMIS customer property. Defendant seeks dismissal for failure to plead that the transfers at issue are avoidable under § 548(a)(1) of the Bankruptcy Code and due to the "safe harbor" defense under 11 U.S.C. § 546(e). For the reasons set forth herein, the motion to dismiss is denied in its entirety.

## Jurisdiction

This is an adversary proceeding commenced in this Court, in which the main underlying SIPA proceeding, Adv. Pro. No. 08-01789 (CGM) (the "SIPA Proceeding"), is pending. The SIPA Proceeding was originally brought in the United States District Court for the Southern District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.*, No. 08-CV-10791, and has been referred to this Court. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1),

and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4).  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O).  Personal jurisdiction has not been contested by the Defendant.

## Background

The Court assumes familiarity with the background of the BLMIS Ponzi scheme and its SIPA proceeding.  *See Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171, 178–83 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209, 212 L. Ed. 2d 217 (2022).  This adversary proceeding was filed on April 27, 2022.  (Compl., ECF[1] No. 1) (the "Complaint").  Via the Complaint, the Trustee seeks to recover $49,505,850 in BLMIS customer property transferred to Defendant from BLMIS.  (*Id.* ¶¶ 4, 67–75).

Defendant is an Irish registered branch of BNP Paribas S.A.  (*Id.* ¶ 10).  BNP Paribas S.A. is a French entity that is registered to do business in Ireland and has an office on Seventh Avenue in New York City.  (*Id.*).  Both BNP Dublin and BNP Paribas S.A. have principal places of business in Dublin, Ireland.  (*Id.*).  Defendant allegedly received initial transfers of BLMIS customer property from the BLMIS Account of Legacy Capital ("Legacy") for the benefit of Legacy.  (*Id.* ¶¶ 3, 10).  Legacy is a British Virgin Islands corporation with principal place of business in that country.  (*Id.* ¶ 11).

The Complaint alleges that Legacy entered into a credit agreement in 2004 with Defendant and various BNP entities.[2]  (*Id.* ¶ 65).  The $100 million line of credit for this agreement was secured by Legacy's BLMIS Account No. 1FR071.  (*Id.* ¶¶ 11, 65).  After the credit agreement was made, BNP Paribas Securities Corp. took over signatory authority for

---

[1] Unless otherwise indicated, all references to "ECF" are references to this Court's electronic docket in adversary proceeding 22-01087-cgm.
[2] The credit agreement provided for BNP Paribas Corp., a Delaware corporation with a principal place of business in New York City, to act as Defendant's collateral agent.  (Compl. ¶¶ 12, 65).

Legacy's BLMIS account, and Defendant allegedly received direct transfers from BLMIS on account of this agreement. (*Id.*).

The Complaint alleges that BLMIS made $174,000,000 of transfers to Legacy and BNP Dublin in the two years prior to the filing date. (*Id.* ¶ 66). It is further alleged that various BNP Paribas entities, through the collateral agent BNP Paribas Securities Corp., directed BLMIS to make identical transfers of customer property to Legacy and Defendant. (*Id.* ¶¶ 66–67). Half of the total amount, or $87,000,000, was transferred to Defendant, and the remaining half was transferred to Legacy. (*Id.* ¶ 66). Defendant's affiliate in New York, BNP Paribas S.A. New York Branch,[3] acted as the receiving bank for the transfers. (*Id.* ¶¶ 13, 67). The Complaint alleges that these transfers consisted in part of fictitious profits. (*Id.* ¶ 68) ("Of the $87,000,000 BNP Dublin received, approximately $49,505,850 . . . comprised fictitious profits.").

In 2010, following BLMIS's collapse, the Trustee filed an adversary proceeding against Legacy and related defendants to avoid and recover over $200 million of fraudulent transfers of customer property. (*Id.* ¶¶ 2, 56–59); Legacy Compl., *Picard v. Legacy Capital Ltd. (In re BLMIS)*, Adv. Pro. No. 10-05286 (CGM) (Bankr. S.D.N.Y.) (the "Legacy Adversary Proceeding"), ECF No. 1. The Legacy Complaint was amended in July 2015 to discontinue actions against the defendants in that proceeding except for Legacy and Khronos LLC. (Compl. ¶ 60); *see also* Am. Legacy Compl, Legacy Adversary Proceeding, ECF No. 112. The Court dismissed Khronos LLC from the Legacy Adversary Proceeding in April 2016. (Compl. ¶ 62); *see also* Order Granting Mot. to Dismiss, Legacy Adversary Proceeding, ECF No. 137. The only claim remaining after that time was against Legacy in the amount of $86,505,850 for alleged fictious profits received within two years of the filing date. (Compl. ¶ 62).

---

[3] The Complaint alleges that BNP Paribas S.A. New York Branch is "an operational and legal extension of BNP Paribas S.A. and BNP Dublin," and maintains offices on Seventh Avenue in New York City. (Compl. ¶ 13).

On November 12, 2019, this Court entered a final judgment and order against Legacy in the amount of $79,125,781. (*Id.* ¶ 63); Final Judgment, Legacy Adversary Proceeding, ECF No. 231. The judgment was "pursuant to the terms of the Stipulation and Order for Entry of Final Judgment dated November 8, 2019." *Id.* That stipulation and order stated that "[t]he Legacy Transfers are avoidable and avoided under § 548(a)(1)(A) and recoverable from Legacy under § 550(a) of the Bankruptcy Code." Stip. and Order, Legacy Adversary Proceeding, ECF No. 230.

Following entry of that order, the Trustee learned through discovery that Legacy was unable to satisfy the final judgment and through Legacy's own representations that it was owned by the Defendant, BNP Dublin, as of December 2008. (Compl. ¶ 64). The Trustee commenced this adversary proceedings against Defendant in April 2022. (*See* Compl., ECF No. 1). The Complaint alleges that BLMIS transferred $87,000,000 directly to BNP Dublin in the two years prior to the filing date of the main case. (*Id.* ¶ 66). Of that amount, $49,505,850 is alleged to be fictious profits. (*Id.* ¶ 68).

In its motion to dismiss, BNP Dublin argues that the Trustee has failed to allege that the transfers from BLMIS to are avoidable under § 548(a)(1) of the Bankruptcy Code and that all transfers are shieledthe safe harbor, under § 546(e), shields all of the transfers from potential recovery. (Mem. L. at 1, ECF No. 27). The Trustee has filed opposition. (Opp'n, ECF No. 29). The parties agreed to rest on their papers and waived oral arguments on this motion. (Stip and Order, ECF No. 32).

## Discussion

**12(b)(6) standard**

"To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (cleaned up).  The claim is facially plausible when a plaintiff pleads facts that allow the Court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.").  In deciding a motion to dismiss, the Court should assume the factual allegations are true and determine whether, when read together, they plausibly give rise to an entitlement of relief.  *Iqbal*, 556 U.S. at 679.  "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

In deciding the motion, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  A complaint is "deemed to include any written instrument attached to it as an exhibit[,] . . . documents incorporated in it by reference[,]" and other documents "integral" to the complaint.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted).  A document is "integral" to a complaint when the plaintiff has "actual notice" of the extraneous information and relied on it in framing the complaint.  *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (citing *Chambers*, 282 F.3d at 153).

**Recovery of Fraudulent Transfers**

The Trustee is seeking to recover alleged fraudulent transfers made to Defendant by BLMIS. Pursuant to § 550(a) of the Bankruptcy Code, a trustee is entitled to recover avoided transfers of customer property "to the extent that a transfer is avoided under" § 548 from "the initial transferee of such transfer or the entity for whose benefit such transfer was made." 11 U.S.C. § 550(a). Under § 548(a)(1)(a) the trustee "may avoid any transfer . . . of an interest of the debtor in property . . . that was made . . . on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily . . . made such transfer . . . with actual intent to hinder, delay, or defraud any [creditor]." 11 U.S.C. § 548(a)(1)(a).

The elements of an intentional fraudulent transfer claim under § 548(a)(1)(A) are "(i) a transfer of an interest of the debtor in property; (ii) made within two years before the debtor filed for bankruptcy;"[4] and "(iii) done with 'actual intent to hinder, delay, or defraud' the debtor or any entity the debtor would become after the transfer." *Adelphia Recovery Tr. v. Bank of Am., N.A.*, No. 05 Civ. 9050 (LMM), 2011 WL 1419617, at *2 (S.D.N.Y. Apr. 7, 2011), *aff'd*, 748 F.3d 110 (2d Cir. 2014); *see also Picard v. JABA Assocs. LP (In re BLMIS)*, 49 F.4th 170, 179 (2d Cir. 2022).

Whether the Complaint properly pleads the avoidability of the initial transfer is governed by Rule 9(b). *See Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018) (citing *Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005) ("Federal Civil Rule 9(b) governs the portion of a claim to avoid an initial intentional fraudulent transfer . . . .")). Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice,

---

[4] In this SIPA proceeding, the relevant date is the December 11, 2008, filing date of the SIPA proceeding (the "Filing Date"). *See* SIPA § 78lll(7)(B); (Compl., ¶¶ 14–16).

intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

> Where the actual fraudulent transfer claim is asserted by a bankruptcy trustee, applicable Second Circuit precedent instructs courts to adopt a more liberal view since a trustee is an outsider to the transaction who must plead fraud from second-hand knowledge. Moreover, in a case such as this one, where the Trustee's lack of personal knowledge is compounded with complicated issues and transactions that extend over lengthy periods of time, the trustee's handicap increases, and even greater latitude should be afforded.

*Picard v. Cohmad Secs. Corp., (In re BLMIS)*, 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011) (cleaned up).

The Complaint alleges that BLMIS transferred $87,000,000 to BNP Dublin within two years of the Filing Date. (Compl. ¶¶ 65–67). The exhibits to the Complaint provide Defendant with the exact date and amount of each transfer the Trustee is seeking to recover. BLMIS transferred to the Defendant $50,000,000 on September 4, 2007; $27,000,000 on October 4, 2007; and $10,000,000 on June 6, 2008. (*Id.* ¶ 67); (*Id.* Ex. B at 14–17); (*Id.* Ex. C). The Complaint "alleges the transferee, transferor, and specific dates and amounts" required. *See Picard v. Madoff (In re BLMIS)*, 458 B.R. 87, 108 (Bankr. S.D.N.Y. 2011). Defendant does not dispute the first two elements of the §548 claim; it argues that the Trustee has failed to allege that the transfers at issue were made with actual intent to hinder, delay, or defraud. (Mem. L. at 4–7, ECF No. 27).

To prove intent to deceive, the Trustee relies primarily on the Ponzi scheme presumption, under which the intent to hinder, delay, or defraud creditors is presumed if the transferor operated a Ponzi scheme and the transfers are made in furtherance of the Ponzi scheme. *See Moran v. Goldfarb*, No. 09 Civ. 7667 (RJS), 2012 WL 2930210, at *4 (S.D.N.Y. July 16, 2012) ("an actual intent to defraud is presumed because the transfers made in the course of a Ponzi

scheme could have been made for no purpose other than to hinder, delay, or defraud creditors") (citation, internal quotation marks, and alteration omitted); *Bear, Stearns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*, 397 B.R. 1, 11 (S.D.N.Y. 2007) ("if a transfer serves to further a Ponzi scheme, then the presumption applies and 'actual intent' under § 548(a)(1)(A) is present").

Because the Trustee has pleaded that BLMIS operated a Ponzi scheme, the Trustee's burden of pleading actual fraudulent intent is satisfied. (Compl. ¶ 1) ("BNP Dublin withdrew from Legacy Capital's BLMIS . . . approximately $49,505,850 in fictitious profits from the Ponzi scheme."); (*Id.* ¶ 19) ("At the [March 12, 2009,] plea hearing, Madoff admitted he 'operated a Ponzi scheme through the investment advisory side of [BLMIS].'"); (*id.* ¶ 20) ("Frank DiPascali, a former BLMIS employee, pleaded guilty to a ten-count criminal information charging him with participating in and conspiring to perpetuate the Ponzi scheme. DiPascali admitted that no purchases or sales of securities took place in connection with BLMIS investment advisory business . . . customer accounts and that the Ponzi scheme had been ongoing at BLMIS since at least the 1980s."); (*id.* ¶ 21) ("David Kugel, a former BLMIS trader and manager, pleaded guilty to a six-count criminal information charging him with securities fraud, falsifying the records of BLMIS, conspiracy, and bank fraud. Kugel admitted to helping create false, backdated trades in BLMIS customer accounts beginning in the early 1970s."); (*id.* ¶ 22) (describing other employees of BLMIS convicted of fraud due to participation in the Ponzi Scheme); (*id.* ¶ 33) ("At all relevant times, Madoff operated the IA Business as a Ponzi scheme using money deposited by customers that BLMIS claimed to invest in securities."). These statements establish a prima facie case that the Madoff ran a Ponzi scheme through BLMIS. *See Picard v. Legacy Capital Ltd.*, 603 B.R. 682, 691 (Bankr. S.D.N.Y. 2019).

The "Ponzi scheme presumption" allows courts to presume actual intent to defraud on part of the operator of the Ponzi scheme. *Donell v. Kowell*, 533 F.3d 762, 770 (9th Cir. 2008) ("The mere existence of a Ponzi scheme is sufficient to establish actual intent to defraud."). The Ponzi scheme presumption allows this Court to presume that BLMIS made the initial transfers with actual intent to defraud because Madoff has admitted to operating a Ponzi scheme. The mere existence of a Ponzi scheme "demonstrates actual intent as matter of law because transfers made in the course of a Ponzi scheme could have been made for no purpose other than to hinder, delay or defraud creditors." *Gredd*, 397 B.R. at 8. The Ponzi scheme presumption makes perfect sense in cases such as this one. BLMIS had no legitimate assets and therefore every transfer made by BLMIS was made with actual intent to defraud in order to ensure that Ponzi scheme would survive. (*See* Compl. ¶ 58, ECF No. 1).

The Trustee has pleaded that BLMIS operated a Ponzi scheme and as such, BLMIS's actual fraudulent intent is presumed via the Ponzi scheme presumption. Intent to defraud is established as the debtor operated a Ponzi scheme. *Picard v. Cohen*, Adv. Pro. No. 10-04311 (SMB), 2016 WL 1695296, at *5 (Bankr. S.D.N.Y. Apr. 25, 2016) (citing *Omnibus Good Faith Decision*, 531 B.R. at 471) ("[T]he Trustee is entitled to rely on the Ponzi scheme presumption pursuant to which all transfers are deemed to have been made with actual fraudulent intent."); *Picard v. Cohmad Sec. Corp.*, 454 B.R. 317, 330 (Bankr. S.D.N.Y. 2011) ("[T]he fraudulent intent on the part of the debtor/transferor . . . is established as a matter of law by virtue of the 'Ponzi scheme presumption' . . . ."). That BLMIS operated as a Ponzi scheme is well-established and the Court relies on earlier findings of same and holds that the Trustee has met his burden of pleading BLMIS's actual intent on this issue. *See Legacy Capital Ltd.*, 603 B.R. at

688–93 (discussing in detail that BLMIS was a Ponzi scheme and why the Trustee is permitted to rely on the Ponzi scheme presumption to prove intent as a matter of law).

Defendant objects to the application of the Ponzi scheme presumption, relying in large part on Judge Menashi's concurrence in *Citibank*. Mem. L. at 6–7, ECF No. 27. This Court has re-read that concurrence and finds it to be unpersuasive. The Ponzi scheme presumption does not turn would-be preferences into fraudulent transfers. All the Ponzi scheme presumption does is save the Trustee's and the Court's time and resources by presuming that each transfer was made with actual fraudulent intent. As the District Court has stated, "[n]otwithstanding Judge Menashi's concerns, 'the Ponzi scheme presumption remains the law of this Circuit.'" *Picard v. Sage Realty*, No. 20 CIV. 10057 (JFK), 2022 WL 1125643, at *28 (S.D.N.Y. Apr. 15, 2022), *aff'd sub nom. In re Bernard L. Madoff Inv. Sec. LLC*, No. 22-1107, 2023 WL 5125596 (2d Cir. Aug. 10, 2023), and *aff'd sub nom. In re Bernard L. Madoff Inv. Sec. LLC*, No. 22-1107, 2023 WL 5439455 (2d Cir. Aug. 24, 2023) (citing *Gredd*, 397 B.R. at 11); *see also Brown v. Picard (In re BLMIS)*, No. 22-CV-3882 (VEC), 2023 WL 4744195, at *5 (S.D.N.Y. July 25, 2023) ("The Bankruptcy Court correctly concluded that the transfers at issue in this case are subject to the presumption of fraudulent intent that applies to a Ponzi scheme."). The Court agrees with "every court to opine on the application of the presumption in the context of the BLMIS Ponzi scheme" and will not now discard the presumption. *Sage Realty*, 2022 WL 1125643, at *28.

**Badges of Fraud**

In addition to the Ponzi scheme presumption, the Complaint adequately shows intent to defraud based on allegations of badges of fraud. Badges of fraud include:

> (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or

> cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; (6) the general chronology of the event and transactions under inquiry. . . . The 'concealment of facts and false pretenses by the transferor' is also a badge of fraud. . . . The existence of several badges can "constitute conclusive evidence of an actual intent to defraud.

*Picard v. Nelson (In re BLMIS)*, 610 B.R. 197, 235 (Bankr. S.D.N.Y. 2019). The Complaint alleges that BLMIS commingled customer funds and used them to make payments to customers or benefit Madoff and his family personally, rather than to trade securities. (Compl. ¶ 38). BLMIS allegedly filed false audit reports and reports with the SEC. (*Id.* ¶¶ 30–31, 36). Furthermore, the Complaint alleges that BLMIS was insolvent at all relevant times and had no legitimate business operations. (*Id.* ¶¶ 33–34, 57–58). These allegations show multiple badges of fraud including lack or inadequacy of consideration; the retention of possession, benefit, or use of the property in question; and the concealment of facts and false pretenses of the transferor. The existence of these badges of fraud provides a basis independent of the Ponzi scheme presumption to find that the transfers made within two years of the Filing Date were made with the actual intent to defraud. The Trustee satisfied his initial burden under 11 U.S.C. § 548(a)(1)(A).

**The Safe Harbor Does Not Bar the Avoidance of the Initial Transfers**

Defendant has raised the "safe harbor" defense, found in 11 U.S.C. § 546(e), to the Trustee's allegations. (Mem. L. at 7, ECF No. 27). Section 546(e) is referred to as the safe harbor because it protects a transfer that is a "settlement payment . . . made by or to (or for the benefit of) a . . . financial institution [or] financial participant," or that is "made by or to (or for the benefit of) a . . . financial institution [or] financial participant . . . in connection with a securities contract." 11 U.S.C. § 546(e). "By its terms, the safe harbor is a defense to the

avoidance of the *initial* transfer." *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis in original).

The Trustee does not respond to the Defendant's argument that the transfers here are settlement payments in connections with securities contracts made by, to, or for the benefit of a covered entity. Rather, the Trustee argues that the safe harbor does not bar transfers avoidance and recovery of transfers under § 548(a)(1)(A), as "[a]ll transfers Defendant received within two years of the filing date are avoidable—and have been avoided— under section 548(a)(1)(A)." (Opp'n at 7, ECF No. 29).

Section 546(e) "is expressly inapplicable to claims of actual fraud brought under § 548(a)(1)(A) . . . ." *Picard v. Ida Fishman Revocable Trust (In re BLMIS)*, 773 F.3d 411, 416 (2d Cir. 2014). Because this Court finds that the transfers are avoidable under Section 548(a)(1)(A), the § 546(e) safe harbor does not shield the Defendant from these claims.

Taking all allegations as true and reading them in a light most favorable to the Trustee, the Complaint plausibly alleges that Defendant received transfers of customer property within two years of the petition date which were made with actual intent to hinder, delay, or defraud. The Trustee has met his prima facie case pursuant to §§ 550(a) and 548(a)(1)(A) of the Bankruptcy Code.

## Conclusion

For the foregoing reasons, Defendant's motion to dismiss is denied. The Trustee shall submit a proposed order within fourteen days of the issuance of this decision, directly to chambers (via EOrders), upon not less than two days' notice to all parties, as required by Local Bankruptcy Rule 9074-1(a).



**Dated: December 28, 2023**
**Poughkeepsie, New York**

/s/ Cecelia G. Morris
_____
**Hon. Cecelia G. Morris**
**U.S. Bankruptcy Judge**